JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 7395

------------------------------------------------------------X

CARMEN GOMEZ

                            Plaintiff,

    -against-

INOVISION-MEDCLR PORTFOLIO GROUP, LLC.,
PETER T. ROACH & ASSOCIATES, P.C.,
KIRSCHENBAUM, PHILLIPS & ROACH, P.C.
TIMOTHY MURTHA
LVNV FUNDING, LLC
RESURGENT CAPITAL SERVICES, LP
NCO FINANCIAL SYSTEMS, INC.

                            Defendants.

------------------------------------------------------------X

Case No.: _____

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Carmen Gomez brings suit against Defendant debt collectors for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., New York General Business Law § 349 et seq., New York Judiciary Law § 487, and the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and in support alleges as follows.

### A. JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

1

2.  Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Bronx, New York.

### B. PARTIES

3.  Plaintiff CARMEN GOMEZ is an individual residing in Bronx County, New York.

4.  Defendant PETER T. ROACH AND ASSOCIATES, P.C. is a professional corporation with its principal place of business at, 125 Michael Drive, Suite 15, Syosset, New York 11791. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York. Said Defendant may be served by and through the New York Secretary of State, Department of State's office at One Commerce Plaza, 99 Washington Avenue, Albany, New York, 12231.

5.  Defendant KIRSCHENBAUM, PHILLIPS & ROACH, P.C. is a domestic professional corporation with its principal place of business at 40 Daniel Street, Suite 7, Farmingdale, NY 11735. Said Defendant may be served by and through the New York Secretary of State, Department of State's office at One Commerce Plaza, 99 Washington Avenue, Albany, New York, 12231.

6.  Defendant Timothy Murtha is an individual who, on information and belief, is a resident of the State of New York. Timothy Murtha is was an attorney at the PC (and now at KPR) and is personally engaged in the debt collection violations of the PC. He may be served at his place of business KIRSCHENBAUM, PHILLIPS & ROACH, P.C., 40 Daniel Street, Suite 7, Farmingdale, NY 11735., or wherever he may be found.

7.  Defendant INOVISION-MEDCLR PORTFOLIO GROUP, LLC ("INOVISION") is an entity organized and existing under the laws of Delaware, with an office for the regular

transaction of business at 507 Prudential Road, Horsham, PA 19044. Said Defendant engages in business in New York but does not maintain designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

8. Defendant NCO FINANCIAL SYSTEMS, INC. is a corporation organized and existing under the laws of the State of Pennsylvania. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York. NCO Financial Systems, Inc., may be served by and through its New York registered agent CT Corporation System, 111 Eighth Ave., New York, NY, 10011.

9. Defendant RESURGENT CAPITAL SERVICES, LP a limited partnership, organized under the laws of the State of Delaware. Said Defendant engages in business in New York but does not maintain designated agent for service of process in New York. This suit arose out of said Defendant's business in New York. Therefore, RESURGENT CAPITAL SERVICES, LP, may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The New York Secretary of State may then forward a copy of the summons and complaint to the address it has on file for said Defendant, Resurgent Capital Services L.P., P.O. Box 770549, Houston, TX, 77215 (Harris County).

10. Defendant LVNV FUNDING LLC ("LVNV") a limited liability corporation, organized under the laws of the State of Delaware. Said Defendant engages in business in New York but does not maintain designated agent for service of process in New York. This suit arose out of said Defendant's business in New York. Therefore, LVNV FUNDING LLC, may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue,

Albany, NY 12231. The New York Secretary of State may then forward a copy of the summons and complaint to Defendant by and through its Delaware registered The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington DE 19801 (New Castle County).

### C.   STATEMENT OF FACTS

11.   INOVISION-MEDCLR PORTFOLIO GROUP, LLC. ("Inovision") is a debt collector that purchases charged off consumer debts for pennies on the dollar and files lawsuits to collect those alleged debts

12.   On or around September 12, 2005, Inovision by their attorneys, Mel S. Harris and Associates LLC ("Harris"), filed an action in Bronx County Civil Court seeking to collect a

putative debt against Carmen Gomez. That case was captioned *Inovision-Medclr Portfolio Group, LLC v. Carmen Gomez*, index number CV-46016/05-BX.

