## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

**CARMEN GOMEZ**

                                                      **Case No.: 1:13-CV-07395**

                    **Plaintiff,**

        **-against-**

**INOVISION-MEDCLR PORTFOLIO GROUP, LLC.,**
**PETER T. ROACH & ASSOCIATES, P.C.,**
**KIRSCHENBAUM, PHILLIPS & ROACH, P.C.**
**TIMOTHY MURTHA**
**LVNV FUNDING, LLC**
**RESURGENT CAPITAL SERVICES, LP**
**NCO FINANCIAL SYSTEMS, INC.**

                           **Defendants.**

-------------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS LVNV FUNDING, LLC AND RESURGENT CAPITAL SERVICES, LP [DE 62]

## <u>TABLE OF CONTENTS</u>

I.   <u>Introduction</u>.................................................................................................1

II.   <u>Argument</u> ...............................................................................................1

       A.  The Resurgent Defendants' Offer of Judgment Does Not Moot Plaintiff's Claims......1

          1.  Plaintiff's claims are not mooted as Defendants did not offer full relief. .......1

             a.  Plaintiff's claims for damages may (far) exceed the offer of judgment amount, or at least there is a factual issue as to this to preclude summary judgment……………………………………………………1

             b.  Defendant's offer does not provide full relief because it does not provide for injunctive relief, sought under GBL § 349 and it appears to improperly preclude Plaintiff's recovery from the "NCO" and "Roach" Defendants……………………………………………………………5

          2.  Even if Defendant's Rule 68 Offer provides full relief, the remedy is entry of judgment against Defendants for $4,001 plus fees and costs, not dismissal of the case…………………………………………………………………..7

       B.  The Resurgent Defendants are Directly and Vicariously Liable for the FDCPA and GBL 349 violations they committed through the Roach Defendants...........................7

          1.  The Resurgent Defendants are debt collectors and are liable for the actions of their debt collection attorneys, even absent a showing of control…………….8

          2.  Under basic agency principals, the Resurgent Defendants are liable for their debt collection attorneys even absent a showing of control because the Resurgent Defendants had an attorney-client, principal-agent relationship with their debt collection law firms……………………………………………12

          3.  Even if Bodur is followed, The Resurgent Defendants are vicariously liable under both the FDCPA and the GBL because they in-fact exercised control over their debt collection attorneys………………………………………..14

       C.  Plaintiff withdraws her TCPA claim……………………………………………14

       D.  Plaintiff states a claim that Resurgent Defendants Violated GBL 349 Through the Roach Defendants, Their Debt Collection Law Firm ...................................................15

1.  Robo-signing executions and collecting debts without providing a notice of assignment violate GBL 349………………………………………………………15

2.  The Resurgent Defendants' are vicariously (and directly) liable for the GBL violations they commit through the Roach Defendants……………………...18

3.  The Plaintiff's GBL 349 claims are not time barred…………………………20

4.  Plaintiff states a claim directly for violations of GBL 349, claims which GBL 601 does not preclude………………………………………………………..20

III.  <u>Conclusion</u> .................................................................................................................21

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abel v. Town Sports Int'l, LLC*, 09 CIV. 10388 DF, 2012 WL 6720919 at * 1 (S.D.N.Y. Dec. 18, 2012) ...................................................................................................................................4

*Air Turbine Tech., Inc. v. Atlas Copco AB*, 2007 WL 676015 (S.D. Fla. 2007) ...........................6

*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) .........................11, 14

*Conboy v. AT & T Corp*. 241 F.3d 242 (2d Cir. 2001) ..........................................................20, 21

*Cirkot v. Diversified Fin. Sys., Inc.*, 839 F.Supp. 941 (D. Conn.1993) ........................................8

*Polanco, v. Mel S. Harris and Associates, L.L.C. et al.*, 2013 WL 3913594 (S.D.N.Y. July 1, 2013) ...........................................................................................................................................3

*Polanco, v. Mel S. Harris and Associates, L.L.C. et al,.*2013 WL 3913595(S.D.N.Y July 19, 2013.) ..........................................................................................................................................3

*Polanco, v. Mel S. Harris and Associates, L.L.C. et al*, 2013 WL 3915522 (S.D.N.Y. July 30, 2013) ...........................................................................................................................................4

*Diaz v. Portfolio Recovery Associates, LLC*, 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012).............
.........................................................................................................................16, 18, 19, 21

*Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78 (2d Cir.2013) .......................................5

*Edem v. Ethiopian Airlines Enter.*, 08 CV 2597 RJD LB, 2011 WL 4072163 (E.D.N.Y. Sept. 13, 2011) ...........................................................................................................................................7

*Franco v. Allied Interstate LLC,* 13 CIV. 4053 KBF, 2014 WL 1329168, (S.D.N.Y. Apr. 2, 2014) ...........................................................................................................................................5

*Fritz v. Resurgent Capital Servs.*, LP, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013) ..........16, 19, 21

*Gaidon, et al. v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 35 (N.Y. 2001) .........................................................................................................................................20

*Hrivnak v. NCO Portfolio Mgmt., Inc. et al*, 2013 WL 2476733 (6th Cir. June 11, 2013) .....3, 4, 6

*Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, No. 13-CV-4829 KMK, 2014 WL 5795564, (S.D.N.Y. Nov. 6, 2014) ......................................................................................5, 7

*Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282 (1999) .........................................................................18

*Kobs v. Arrow Serv. Bureau, Inc.* 134 F. 3d 893 (7th Cir 1998) ..................................................2

*Macheda v. Household Fin. Realty Corp.,* 2009 U.S. Dist. LEXIS 2903 (N.D.N.Y 2009) ...........2

*Marucci v. Cawley & Bergmann, LLP*, No. CIV. 2:13-4884 KM, 2014 WL 7140496 (D.N.J. Dec. 15, 2014)( ..................................................................................................................................10

*Mascoll v. Strumpf*, 2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006) ......................................20, 21

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) .........................................................................................................................................13

*Musah v. Houslanger & Associates*., 962 F. Supp.2d 636 (S.D.N.Y. 2013) .................................17

*MW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436 (2d Cir. N.Y. 2009).....................2