13.   The complaint sought to collect an alleged credit card debt where THE CHASE MANHATTAN BANK ("Chase") was the original creditor.

14.   According to the affidavit of service, the complaint was served on Ms. Gomez on or about September 28, 2005,[1] and mailed shortly thereafter on or about October 3, 2005.

15.   These statements are false. Ms. Gomez was never served with the summons and complaint for the action and never received a copy of the summons and complaint by mail.

16.   Since Ms. Gomez did not know she had been sued, she did not appear in the action. On November 30, 2005, Inovision obtained a default judgment against her.

---

1 The affidavit of service states that service was made by affixing a copy of the Summons and Complaint to the door of the premises and asking a neighbor "Jane Doe" whether "defendant and/or present occupant was presently in the military service of the United States Government or on active military duty in the military service in State of New York or a dependent of anybody in the military". The "Jane Doe" told the process server the defendant/present occupant was not.

17. The debt collection lawsuit sought to collect a debt that was time barred by any measure. Upon information and belief, Ms. Gomez closed the Chase account in question in 1993, twelve years before the above-mentioned lawsuit was filed.

18. Even if the debt was in default for three to six years prior to the filing of the debt collection lawsuit, the debt would be time barred because it is governed by Delaware's three year statute of limitations.

19. Under New York's "borrowing statute," CPLR 202, when a nonresident sues in New York on a cause of action accruing outside New York, the action "cannot be commenced" unless the action is within the statute of limitations of both New York and the jurisdiction where the cause of action accrued. *Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059, 1061-62 (N.Y. 2010), *citing to Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

20. As a purported creditor contends it suffered an economic harm for a breach of an alleged credit card agreement, the creditor's cause of action "accrues where the plaintiff resides and sustains the economic impact of the loss." *Id.* (internal quotes omitted).

21. Chase has its main office, as set forth in its articles of association, in Delaware, and has its principal place of business in Delaware. This has been true from the date of the alleged default of the account to present.

22. Therefore, Chase's cause of action for breach of a credit contract accrued in Delaware.

23. Further, the statute of limitations for breach of a credit contract is three years under Delaware state law, Del. Code Ann., Tit. 10, § 8106; *King* at 1060.

24. Inovision was required to file and serve the collection suit within the same time period as the putative original creditor because Inovision, as the putative assignee, cannot stand in better shoes than the putative assignor. *King* at 1016.

25. By filing and serving the collection lawsuit, Inovision represented to Plaintiff Carmen Gomez and to the civil court that the debt it was collecting upon was not time barred when in fact it was. Defendants misrepresented that the debts they seek to collect are not time barred for the purposed of deceiving Plaintiff Carmen Gomez and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the civil court that now-Inovision was entitled to judgment and costs of court when it was not.

26. On or around October 19, 2012, Timothy Murtha ("Murtha"), an attorney at Peter T. Roach and Associates, P.C. (the "PC") signed an information subpoena and restraining notice to be sent to Municipal Credit Union ("MCU"), seeking to enforce a time-barred action.

27. Notably, the restraining notice contained a different plaintiff in the caption, LVNV Funding LLC, though the index number is identical.

28. LVNV and Inovision are liable for the acts of their debt collection attorneys take on their behalf.

29. On November 7, 2012, MCU sent a copy the information subpoena with restraining notice to Ms. Gomez, as required by New York law.

30.     Murtha and the PC knew and intended the signed an information subpoena and restraining notice would be forwarded by MCU to Ms. Gomez.