*Perry v. Stewart Title Co*., 756 F.2d 1197 (5th Cir. 1985) ............................................................8

*Peter v. GC Services, LP*, 310 F.3d 344, 353 (5th Cir.2002) .......................................................13

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508 (S.D.N.Y. 2013) ("*Okyere I*").. *passim*

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 647 N.E.2d 741, (1995).............................................................................................................17, 18

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ..............................18

*Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C*., 242 F. Supp. 2d 273, (S.D.N.Y. 2002) ........................................................................................................................................3, 4

*Spagnola v. Chubb Corp*., 574 F.3d 64 (2d Cir. 2009)...........................................................15, 18

*Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010)................. *passim*

*Wadlington v. Credit Acceptance Corp*., 76 F.3d 103 (6th Cir.1996) ............................................8

*Warren v. Sessoms & Rogers*, 676 F.3d 365 (4th Cir. 2012)..........................................................3

*Whitcher v. Town of Matthews*, 136 F.R.D. 582 (W.D. N.C.1991).................................................6

## **Rules**

15 U.S.C.A. § 1692.......................................................................................................................11

15 U.S.C.A. § 1692(a)(6).............................................................................................................9

15 U.S.C.A. § 1692k.....................................................................................................................12

Fed.R.Civ.P. 56(c). ............................................................................................................. *passim*

N.Y. GBL § 349 ................................................................................................................. *passim*

NY Professional Disciplinary Rule 1.2(a) .......................................................................13, 14, 19

## I.  INTRODUCTION

Plaintiff Carmen Gomez submits this memorandum of law in opposition to Motion for Summary Judgment of LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, LP ("Resurgent") (collectively the "Resurgent Defendants" [DE 62]. Former Defendants in this action, Inovision-Medclr Portfolio Group, LLC, Peter T. Roach & Associates, P.C and Kirschenbaum, Phillips and Roach, P.C., and Timothy Murtha are hereinafter referred to as, respectively: "Inovision"; "PTR," "KPR" and Murtha. PTR and KPR are collectively referred to as the "Roach Defendants".

## II.  ARGUMENT

### A.  The Resurgent Defendants' Offer of Judgment Does Not Moot Plaintiff's Claims

#### 1.  Plaintiff's claims are not mooted as Defendants did not offer full relief.

On March 24, 2014, Defendants offered to allow judgment to be entered against them for $4,001.00, "plus reasonable costs and attorney's fees as determined by the Court" (the "offer of judgment" or "OOJ"). [DE 62. p.5]. Defendants claim this offer of judgment provided Plaintiff full relief, depriving this Court of subject matter jurisdiction, and requiring the dismissal of this action. [*Id.*, pp. 3-5]. Defendants' argument fails for a number of reasons.

##### a.     Plaintiff's claims for damages may (far) exceed the offer of judgment amount, or at least there is a factual issue as to this to preclude summary judgment.

Defendants review a sampling of bench rulings (not jury rulings) in FDCPA cases where the Court acting as fact-finder weighed evidence and made low actual damage awards (less than $1,000). Given these cases, Defendants incorrectly conclude that their offer for actual damages of $3,001 (the $4,001 OOJ minus $1,000 in statutory damages) is "more than Plaintiff's

1

maximum recoverable damages." [DE 62, p.4]  As an initial matter, it is not the prevue of a debt collector to assign the value of a claim belonging to a consumer whose rights they violated. Indeed a determination of the *dollar value* of unliquidated damages such as emotional distress would, respectfully, not be in the prevue of the Court given that Plaintiff has made a jury demand.[1]

Moreover, it is clear in the case at bar that Ms. Gomez *could* recover more than $3,001 in actual damages.

First, Ms. Gomez suffered actual damages by becoming contractually obligated to pay attorney's fees and costs accrued in defending the collection lawsuit. Specifically Ms. Gomez accrued attorney's fees and costs in the collection lawsuit for the drafting and filing of an order to show cause to vacate the sewer service default judgment; attending the hearing on the order to show cause, which was granted; drafting and filing of an answer with affirmative defense; drafting and filing a motion to dismiss for the failure to be properly served; attending the hearing on the motion to dismiss, which was granted. *See* Pl. 56.1 at ¶B. 60. The attorney's fees and costs accrued for this exceeds $1,500. *Id.*

Second, Ms. Gomez has suffered signification garden variety emotional distress, and certainly has raised a question of fact as to the amount of those damages. *See* Pl. 56.1 at ¶B. 44-59. Defendants' arguments are the same as rejected those recently forcefully rejected by Judge Batts. In *Polanco v. Mel S. Harris, et al*, the defendant argued that the plaintiff's FDCPA claims were mooted by a $2,000 offer of judgment given that she sought no medical treatment arising from the emotional distress she claimed (resulting from defendant's 10 month delay complying

---

1 *See, e.g., MW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 451 (2d Cir. N.Y. 2009) ("The Seventh Amendment affords a right to trial by jury in civil cases arising in law rather than equity); *Kobs v. Arrow Serv. Bureau, Inc*. 134 F. 3d 893 (7th Cir 1998) (ruling plaintiff has right to jury on damages under FDCPA); *and Macheda v. Household Fin. Realty Corp.*, 2009 U.S. Dist. LEXIS 2903 (N.D. N.Y Jan. 15, 2009)(noting constitutional and precedential problems with denying a Plaintiff a jury).

with a state court order to return previously garnished moneys "forthwith"). 2013 WL 3913594

(S.D.N.Y.) (July 1, 2013) (defendant submission). Plaintiff responded by quoting the emotional

distress claimed in the complaint ("frustration, anxiety, an inability to sleep, constant fear of

being unable to pay for her most essential needs"). Plaintiff's argument in that case can be used

verbatim against Defendants in the case at bar:

> NCOP's position is baseless that a court can summarily determine, on a "jurisdictional"
> motion by the defendant, without considering any evidence, trial or summary judgment
> procedures, the value of Plaintiff's actual damages. Indeed, that very argument has been
> rejected in *Sibersky* by Judge John George Koeltl in the Southern District of New York.[2]
> *Sibersky* has been adopted by the Sixth Circuit in *Warren v. Sessoms & Rogers*, 676 F.3d
> 365 (4th Cir. 2012).[3] Indeed, it appears to be a common practice for NCOP to make
> offers of judgment for what *NCOP believes* is the maximum amount that can be
> recovered and then move to dismiss when that offer is not excepted. The Sixth Circuit
> explicitly rejected NCOP's attempt to do so... *Hrivnak v. NCO Portfolio Mgmt., Inc. et al*,
> 2013 WL 2476733 at * 5 (6th Cir. June 11, 2013).[4]

2013 WL 3913595 (S.D.N.Y.) (July 19, 2013) (Polanco opposition) (footnotes in the

---

 2 *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 277-78 (S.D.N.Y. 2002)
(citations omitted) held:

> Although the plaintiffs' Complaint did not specifically allege actual damages, paragraph 68 states that Mrs.
> Sibersky "has been damaged in an amount to be determined at trial." In light of the liberal notice pleading
> standards, such a statement can be read to include a request for actual damages as allowed by the
> statute…The Court cannot decide on this motion that there are no such damages. Therefore, the offer of
> judgment did not render the plaintiffs' claims moot, the Court retains subject matter jurisdiction over the
> case and the defendant's motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1) is denied.

3 *Warren* held:

> But, at this stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district
> court, we simply cannot hold that Warren could not possibly recover more than $250 if her case proceeded
> to a jury trial. . .  Accordingly, the first option offered by defendants—payment of $250 in actual
> damages—did not moot Warren's case.
> *Warren* at 371 – 372

4 *Hrivnak* at * 5 held:

> All of this should cast a new light on the defendants' arguments about the weaknesses of Hrivnak's federal
> and state claims: (1) that he failed to allege any physical, mental or employment-based harm and thus
> should not be entitled to seek actual damages; (2) that he may not recover more than $1,000 per proceeding
> under the FDCPA or more than $200 on his state claims; (3) that he is not authorized as an individual to
> seek declaratory or injunctive relief under the FDCPA; and (4) that he is not authorized as an individual to
> seek punitive damages. Each argument warrants an identical response: The defendants may be right, but
> each argument goes to the *merits* of Hrivnak's claims, and the merits of those claims are not so insubstantial
> as to deprive the court of jurisdiction. To pick one example, the defendants may be right that the FDCPA
> does not authorize declaratory or injunctive relief. But neither our court nor the Supreme Court has reached
> that conclusion, and it is surpassingly strange to think that this court and the Supreme Court do not have
> jurisdiction to resolve this point of law. Plaintiffs have the right to win—and lose—cases, and we have
> jurisdiction to make the call. To rule on whether Hrivnak is entitled to a particular kind of relief is to decide
> the merits of the case. Neither Civil Rule 68 nor any other Rule or tradition requires the district court to do
> that in response to a motion to dismiss for lack of subject matter jurisdiction.

3

original)

Not only did Judge Deborah Batts adopt the plaintiff's cases and argument, she went so far as to hold that the defendant's position had "no good faith basis" and could provide a basis for sanctions if argued on a motion to dismiss:

> The Court is convinced that a motion to dismiss could not be determined in Defendant's favor, in at least the following areas: (1) because of the damages asserted by Plaintiff in her Complaint likely exceeds Defendant's Offer of Judgment of Settlement and because of the relevant case law, including *Hrivnak v. NCO Portfolio Mgmt., Inc.,* No. 11–3142, 2013 WL 2476733, at *5 (6th Cir. June 11, 2013), and *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.,* 242 F.Supp.2d 273 (S.D.N.Y.2002). As such, granting a motion to dismiss pursuant to Rule 12(b)(1) would not be possible or appropriate.

2013 WL 3915522 (S.D.N.Y. July 30, 2013) (Order)

As in *Polanco*, the Defendants here contend that Plaintiff's actual damages claim can be mooted by what *they* believe is adequate compensation. However, so long as Ms. Gomez raises a question of fact as to her emotional damages, it is for the jury – not Defendants – to decide the value of her emotional distress. Even if Plaintiff never offered evidence at trial regarding her emotional distress damages, she would still be entitled to allow a jury to decide, at the very least, an amount for so-called "garden variety" emotional distress damages, which could far exceed the $3,001 offered for actual damages.[5]

After all, the Defendants inflicted substantial harm on Plaintiff. *See* Pl. 56.1 at ¶B. 47-60. Ms. Gomez was afraid when she found out her bank account was restrained, and that fear and anxiety increased as Defendants' debt collection activities continued, from the threat to garnish 20-25% of her wages, through their continued calls on her cell phone. ¶ 47 The stress and anxiety continued through Defendants' refusal to voluntarily release the garnishment of her

---

5 *See e.g. Abel v. Town Sports Int'l, LLC,* 09 CIV. 10388 DF, 2012 WL 6720919 at * 16 (S.D.N.Y. Dec. 18, 2012) (surveying cases upholding "garden variety" emotional distress awards of $30,000 - $125,000; "In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such claims typically lack [ ] extraordinary circumstances and are not supported by any medical corroboration.")

account, to her having to incur attorney's fees and costs to seek to vacate a default judgment rendered by sewer service to collect a time barred debt. ¶ 48. She is contractually obligated to pay attorney's fees and costs for the work done to vacate the default judgment. ¶ 48.  The fear and anxiety continued as Defendants continued to garnish and/or continued to retain her wages. ¶ 49. Ms. Gomez could not sleep for a number of months while this was happening. ¶ 50 While my anxiety subsided when the order dismissing the case was finally rendered, she still continued having trouble sleeping. ¶ 51. She had extreme stomach pain after every meal during this time. ¶ 52. She had a few years prior had stomach surgery and did have some issues from time to time. But after she found out the Defendants sought to restrain her bank account, she had constant severe stomach pains after every meal. ¶ 53. Occasionally she would vomit. ¶ 54.   She      was fixated on the issue, constantly thinking about it every day. ¶ 55. She was stressed out, very depressed, and even had suicidal thoughts. ¶ 56  She was afraid of what the garnishment would mean for her to be able to pay her bills for her own basic needs. ¶ 57. Moreover, the garnishment made her worry whether she could continue to try to support financially her daughter and her daughter's two children. ¶ 58 Her daughter and her daughter's two children lived in a homeless shelter and she did what she could to help them financially. ¶ 59.