31.     By signing and sending the information subpoena and restraining notice to be served on Ms. Gomez, Murtha and the PC impliedly represented to Ms. Gomez that an attorney had performed a "meaningful review" of her case. However, Murtha and the PC did not perform a meaningful review. Rather, the PC and Murtha had "robo-signed" the information subpoena and restraining notices. In fact, Mr. Murtha has previously testified that, per week, he signs between 400 and 460 post-judgment enforcement mechanisms (e.g. garnishments, information subpoena and restraining notices). Further, the time he spends issuing these post-judgment enforcement mechanisms is only a small amount of the time he spends on collections. Therefore, it is simply an impossibility for Murtha or the PC to have done a meaningful review of the post-judgment enforcement devices they were issuing *en masse*.

32.     Ms. Gomez was never sent and has never received from anyone any notice of the assignment of the putative Chase account.

33.     On information and belief, none of the Defendants took any steps to determine whether a notice of assignment of the Chase account was sent to or received by Ms. Gomez. Further, on information and belief, it is the pattern and practice of Defendants not to determine whether a notice of assignment has been sent for the accounts it seeks to collect.

34.     Absent receipt of a notice of assignment regarding the Chase account, none of the Defendants had a legal right to seek to collect the putative debt.

35.     The first time Ms. Gomez knew that a default judgment was rendered against her regarding a Chase account was after her bank account was frozen and she spoke with a debt

collector at the PC in November 2012.

36. In November 2013, the PC told Ms. Gomez that they could garnish 20 or 25 percent of her wages. This statement is untrue. The PC made this statement to intimidate Ms. Gomez and to pressure her into paying on a judgment for a debt that was time barred and for which Ms. Gomez was never served.

37. On December 5, 2012, Ms. Gomez sent a letter to the PC informing the PC that she had no knowledge of the debt, that the statute of limitations on the debt had expired, and requesting proof of the debt/default. Ms. Gomez also requested that Defendants stop calling her, and specifically requested they do not call her on her cell phone.

38. Ms. Gomez, to her recollection, has never given Chase or any debt collector seeking to collect on the putative Chase account permission to call her cell phone. Despite this – and despite Ms. Gomez's clear demand that calls to her cell phone cease – defendants continued to call her cell phone seeking to the collect the time barred debt.

39. On or about December 11, 2012 the PC sent Ms. Gomez a dunning letter seeking to collect on a judgment entered November 30, 2005 for $3,864.33, plus interest at 9 percent from the date of judgment. The letter demanded that payment checks be made out to "Peter T. Roach & Associates, P.C."

40. On January 20, 2013, Kirschenbaum, Phillips, & Roach, P.C. ("KPR") sent a letter to Ms. Gomez indicating that they are now representing Roach with respect to the collection of Ms. Gomez's account. KPR stated in their letter that they would cease all collection activities and

8

verify the debt if Ms. Gomez wrote to them in 30 days asking them to do so.

41.    Ms. Gomez responded to KPR on January 30, 2013 with a copy of the same letter sent to Roach on December 5, 2012. KPR never responded to that letter demanding verification of the debt, an explanation of what the debt was for, or who the creditor was.

42.    Ms. Gomez was forced to retain an attorney and incur attorney's fees and costs because Defendants would not release the garnishments. Defendants would not release the garnishment despite the fact they were on notice that the default judgment was rendered based on sewer service and that the collection lawsuit was time-barred. Instead, they sought to retain of the prior wrongful acts be maintaining the garnishment, maintaining the judgment, continuing attempting to execute on Ms. Gomez's limited funds, and otherwise continuing to collection. As such, Defendants fully ratified the wrongful acts of sewer service and the filing of the time barred lawsuit.

43.    Ms. Gomez, through counsel, filed an order to show cause. On February 19, 2013, Bronx Civil Court Judge Ruben Franco signed the order to show cause setting a March 8, 2013 date for a hearing on the motion to vacate the default judgment. The order to show cause specifically stated, "pending the hearing on this motion [to vacated] and entry of an order thereon, LET all proceedings on the part of the Plaintiff [Inovision], its attorneys, agents and any Marshal of Sheriff of the City of New York for the enforcement of said Judgment be *stayed*; and let any and all holds on any accounts of defendant [Ms. Gomez], *be lifted*..."