> **b.    Defendant's offer does not provide full relief because it does not provide for injunctive relief, sought under GBL § 349 and it appears to improperly preclude Plaintiff's recovery from the "NCO" and "Roach" Defendants.**

A valid Rule 68 Offer of Judgment must provide all relief that a plaintiff seeks. *Franco v. Allied Interstate LLC,* 13 CIV. 4053 KBF, 2014 WL 1329168, *2 (S.D.N.Y. Apr. 2, 2014) citing *Doyle v. Midland Credit Management, Inc*., 722 F.3d 78, 81 (2d Cir.2013). *See also* (*Jones-Bartley v. McCabe, Weisberg & Conway, P.C.,* No. 13-CV-4829 KMK, 2014 WL 5795564, at *11 (S.D.N.Y. Nov. 6, 2014)(*"*Second, the offer of judgment must fully satisfy the plaintiff's

claim; a genuine dispute over whether the offer satisfies the entirety of the claim may, by itself, constitute a live case or controversy"); *accord Hrivnak v. NCO Portfolio Management, Inc*., 719 F.3d 564 (6th Cir. 2013). Defendants' offer fails to provide full relief for two more reasons.

First, for the reasons described *infra*, Plaintiff states a claim under GBL § 349, and so seeks injunctive relief. [DE 1, p. 17 ¶83]. Defendants' offer does not provide injunctive relief pursuant to the GBL. [DE 58-18]. "[O]ffers of judgments that address a plaintiff's monetary claim, but fail to address a plaintiff's claim for injunctive relief, have been rendered invalid." *Air Turbine Tech., Inc. v. Atlas Copco AB*, 2007 WL 676015 *2 (S.D. Fla. 2007). *See also*, *Whitcher v. Town of Matthews*, 136 F.R.D. 582, 585 (W.D. N.C.1991) ("In this case, had Defendant made Offers of Judgment excluding the portion of the complaint addressing injunctive relief, the offer would have been ineffective under Rule 68.  Accordingly, it is erroneous for Plaintiffs to contend that they conditionally accepted the offer. Moreover, to permit Plaintiffs to only accept the Offers of Judgment as to monetary damages would cause the action to remain pending as to equitable relief-a result clearly inconsistent with the purpose of the Rule. Therefore, the Court concludes that Plaintiffs failed to accept the original Offers of Judgment").

Second, paragraphs #2 and #5 of the offer include the following language (respectively): "[t]he amounts set forth in paragraph 1 above are inclusive of all damages, fees, costs, and any and all other claimed relief" and "Plaintiff shall not recover any fees, costs or other damages separate from this Offer". [DE 58-18, ¶ 2, 5].

As such, the Defendants' offer can be construed to improperly limit Plaintiff's recovery against the NCO and Roach Defendants. In other words, paragraphs #2 and #5 can be read as a blanket release for all damages claims, not just damages claims against the Resurgent Defendants. Therefore, if read this way, the offer does not provide full relief because it purports

to release damage claims against all the other Defendants, without allowing judgment to be entered against them.  If read this way, the offer also insists on releasing damage claims against NCO and Roach while limiting attorney's fees and costs only to the Resurgent Defendants.  For these reasons, the offer would not give Plaintiff full relief, and therefore fails to moot the case at bar.

**2. Even if Defendant's Rule 68 Offer provides full relief, the remedy is entry of judgment against Defendants for $4,001 plus fees and costs, not dismissal of the case.**

Even if the Defendants' offer of judgment offered the full relief, the proper result would not be the dismissal of the case, but rather an entry of that judgment.6 Therefore, if Defendants prevailed in their mootness argument, the proper result would for the Court to enter judgment for $4,001, plus reasonable fees and costs to be determined by the court upon the submission of a fee petition. See also (*Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, No. 13-CV-4829 KMK, 2014 WL 5795564, at *14 (S.D.N.Y. Nov. 6, 2014)( "because the Court has not entered judgment in Plaintiff's favor, there is no doubt that the Plaintiff's claim is currently not moot").

**B. The Resurgent Defendants are Directly and Vicariously Liable for the FDCPA and GBL 349 violations they committed through the Roach Defendants**

The Resurgent Defendants are vicariously liable for the actions of their debt collection attorneys under the FDCPA and GBL. The Resurgent Defendants argue that they cannot be liable because many of actionable events in Plaintiff's complaint were performed by their debt collection attorneys rather than themselves. [DE 61, p.6]. In making their argument, the Resurgent Defendants contend that:

   a)  LVNV purchased the putative judgment sought to be collected from Ms. Gomez;

---

6 *Edem v. Ethiopian Airlines Enter.*, 08 CV 2597 RJD LB, 2011 WL 4072163 (E.D.N.Y. Sept. 13, 2011) (J. Dearie) *aff'd*, 501 F. App'x 99 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 1810, 185 L. Ed. 2d 813 (U.S. 2013) ("Accordingly, judgment shall be entered against EAE in the amount of 1,000").

received the putative rights to collect on Plaintiff's account as an assignee owner (See LVNV Aff., Ex. A.)") [DE 61, ¶4];

b) LVNV retained Resurgent as its master servicer to attempt to collect the putative judgment; [DE 61, ¶6].

c) LVNV, through its master servicer Resurgent, retained the law firm of Eltman, Eltman and Cooper, P.C. ("EEC") to attempt to collect the putative debt; [DE 61, ¶6].

d) On or about September 27, 2012, EEC, on behalf of LVNV and Resurgent, retained Peter T. Roach and Associates, P.C. ("PTR") (which later became Kirschenbaum, Phillips & Roach, P.C ("KPR")) to collect on the putative judgment. [DE 61, ¶6].

As explained below, the Resurgent Defendants' admitted conduct makes them liable for the debt collection violations which ensued.