44.    The hearing was on the motion to vacate was rescheduled to March 8, 2013.

45.    Ms. Gomez's affidavit provided sworn testimony as to why the affidavit of service was

false, and why the debt was time barred.

46. Despite this sworn testimony Defendants, on information and belief, took no steps to determine whether the allegations of sewer service were true or whether the debt was in fact time barred.

47. Despite Ms. Gomez's sworn testimony, Defendants still would not vacate the default judgment, further ratifying the prior bad acts of sewer service and the filing of a time barred collection lawsuit.

48. On March 8, 2013, Judge Ruben Franco vacated the default judgment. Further, "any liens, levies, restraints or executions" issued by Inovision were vacated and "any funds including fees in the possession of the plaintiff, City Marshal or any other agent *shall be returned* to defendant [Ms. Gomez] *forthwith*." (emphasis added).

49. Despite the two courts orders – the February 19, 2013 order "stay[ing]" all collection activities and the March 8, 2013 order to return any funds "forthwith" – Defendants continued to garnish additional paychecks and/or retain previously garnished funds in direct contravention of the two orders.

50. Ms. Gomez needed her wages to pay for basic necessities such as food and rent. The illegal continued garnishment caused her substantial emotional distress and anxiety.

51. Defendants still would not dismiss the collections lawsuit despite being placed on notice that the judgment was procured on a time barred debt and by the use of a sewer service affidavit.

52. Therefore Ms. Gomez incurred yet additional attorney's fees and costs having her counsel

file a motion to dismiss for lack of personal jurisdiction given the sewer service.

53. On May 31, 2013 the civil court granted Ms. Gomez's motion and dismissed the collection lawsuit.

54. Ms. Gomez never received back all of the money that was garnished from her paycheck.

55. Defendants actions inflicted damages on Ms. Gomez. Ms. Gomez was afraid when she found out her bank account was restrained, and that fear and anxiety increased as Defendants' debt collection activities continued, from the threat to garnish 20-25% of her wages, through their continued calls on her cell phone. The stress and anxiety continued to through Defendants refusal to voluntarily release the garnishment of her account, to her having to incur attorneys fees and costs to seek to vacate a default judgment rendered by sewer service to collect a time barred debt. The fear and anxiety continued as Defendants continued to garnish and/or continued to retain her wages. During this entire time Ms. Gomez could not sleep for a number of months while this was happening. While her anxiety subsided when the order dismissing the case was finally rendered, she still continued having trouble sleeping. She had extreme stomach pain after every meal during this time. She had a few years prior had stomach surgery and did have some issues from time to time. But after she found out the Defendants sought to restrain her bank account, she had constant sever stomach pains after every meal. Occasionally she would vomit. The stress and anxiety was that severe for her. She was fixated on the issue, constantly thinking about it every day. Ms. Gomez was stressed out, very depressed, and even had suicidal thoughts. She was afraid of what the garnishment would mean for her to be able to pay her on bills for her own basic needs. Moreover, the garnishment made her worry if she could continue to try to support financially her daughter. Her daughter and her granddaughter live in a homeless shelter,

and Ms. Gomez does what she can to help.

### D. COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

56. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

57. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

58. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of

sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

59. The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

60. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

61. Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

62. Inovision and LVNV are "debt collectors" because they purchase charged off consumer accounts after they are in default with the putative original creditor and attempts to collect on them by sending thousands of collection letters and filing thousands of collections lawsuits.

63. In the present case it appears LVNV purchased the dormant sewer service default judgment rendered against Ms. Gomez.

64. Resurgent is the servicer for LVNV. While LVNV owns title to the debt, Resurgent takes the affirmative actions to collect the debts, such as forwarding the accounts to law firms to collect, or to subservicers, such as NCOFS.