1. **The Resurgent Defendants are debt collectors and are liable for the actions of their debt collection attorneys, even absent a showing of control.**

The record clearly shows that the Resurgent Defendants are debt collectors. LVNV states on its website (http://lvnvfunding.com/) that it "purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency. The management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent)." Pl. 56.1 at ¶s B. 62-63. It has long been black letter law that a debt collector includes an assignee that regularly collects debts that are already in default at the time of assignment, or whose principal purpose is to collect such debts. *See, e.g. Wadlington v. Credit Acceptance Corp*., 76 F.3d 103, 106 (6th Cir.1996); *Perry v. Stewart Title Co*., 756 F.2d 1197, 1208 (5th Cir. 1985); *Cirkot v. Diversified Fin. Sys., Inc*., 839 F.Supp. 941, 944 (D. Conn.1993); *Kimber v. Fed. Fin. Corp*., 668 F.Supp. 1480, 1483–86 (M.D. Ala. 1987)

Likewise Resurgent states on its website (www.resurgent.com ) that it "is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers. We manage accounts across the credit spectrum including performing accounts, sub- and non-performing accounts, secured accounts, and unsecured accounts." Pl. 56.1 at ¶s B. 62-63. As such, Resurgent is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

PTR and KPR admit in their Answer they are debt collectors. Pl. 56.1 at ¶s B. 64..EEC is a debt collector because they, as a subservicer of Resurgent, plays the same role for Resurgent as Resurgent does for LVNV: it arranges for other debt collectors (including debt collection law firms such as PTR and KPR) to collect on debts for LVNV.  [DE 61, Def. 56.1 ¶ 6,].

Because they are debt collectors as contemplated by the FDCPA, the Resurgent Defendants are liable for the "unlawful collection activities carried out by another on its behalf" even absent a showing of control. *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-516 (S.D.N.Y. 2013) (*Okyere I*). The ruling in *Okyere I* is instructive to the issue at hand. In *Okyere I*, a debt collector (Palisades) claimed that it could not be liable for the actions of its debt collection law firm because it did not exercise control over the law firm. *Id.* The court rejected the debt collector's position, ruling that control is not a requisite element for liability in the context of the FDCPA:

> As Palisades notes, the complaint makes no allegations that it took any action with respect to the violations alleged in the complaint other than engaging the Houslanger Defendants to represent it in court. *See* Palisades' Reply at 2. As a result, Palisades argues that it cannot be liable for the acts of the Houslanger Defendants. *Id.* at 2–3.
> This argument is rejected. Case law has held that an entity that "itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on *516 its behalf." *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404

(3d Cir.2000). In *Pollice,* for example, a company called NFT, which was involved in purchasing delinquent claims from municipalities, entered into an agreement with another debt collection company, CARC, under which CARC would collect on claims for the benefit of NFT. 225 F.3d at 385–86. Similar to Okyere's complaint, the plaintiff's complaint in *Pollice* stated throughout that NFT committed certain violations of the FDCPA "through" CARC. *Id.* at 386–87, 393. The Third Circuit held that NFT "may be held vicariously liable for CARC's collection activity" because a debt collector subject to the FDCPA should "bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Id.* at 405.

Indeed, cases have specifically noted that vicarious liability may attach in the context of an attorney-client relationship where both the attorney and its client constitute "debt collectors" under the FDCPA. *See Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994). In *Fox,* the Ninth Circuit held that a debt collection company could be held liable for its attorney's violation of the FDCPA's venue provision—even if the decision was made "solely by" its attorney. *Id.* ("[W]e ... conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."). Other cases have reached similar results. *See, e.g., Martsolf v. JBC Legal Grp., P.C.,* 2008 WL 275719, at *11 (M.D.Pa. Jan. 30, 2008) (debt collection company and its attorney "undisputedly maintain an attorney-client and agent-principal relationship for the purpose of collecting debts" and thus the debt collection company is "vicariously liable for FDCPA infractions that [its attorney] commits while acting on its behalf."); *Oei v. N. Star Capital Acquisitions, LLC,* 486 F.Supp.2d 1089, 1094–96 (C.D.Cal.2006) (citing cases) (stating that "courts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf" and rejecting debt collection company's argument that it could not be held liable for its attorney's conduct because it was an independent contractor); *accord Newman v. Checkrite Cal., Inc.,* 912 F.Supp. 1354, 1369–72 (E.D.Cal.1995); *Kimber v. Fed. Fin. Corp.,* 668 F.Supp. 1480, 1486 (M.D.Ala.1987); *cf. Caron v. Charles E. Maxwell, P.C.,* 48 F.Supp.2d 932, 936–37 (D.Ariz.1999) (no vicarious liability for attorney's actions where client was not a debt collection company).

*Id.* at, 515-17.

See also *Marucci v. Cawley & Bergmann, LLP*, No. CIV. 2:13-4884 KM, 2014 WL 7140496, at

*5 (D.N.J. Dec. 15, 2014)(accord)("The Fund, a debt collector, allegedly hired Cawley, also a

debt collector, to collect a debt. That allegation supports a logical inference that the Fund had the

right to control Cawley's actions, precisely the sort of principal-agent relationship to which

Meyer referred. The complaint alleges both that Cawley sent the Letter on the Fund's behalf, and

that it did so within the scope of its relationship with the Fund. (Compl.¶¶ 12, 15). No more is

required at the pleading stage to state a claim of vicarious liability").

10

Importantly, the Resurgent Defendants fail to address *Okyere I*'s impact on the line of cases that they cite to for the proposition that "it is well-settled that in order to establish vicarious liability under the FDCPA, a plaintiff must show a principal-agent relationship and the principal must exercise control over the conduct or activities of the agent", quoting *Herzlinger v. Nichter*, No. 7:093-CV-00192, 2011 WL 1434609, at * (S.D.N.Y. Feb. 9, 2011) (internal quotations omitted) and later citing *Bodur v.Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) amongst others. [DE 62, pp.6-7].

Since publication in March 2013 however, *Okyere I* has been cited over ten times for the holding described above. *Okyere I* at 515-17. Indeed, there are strong policy reasons to follow *Okyere I* rather than *Bodur*. As described in *Okyere I*, "a debt collector subject to the FDCPA should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf", citing *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3d Cir.2000)(quotations omitted). Otherwise, there is little incentive for large debt collectors to hire law-abiding contractors.