65. NCOFS is the servicer for Inovision. According to Harris, NCOFS was still actively working the account when Ms. Gomez was seeking to vacate the judgment.

66. The PC and KPR are law firm engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by making thousands of collection phone calls; and by sending out thousands of collection letters. Defendant regularly collects consumer debts alleged to be due to another, and that is its primary purpose. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

67. The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

68. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense

incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### E.  COUNT # 2: TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, et seq.

69.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

70.  Defendants violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq*.

71.  On information and belief, the calls placed to Ms. Gomez's cell phone were made using predictive dialers.

72.  The predictive dialers placed calls without human intervention until a connection is made, in which case the dialers attempt to connect the recipient with a debt collector.

73.  On information and belief, the calls placed to Ms. Gomez's cell phone used an autodialer that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

74.  The TCPA, 47 U.S.C. §227, provides:

> § 227. Restrictions on use of telephone equipment
> . . . (b) Restrictions on use of automated telephone equipment.
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .

15

75. The TCPA, 47 U.S.C. §227(b)(3), further provides:

> Private right of action.
> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.
>
> If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

74. Defendants violated the TCPA by placing automated calls to Plaintiff's cell phone.

75. Defendants made the calls to Ms. Gomez's cell phone without prior express consent and not for an emergency purpose.

76. Ms. Gomez never provided the putative original creditor, Inovision, or any other debt collector permission to call her cell phone regarding the putative account. In fact, in her letter to Roach and KPR, Ms. Gomez explicitly asked that the debt collectors stop calling her cell phone number, but they continued to do so.

76. Defendants are strictly liable for statutory damages of $500 per call to Ms. Gomez's cell phone, and up to three times that amount per call to the degree that its conduct was willful or knowing pursuant to 47 U.S.C. §227(b)(3).

### F. COUNT # 3: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*

77. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

78. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."

79. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

80. As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. This includes filing time barred collection lawsuits, entering default judgments based on sewer service, seeking to collect on those sewer service default judgments on time barred debts. This further includes robo-signing post-judgment executions impliedly represented to consumers that an attorney had done a meaningful review prior to issuing the execution when none was done. These acts were done by Defendants systematically, and as such, has a broad impact on consumers at large.

81. Defendants committed the above described acts willfully and/or knowingly.

82. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

83. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq.*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

### G.  COUNT # 4: NEW YORK JUDICIARY LAW § 487 *ET SEQ.* (AS TO THE PC, KPR AND MURTHA)

84. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

85. The PC, KPR, and Murtha violated § 487 by continuing to retain the default judgment rendered by sewer service that was based on a time barred debt, and for robo-signing post-

judgment enforcement documents.

86. The violations of § 487 by PC, KPR, and Murtha inflicted damages, for the reasons and in the manner previously indicated.

87. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by PC, KPR, and Murtha, and Plaintiff so seeks.

### H. JURY DEMAND.

88. Plaintiff demands a trial by jury.

### I. PRAYER

89. WHEREFORE, Plaintiff requests the following relief:

   a. A declaration that all Defendants have committed the violations of law alleged in this action;

   b. An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

   c. Statutory damages under 15 U.S.C. § 1692k and G.B.L. § 349(h);

   d. Civil penalties under G.B.L. § 349 against all Defendants

   e. Treble damages under G.B.L. § 349 against all Defendants;

   f. Pursuant to 47 U.S.C. §227(b)(3), statutory damages against all Defendants of $500 per call, and up to 3 times that amount per call to the degree that its violations of the TCPA were willful or knowing;

   g. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, 47 U.S.C. §227, and G.B.L. § 349 against all Defendants;

   h. A judgment for actual, statutory, and treble damages;

   i. Prejudgment and post judgment interest as allowed by law;

   j. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

    k.    Treble damages and an order awarding disbursements, costs, and attorneys' fees under Judiciary Law § 487 against PC, KPR, and Murtha.

Dated: Brooklyn, New York
October 18, 2013

Respectfully submitted,

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com