Under *Bodur*, there is even an incentive to hire unscrupulous contractors. That is, high net-worth debt collectors can hire undercapitalized entities to collect on their behalf, escaping liability for any illegal conduct which ensues. The result runs contrary to a central purpose of the FDCPA: to "eliminate abusive debt collection practices by debt collectors, to *insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged*, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C.A. § 1692 (emphasis added).

The potential for abuse is particularly great in the class action context. In class actions, the FDCPA puts a cap on damages "not to exceed the lesser of $500,000 or 1 per centum of the

net worth of the debt collector". 15 U.S.C.A. § 1692k. In the case at bar, for example, the Resurgent Defendants, even by their own conservative accounting, have a net worth of over $62,117,415.00, making their FDCPA class action liability for class action statutory damages up to $500,000.  Pl. 56.1 at ¶s B. 61.(net worth information). In contrast, the net worth of the Roach Defendants a small law firm is likely nominal in comparison, making their FDCPA statutory damages liability no greater than one percent of their net-worth.   Adoption of the Resurgent Defendants' contention would eviscerate the FDCPA class action mechanism. High net worth debt collectors set up a "hear no evil, see no evil, speak no evil" structure to immunize themselves from the FDCPA class action violations

In this action, the Resurgent Defendants hired a debt collection law firm (EEC) to collect on Plaintiff's account on their behalf. [DE 61, Def. 56.1 at ¶5]. EEC in turn hired the debt collection law firms PTR and KPR to collect on the account. [DE 61, Def. 56.1at ¶6]. In other words, PTR and KPR (undercapitalized collectors) acted on the Resurgent Defendants' (a high net-worth enterprise's) behalf. As such, the Resurgent Defendants should be held vicariously liable under the FDCPA for the debt collection violations performed on their behalf, even assuming *arguendo* that they did not exercise control.

**2.  Under basic agency principals, the Resurgent Defendants are liable for their debt collection attorneys even absent a showing of control because the Resurgent Defendants had an attorney-client, principal-agent relationship with their debt collection law firms**

Even under basic agency principals, the Resurgent Defendants are vicariously liable for the actions of their attorneys:

> We do not agree with a requirement that an FDCPA plaintiff show "control" because claims that a principal is liable for an agent's actions normally do not require such allegations. Rather, "traditional vicarious liability rules" ordinarily make principals liable for acts of their agents merely when the agents act "in the scope of their authority." *Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003); *accord Security. Pacific Mortg. & Real Estate Servs., Inc. v.*

*Herald Ctr., Ltd.,* 891 F.2d 447, 448 (2d Cir.1989) (it is an "established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority") (per curiam) (citations omitted). Here, the facts alleged in the complaint easily lead to the conclusion that the Houslanger Defendants were acting within their authority from Palisades.

Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to "control" its agent in material respects if the client wishes to do so. *See generally Martsolf,* 2008 WL 275719, at *10–11 (existence of attorney-client relationship, in which debt collection company retained law firm and transmitted information to firm for the purposes of debt collection services, showed exercise of control sufficient to hold debt collection company vicariously liable for attorney's actions); *Oei,* 486 F.Supp.2d at 1094–95 (not requiring explicit showing of control over attorney's actions to find vicarious liability); *see also Kimber,* 668 F.Supp. at 1486 (noting that without vicarious liability for an attorney's actions, a "debt collector could simply evade the [FDCPA] by hiring an attorney to do what it could not do itself"). Okyere has alleged that both Palisades and the Houslanger Defendants meet the definition of "debt collector" under the FDCPA, and that they maintained an attorney-client relationship. *See* Compl. ¶¶ 8–10, 32, 54. There is no suggestion that the Houslanger Defendants acted outside the scope of their authority. Therefore, Palisades may be held vicariously liable for the actions of the Houslanger Defendants.

*Okyere I,* at 517.

Along these lines, liability based purely on an attorney-client relationship is even imputed under the FDCPA against non-debt collector principal-clients. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 876 (7th Cir. 2000) (Under state partnership law, a partner of a debt collection partnership is jointly and severally liable for the FDCPA violations of the partnership, even if that partner is not a debt collector); and *Peter v. GC Services, LP,* 310 F.3d 344, 353 (5th Cir.2002) (same).

In the case at bar, The Resurgent Defendants admit retaining the collection law firms EEC, PTR and KPR. [DE 61 Def. 56.1 at ¶s5,6]. Indeed, under the New York State Rules of Professional Conduct, PTR and KPR were bound to "abide by" the Resurgent Defendants' "decisions concerning the objectives of representation". N.Y. Stat. Law § RPC Rule 1.2 (McKinney). Therefore, it is evident that PTR and KPR were acting within the scope of their

authority pursuant to the Resurgent Defendants when they attempted collect on Plaintiff's account. As such, the Resurgent Defendants are vicariously liable for the actions of their debt collection attorneys even absent a showing of control.

### 3. Even if *Bodur* is followed, The Resurgent Defendants are vicariously liable under both the FDCPA and the GBL because they in-fact exercised control over their debt collection attorneys

Even if the Court chooses to follow *Bodur*, reject *Okyere I* and require a showing of control, the result is still the same because LVNV is directly liable for the acts it took as the named party in the collection lawsuit. As with any corporation, LVNV can only act in court proceedings through an attorney. See N.Y. C.P.L.R 321(a) (prohibiting corporations from bringing suit other than through counsel).  Thus the acts taken during the debt collection lawsuit are necessarily the acts of the corporate party. Further, LVNV, as the client, necessarily has the right to control its outside law firms. NY Professional Disciplinary Rule 1.2(a) (client's control over his counsel as a matter of right).

In addition, the Resurgent Defendants are liable by ratification. *See* Restatement (2d) of Agency 88, 99. Gomez stated the factual basis of sewer service but the Resurgent Defendants took no steps to determine whether the allegations were true but instead attempted to collect on the judgment and retain the fruit of the poison tree. Pl. 56.1 at ¶s B. 19-27

### C. Plaintiff withdraws her TCPA claim.

Just before the close of discovery the Roach Defendants finally disclosed the name of their auto-dialer vendor. The undersigned immediately issued a subpoena to the vendor for records of calls made to Ms. Gomez through the auto-dialing system.  The Roach Defendants' records indicate that they called Ms. Gomez's cell phone, but did not indicate whether the calls

were made through the Roach Defendants' office phones or through their auto-dialer vendor. The records of the auto-dialer company show no record of calls made through the auto dialing system to Ms. Gomez's cell phone. Therefore Plaintiff withdraws her TCPA claim. As there is no TCPA liability in the first instance, this Court need not decide and this response does not brief whether a debt collector creditor may be vicariously liable for the TCPA violations of its debt collection law firm.

### D. Plaintiff states a claim that Resurgent Defendants Violated GBL 349 Through the Roach Defendants, Their Debt Collection Law Firm.

The Resurgent Defendants violated the GBL. New York's GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The statute creates a private right of action for any person injured by a violation of the statute. GBL § 349(h). The elements of a GBL § 349 claim are that "1) the act or practice was consumer-oriented; 2) the act or practice was misleading in a material respect; and 3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009).

### 1. Robo-signing executions and collecting debts without providing a notice of assignment violate GBL 349.

Conduct that violates the FDCPA has repeatedly been held to also violate GBL 349, and not just for the debt collection law firm, but also for their debt collector client, who was merely the creditor who purchased the defaulted debt. *See Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 428 (S.D.N.Y. 2010)(Plaintiffs state FDCPA and GBL 349 claims by alleging that a debt collector creditor, through its debt collection law firm, regularly used robo-signed affidavits of merit falsely claiming personal knowledge in order to obtain default judgments; and for using false affidavits of service to obtain default judgments to garnish wages and freeze bank

15

accounts); *Diaz v. Portfolio Recovery Associates, LLC*, 2012 WL 661456 * 13,14 (E.D.N.Y. Feb. 28, 2012) (M.J. Pollak) *report and recommendation adopted*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (J. Brodie)(Plaintiffs state FDCPA and GBL 349 claims by alleging a debt collector creditor, through its debt collection law firm, robo-signed debt collection lawsuits without meaningful attorney review, and for doing so to collect time barred debts); *Fritz v. Resurgent Capital Servs.*, LP, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013)(Plaintiffs state FDCPA and GBL 349 claims for alleging a debt collector creditor, through its debt collection law firm, filed collection lawsuits falsely claiming the creditor owned the putative debt when it did not, for representing on the collection complaint that the creditor had a debt collection license when it did not, and for misidentifying the creditor in written communications; claims also stated against the debt collector creditor for misreporting to credit reporting agencies the amounts alleged to be due by rolling costs of court when no judgment had yet been entered).[7]

Just as in *Sykes*, *Diaz*, and *Fritz*, the Resurgent Defendants, through the Roach Defendants, their debt collection law firm, violated the FDCPA as well GBL 349.

First, Murtha and the PC did not perform a meaningful review of the information subpoena and restraining notice he signed and that he knew and intended to be forwarded to Gomez. Mr. Murtha signs between 400 and 460 post-judgment enforcement mechanisms (e.g. garnishments, information subpoena and restraining notices) per week. Pl. 56.1 at ¶ B 13. Further, the time Murtha spends issuing these post-judgment enforcement mechanisms is only a small amount of the time he spends on collections. Pl. 56.1 at ¶ B 14. The sheer number of judgment enforcement devices signed each week demonstrates (or certainly creates a fact issue)

---

7 Incidentally, getting back to the vicarious liability section, the Courts in *Sykes*, *Diaz*, and *Fritz* had no problem holding the debt collection creditors vicariously liable for the FDCPA and GBL 349 violations committed by their debt collection law firms without even needing to get into the issue of whether the creditor controlled or had the right to control the debt collection law firms.

that he did not engage in a meaningful attorney review of each consumer's individual accounts before sending out each device. This is deceptive and abusive. *See Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009) ("to the least sophisticated consumers, for whom the FDCPA was enacted, an attorney's signature implies that an attorney directly controlled or supervised the process through which the letter was sent, and that the signing attorney has personally considered, and formed a specific opinion about, the individual debtor's case.").

Second, the Resurgent Defendants violated the FDCPA and GBL 349 because they, through the Roach Defendants, were attempting to collect a putative debt and a putative judgment without a notice of assignment ever being sent to or received by the consumer. Ms. Gomez was never sent and has never received from anyone any notice of the assignment of the putative Chase account. Pl. 56.1 at ¶ B 15. The Defendants took no steps to determine whether a notice of assignment of the Chase account was sent to or received by Ms. Gomez. Pl. 56.1 at ¶ B 15. A debt collector collecting on a putative assigned violates the FDCPA if the consumer has not received the notice of assignment. *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 638-40 (S.D.N.Y. 2013). These violations are "consumer oriented" because Defendants have no policy to make sure they only collect on debts for which notices of assignment are given.

The above actions violated the GBL. First, the actions were "consumer oriented" and implicate a "broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995). GBL § 349 is intentionally designed to provide far reaching consumer protections: "the reach of these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State' (NY Dept of Law, Mem to

Governor, 1963 NY Legis Ann, at 105)". *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 291 (1999). As such, the statute applies to "virtually all economic activity." Id. at 290. "The critical question, then, is whether the matter affects the public interest in New York." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

Second, the acts or practices were "misleading in a material respect." *Spagnola* at 74. A deceptive practice need not reach the level of common-law fraud to be actionable under GBL § 349. Courts employ an objective test to determine whether conduct is "deceptive or misleading in a material way": whether representations or omissions are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995). Indeed, courts have specifically held that GBL § 349 applies to debt collection litigation, finding liability not just for debt collection law firms but also the debt collection creditors and debt collectors in joint ventures with them. *See Sykes supra* at 424; and *Diaz supra*, at 2012 WL 661456 * 13,14. Similarly, the Defendants' conduct in the case at bar was objectively misleading and deceptive because it was all an attempt to convince Plaintiff that she had to pay a debt, which (for a number of reasons): she was not obligated to pay; and Defendants were not entitled to collect.

Last, although "actual" injury must be proven in order to recover under the statute, it need not be "pecuniary harm." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000). In this case Defendants' conduct caused Plaintiff actual injury. Therefore, Plaintiff states a claim for violations of the GBL. Moreover, as discussed below, the Resurgent Defendants are specifically liable under the GBL for the violations.

**2.    The Resurgent Defendants' are vicariously (and directly) liable for the GBL violations they commit through the Roach Defendants.**

The Resurgent Defendants argue that they are not liable under the GBL because they

"cannot be held vicariously liable for the acts of the Roach Defendants". [DE 62, p.11]. The courts in *Sykes*, *Diaz*, and *Fritz* had no problem holding the debt collection creditors vicariously liable for the FDCPA and GBL 349 violations committed by their debt collection law firms without even needing to get into the issue of whether the creditor controlled the debt collection law firms.

Further, as discussed *supra*, under basic agency rules the Resurgent Defendants are vicariously liable for the actions the Roach Defendants (their attorneys) took on their behalf. "[T]raditional vicarious liability rules ordinarily make principals liable for acts of their agents merely when the agents act in the scope of their authority". *Okyere I*, at 517, citing *Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)(internal quotations omitted). The Roach Defendants were acting in the scope of their authority on the Resurgent Defendants' behalf when they: 1) attempted to enforce the improperly obtained judgment by failing to vacate the judgment and dismiss the action; 2) made collection phone calls to collect on the improperly obtained judgment; 3) sent collection letters and income executions to collect on the improperly obtained judgment; and 4) failed to respond to a verification demand from Plaintiff or otherwise provide a notice of assignment. As such, the Resurgent Defendants are vicariously liable for all these actions.

In addition, as discussed *supra*, as with any corporation, LVNV can only act in court proceedings through an attorney. See N.Y. C.P.L.R 321(a) (prohibiting corporations from bringing suit other than through counsel).  Thus, the acts taken during the debt collection lawsuit are necessarily the acts of the corporate party. Further, LVNV, as the client, necessarily had the right to control its outside law firms. NY Professional Disciplinary Rule 1.2(a) (client's control over his counsel as a matter of right). Therefore, the Resurgent Defendants are also directly

19

liable for the actions that the Roach Defendants took on their behalf. As such, the Resurgent Defendants are liable under the GBL.

**3. The Plaintiff's GBL 349 claims are not time barred.**

Defendants correctly state that the GBL has a 3 year statute of limitations. *Gaidon, et al. v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 35 (N.Y. 2001). However the GBL robo-signing and lack of assignment violations were committed within 3 years of the filing of the complaint in this action.

**4. Plaintiff states a claim directly for violations of GBL 349, claims which GBL 601 does not preclude.**

The Resurgent Defendants argue that GBL 601 precludes Plaintiff's GBL 349 claims. Defendants' argument, however, is based on an overbroad misreading of the case law. Defendants cite to two cases: *Conboy v. AT & T Corp.* 241 F.3d 242 (2d Cir. 2001) and *Mascoll v. Strumpf*, 2006 WL 2795175, at *1 (E.D.N.Y. Sept. 26, 2006). In *Conboy*, the plaintiffs alleged that the defendants violated GBL 349 because the defendants' conduct violated GBL 601. *Conboy,* at 257 ("Plaintiffs argue that UCS engaged in a "deceptive act" within the meaning of Section 349 by violating New York General Business Law § 601). The court rejected the plaintiff's argument holding that a violation of GBL 601 does not equal a violation of GBL 349. *Id.* In addition, the court explained that GBL 349 requires a specific claim of a deceptive practice. *Id.* In other words, a plaintiff cannot state a claim under GBL 349 unless the plaintiff's claim meets the elements of GBL 349. *Id.*

*Mascoll* stands for the same principle. At *9 ("While the statute provides a private right of action to any person injured by a business' deceptive act or practice," see *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992) (citing GBL § 349(h)), a defendant

cannot use § 349 as a vehicle for alleging violations of GBL § 601. See *Conboy*, 241 F.3d at 258. Rather, "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."*Bildstein*, 329 F.Supp.2d at 413 (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2000)). Thus, a Section 349 violation requires a defendant to mislead the plaintiff in some material way.") citing *Conboy* 241 F.3d at 258 (internal quotations omitted).

*Conboy* and *Mascoll*  do not stand for the Defendants' proposition that GBL 601 somehow precludes individual GBL 349 claims. Indeed, a number of successful claims have been stated under GBL 349 for conduct that could be actionable under GBL 601. *See Sykes* 757 F.Supp.2d. at 424 (claim stated for a debt collection law firm and its debt collector client filing time-barred debt collection lawsuits without conducting meaningful review of the facts alleged in the complaints); *Diaz v. Portfolio Recovery Associates, LLC*, 2012 WL 661456 * 13,14(accord); *Fritz v. Resurgent Capital Servs*., LP, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013)(GBL 349 claims stated for debt collectors' misrepresenting ownership of the debt, status as licensed debt collectors, and the amount of debt). The *Sykes* and *Diaz* decisions also contradict the Resurgent Defendants' statement that "[t]here is no precedent holding that commencing a suit to collect on time-barred is deceptive and violates GBL § 349".  [DE 62, p.12]. As such, Plaintiff states a viable claim for the Resurgent Defendants' violation of GBL 349, and the claim is not precluded by GBL 601.

### E.  CONCLUSION

For these reasons, Plaintiff prays the Court deny the Resurgent Defendants' motion for summary judgment. [DE 62]

Respectfully submitted,

*/s/*

Ahmad Keshavarz

ATTORNEY FOR PLAINTIFF

The Law Office of Ahmad Keshavarz

16 Court St., 26th Floor

Brooklyn, NY 11241-1026

Phone: (718) 522-7900

Fax:     (877) 496-7809

Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Defendants** LVNV Funding, LLC., and Resurgent Capital Services, LP.
**By and through their attorneys of record**
Concepcion A. Montoya;
Han Sheng Beh;
Jason Oliveri;
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Tel: (212) 471-6200
cmontoya@hinshawlaw.com;
Hbeh@hinshawlaw.com;
joliveri@hinshawlaw.com

Dated:  Brooklyn, NY
January 24, 2015
/s/
Ahmad Keshavarz