UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CARMEN GOMEZ

                                                       Case No.: 1:13-CV-07395

                      **Plaintiff,**

      -against-

**INOVISION-MEDCLR PORTFOLIO GROUP, LLC.,
PETER T. ROACH & ASSOCIATES, P.C.,
KIRSCHENBAUM, PHILLIPS & ROACH, P.C.
TIMOTHY MURTHA
LVNV FUNDING, LLC
RESURGENT CAPITAL SERVICES, LP
NCO FINANCIAL SYSTEMS, INC.**

                      **Defendants.**

------------------------------------------------------------------X

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN RESPONSE TO DEFENDANTS' LVNV FUNDING, LLC AND RESURGENT CAPITAL SERVICES, LP (THE "RESURGENT DEFENDANTS") MOTION FOR SUMMARY JUDGMENT [DE 62]**

A.  PLAINTIFF'S RESPONSE TO THE RESURGENT DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS ON MOTION FOR SUMMARY JUDGMENT [DE 61].

1.  On or about September 12, 2005, non-party Mel S. Harris and Associates LLC ("Mel Harris") filed a lawsuit (the "Debt Collection Suit") against Plaintiff to collect on a debt Plaintiff owed to Chase Bank USA, N.A. ("Chase") which was assigned to Defendant Inovision-Medclr Portfolio Group, LLC ("Inovision")

**RESPONSE:** Undisputed.

2.  Plaintiff failed to appear in the Debt Collection Suit. Accordingly, on or about November 30, 2005, a default judgment was entered against Plaintiff (the "Gomez Judgment").

**RESPONSE:** Undisputed.

3.  The Debt Collection Suit was brought solely by Inovision through Inovision's attorneys Mel Harris and prior to the acquisition of the Gomez Judgment by LVNV.

**RESPONSE:** Undisputed.

1

4.     On or about August 5, 2011, Inovision sold the Gomez Judgment to non-party Sherman Originator III, LLC ("Sherman") and on or about August 30, 2011, Sherman transferred and assigned the Gomez Judgment to LVNV.

**RESPONSE:**

Disputed. This statement is not proven by the evidence cited.

As a basic matter, Defendants have not even established Ms. Gomez ever had the putative account with the putative original creditor. Ms. Gomez admits she did have a Chase credit card at some point, but has not acknowledged the account number sought to be collected was her account. Defendants have produced no documents whatsoever from Chase to even establish the existence of the account sought to be collected: no credit card application, no credit card agreement, no credit card statements.

Moreover, there is a fundamental gap in title of the sale of the account: there is no evidence that Chase ever sold Ms. Gomez's account to any entity, much less a complete chain of title governing the specific account sought to be collected.

Defendants have attached two documents, each with signature pages dated August 30, 2011. One is entitled Bill of Sale and Assignment. The other is entitled Bill of Sale and Assignment.

Importantly, neither document reference Ms. Gomez or the putative debt in any way, much less demonstrate a transfer of title of that debt.

The document entitled Bill of Sale and Assignment purports to sell from nineteen different entities (only one of whom is Inovision-Medclr Portfolio Group, LLC) to an entity named "Sherman Originator III, LLC" an unknown number of accounts purported in a purported .txt computer file. That file is not produced; we have no idea what it contains, much less Ms. Gomez or the Chase account she is alleged to have owed. The name of the .txt file includes the numbers 20110830, so perhaps that is a reference to August 30, 2011.

The Bill of Sale and Assignment document is also incomplete. The purported sale is subject to an August 5, 2011 Sale and Assignment Agreement that is not produced. Therefore the full putative assignment contract is not produced.

Likewise, document entitled Transfer and Assignment document purports to make multiple assignments of certain accounts attached as Exhibit A. But Exhibit A, a one page document, makes no reference to Ms. Gomez or the putative Chase account. It just references a string of numbers for a "Transfer Group" and "Portfolio Group," whatever that is.

The Transfer and Assignment document purports to make, in just four sentences, assignments from Sherman Originator III, LLC, to Sherman Originator, LLC, to LVNV Funding, LLC.

Importantly, even if the assignments even contained the slightest hint of applying to Ms. Gomez, which they do not, as ¶ 15 of the Affidavit of Ms. Gomez states, no notice of assignment from any was received, much less a notice of assignment from the long list of putative assignment. Without sending and receiving of a notice of assignment, the

assignment is invalid, and LVNV legally cannot collect on the putative assigned debt.

5.    Resurgent, LVNV's master servicer, retained the law firm of Eltman, Eltman and Cooper, P.C. ("EEC") to collect on the Gomez Judgment.

**RESPONSE:** Undisputed.

6.    On or about September 27, 2012, EEC retained Peter T. Roach and Associates, P.C. ("PTR") (which later became Kirschenbaum, Phillips & Roach, P.C ("KPR")) to collect on the Gomez Judgment.

**RESPONSE:** Undisputed.

7.    Co-defendant Timothy Murtha ("Murtha" and together with Peter T. Roach and Associates P.C. ("PTR") and KPR, the "Roach Collectors") was an attorney and employee for PTR (and then KPR).

**RESPONSE:** Undisputed.

8.    PTR does not make any collection calls using an automated dialer system. Instead, PTR uses non-party Global Connect to make automated calls.

**RESPONSE:** It is unknown to Plaintiff whether PTR itself makes collection calls using an automated dialer. In addition, it is unknown to Plaintiff whether PTR uses other third parties, aside from Global Connect, to make automated calls. Plaintiff has a factual basis to support the claim that PTR used an automated dialer to make collection calls to her. However, it is uncertain who the dialer was. *See infra*, Section B. ¶27-29.

9.    PTR's collection notes do not indicate that any collection calls were made to Gomez's cellular phone using a dialer.

**RESPONSE:** Undisputed only insofar as PTR's collection notes do not readily indicate that collection calls were made to Gomez's cellular phone using a dialer. Plaintiff has a factual basis to support the claim that PTR made collection calls to her phone using a dialer. *See infra*, Section B. ¶27-29.

10.   In its response to Plaintiff's subpoena, Global Connect stated that it "has no record of any calls made by Peter Roach & Associates, P.C., through the Global Connect platform to the phone numbers (347) 447-8747 and (347) 867-4422."

**RESPONSE:** Undisputed only insofar as Global Connect maintains it has no records reflecting such information. Plaintiff has a factual basis to support the claim that PTR made collection calls

3

to her phone using a dialer. *See infra*, Section B. ¶27-29

11.     On February 19, 2013, after PTR had already commenced collection activities, Gomez filed an order to show cause to vacate the Gomez Judgment in the Bronx Civil Court.

**RESPONSE:** Undisputed.

12.     On March 8, 2013, the Bronx Civil Court vacated the Gomez Judgment on default and directed Gomez to file an Answer.

**RESPONSE:** Undisputed.

13.     On March 15, 2013, PTR received notice that the Gomez Judgment was vacated. Upon receiving such notice, PTR ceased all collection activity.

**RESPONSE:** Undisputed only that PTR received notice that the Gomez Judgment was vacated. A variety of debt collection activity continued against Plaintiff after March 15, 2013 in regards to the putative account from the Debt Collection Suit. *See infra*, Section B. ¶

14.     On or about March 18, 2013, Gomez filed an Answer and on May 16, 2013 she moved to dismiss the Debt Collection Action solely for the basis that the Bronx County Civil Court lacked personal jurisdiction due to defective service. On her motion, Gomez does not claim that the debt owed was extinguished.

**RESPONSE:** Undisputed only that Plaintiff filed an Answer on or about March 18, 2013. Plaintiff had a variety of defenses to the Debt Collection Action, including that the putative debt was time-barred and that the debt was not owed. *See infra*, Section B. ¶

15.     On or about May 31, 2013, the Debt Collection Action was dismissed.

**RESPONSE:** Undisputed. But the collection action was dismissed only after Ms. Gomez was forced to retain an attorney and become contractually liable for attorney's fees and costs to vacate the judgment for sewer service and dismiss the case for sewer service as LVNV refused to agree to do so.

16.     There are no agreements or contracts between the Roach Collectors and the Resurgent Defendants.

**RESPONSE:** Disputed. Plaintiff has a factual basis for the claim that Resurgent had agreements or contracts sufficient to constitute an attorney-client relationship with the Roach Collectors, with collection attempts to be performed by the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control EEC and Roach (their attorneys) in the  attorney-client relationship. *See supra*  at Section A. ¶4-7.

17. Resurgent's collection notes for Plaintiff's account reflect that Resurgent communicated solely with non-party EEC, and that Resurgent had no communications or interactions with the Roach Defendants.

**RESPONSE:** Plaintiff has a factual basis for the claim that Resurgent communicated either directly or indirectly with EEC and the Roach Defendants sufficient to constitute an attorney-client relationship, with collection attempts to be performed by EEC and the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control EEC and Roach (their attorneys) in the attorney-client relationship. *See supra* at Section A. ¶4-7.

18. Resurgent's communications with EEC were solely limited to the assignment of Plaintiff's account to EEC.

**RESPONSE:** Plaintiff has a factual basis for the claim that Resurgent communicated either directly or indirectly with EEC and the Roach Defendants to an extent sufficient to constitute an attorney-client relationship, with collection attempts to be performed by EEC and the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control EEC and Roach (their attorneys) in the attorney-client relationship. *See supra* at Section A. ¶4-7.

19. From the time that the Gomez Judgment was obtained by LVNV, until it was vacated, resulting in a cessation of all collection activities, all collection attempts on the Gomez Judgment were performed solely by the Roach Defendants.

**RESPONSE:** Undisputed only insofar that the collections attempts were performed by the Roach Defendants. Plaintiff has a factual basis for the claims that the collection attempts were performed by the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control Roach (their attorneys) in an attorney-client relationship. *See supra* at Section A. ¶4-7.

20. At his deposition, Murtha testified that the Roach Defendants communicated solely with EEC regarding their handling of the Plaintiff's account:

> Q. Okay. And so PTR was the servicer for Eltman, Eltman & Cooper,
>
> correct?
>
> A. Yes.
>
> . . .
>
> Q. Okay. So is all the information regarding Ms. Gomez's account
>
> transferred from EEC to PTR?
>
> A. Yes.
>
> Q. Did PTR receive any other information regarding Ms. Gomez's

account, other than through EEC?

A. No.

**RESPONSE:** Plaintiff has a factual basis for the claim that Resurgent communicated either directly or indirectly with EEC and the Roach Defendants to an extent sufficient to constitute an attorney-client relationship, with collection attempts to be performed by EEC and the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control EEC and Roach (their attorneys) in the attorney-client relationship. *See supra* at Section A. ¶4-7.

21. Further, all communications that the Roach Collectors had with respect to the Gomez Account were solely with EEC through EEC's website interface:

>Q. Did PTR communicate back to Eltman, Eltman & Cooper regarding Ms.
>
>Gomez's judgment?
>
>A. There – there's always communication between – There as
>
>communication about accounts specifically between the servicing agent and
>
>Eltman, Eltman & Cooper.
>
>. . .
>
>Q. So there are communications between Eltman, Eltman & Cooper and PTR
>
>through the Eltman, Eltman & Cooper website regarding Ms. Gomez, correct?
>
>A. Yes.

**RESPONSE:** Plaintiff has a factual basis for the claim that Resurgent communicated either directly or indirectly with EEC and the Roach Defendants to an extent sufficient to constitute an attorney-client relationship, with collection attempts to be performed by EEC and the Roach Defendants on the Resurgent Defendants' behalf, with the Resurgent Defendants maintaining exclusive right to control EEC and Roach (their attorneys) in the attorney-client relationship. *See supra* at Section A. ¶4-7.

22. Murtha further testified that EEC did not affirmatively engage in collection of the Gomez Account.

>Q. So Eltman, Eltman & Cooper actually has – is affirmatively engaged in
>
>the collection of Ms. Gomez's account, right?
>
>A. Affirmatively engaged?
>
>Q. It's not just handing an account over? It's engaged in the collection
>
>process as the process goes forward right?
>
>A. Not affirmatively engaged in the collections.

**RESPONSE:** Undisputed only to the extent that Murtha testified that EEC did not affirmatively engage.

23. Murtha also testified that PTR and KPR were responsible for training all of their employees internally for FDCPA and TCPA compliance:

> Q. What steps, if any, does PTR take to monitor what the collectors are
>
> saying to consumers?
>
> A. There's FDCPA training, training on the – you know, TCPA. I'm not sure
>
> if I said the right letters. They watch a video. They watch an instructional video.
>
> They take tests – written tests, and then there was monthly training sessions.

**RESPONSE:** Undisputed.

24. Plaintiff filed the instant Complaint on or about October 10, 2013.

**RESPONSE:** Undisputed

25. On March 4, 2014 LVNV made a Rule 68 offer of judgment for $4,001.00 plus reasonable attorney's fees. The offer of judgment was amended on March 24, 2014. Plaintiff declined to accept the offer of judgment.

**RESPONSE:** Undisputed

**B.    ADDITIONAL MATERIAL FACTS WHICH PLAINTIFF BELIEVES ARE UNDISPUTED AND RELEVANT TO THE RESURGENT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DE 61].**

1. The complaint in the underlying collections suit sought to collect an alleged credit card debt where THE CHASE MANHATTAN BANK ("Chase") was the original creditor. Exh. A, Keshavarz Dec. p. 7.

2. According to the affidavit of service, the complaint was served on Ms. Gomez on or about September 28, 2005, and mailed shortly thereafter on or about October 3, 2005. Exh. A, Keshavarz Dec. p. 7.

3. Ms. Gomez was never served with the summons and complaint for the action and never received a copy of the summons and complaint by mail. Exh. A, Keshavarz Dec. pp. 3:17, 19:2-19:3; Exh. B, Keshavarz Dec., Plaintiff's Affidavit ("Pl. Aff."), p.4:1.

4. Since Ms. Gomez did not know she had been sued, she did not appear in the action. Exh. A, Keshavarz Dec. pp. 3:17, 19:2-19:3; Exhibit B, Keshavarz Dec. p. 2:10.

5. On November 30, 2005, Inovision obtained a default judgment against Ms. Gomez. *See* Exhibit A, Keshavarz Dec. Pl. File p.9.

6. Ms. Gomez closed the Chase account in question more than a decade before the above-mentioned lawsuit was filed Exh. A, Pl. File p. 20:11; Exh. B, Keshavarz Dec. p. 2:11.

7. Chase has its main office, as set forth in its articles of association, in Delaware, and has its principal place of business in Delaware. This has been true from date of the alleged default of the underlying account to present. Exh. C, Keshavarz Dec., Affidavit of Chase Custodian of Records.

8. On or around October 19, 2012, Timothy Murtha ("Murtha"), an attorney at Peter T.Roach and Associates, P.C. (the "PC") signed an information subpoena and restraining notice to be sent to Municipal Credit Union ("MCU"), seeking to enforce the action. Exh. D, Keshavarz Dec., Restraining Notice.

9. Notably, the restraining notice contained a different plaintiff in the caption, LVNV Funding LLC, though the index number is identical. Exh. D, Keshavarz Dec.

10. On November 7, 2012, MCU sent a copy of the information subpoena with restraining notice to Ms. Gomez, as required by New York law. Exh. D, Keshavarz Dec.

11.     Murtha and the PC knew the signed information subpoena and restraining notice would be forwarded by MCU to Ms. Gomez. Exh. D, Keshavarz Dec; Exh E, Keshavarz Dec., Murtha 10/24/2014 Deposition Transcript ("Murtha Tr. *I.*") pp. 201:12-203:23;

12.     Murtha and the PC did not perform a meaningful review. Rather, the PC and Murtha had "robo-signed" the information subpoena and restraining notices. Exh. F, Keshavarz Dec., Murtha 6/25/2013 Deposition in *Khan* v. *Midland Funding, LLC et al.* No. 1:12-CV-08462-RJS (S.D.N.Y) ("Murtha Khan Tr."), pp. 118:20-122:10.

13.     Mr. Murtha signs between 400 and 460 post-judgment enforcement mechanisms (e.g. garnishments, information subpoena and restraining notices) per week. Exh. F, Keshavarz Dec., pp. 118:20-122:10

14.     Further, the time Murtha spends issuing these post-judgment enforcement mechanisms is only a small amount of the time he spends on collections. Exh. F, Keshavarz Dec., pp. 27:7-27:14.

15.     Ms. Gomez was never sent and has never received from anyone any notice of the assignment of the putative Chase account. Exh. B, Keshavarz Dec., p.2:15.

16.     The Defendants took no steps to determine whether a notice of assignment of the Chase account was sent to or received by Ms. Gomez. Exh. B, Keshavarz Dec., p.2:15; Exh. E, Keshavarz Dec. pp.143:22-158:02.

17.     The first time Ms. Gomez knew that a default judgment was rendered against her regarding a Chase account was after her bank account was frozen and she spoke with a debt collector at the PC in November 2012. Exh. B, Keshavarz Dec., p. 1:5-1:7.

18.     In November 2013, the PC told Ms. Gomez that they could garnish 20 or 25 percent of her wages. Exh. B, Keshavarz Dec., p. 2:16.

19.     On December 5, 2012, Ms. Gomez sent a letter to the PC informing the PC that she had no knowledge of the debt, that the statute of limitations on the debt had expired, and requesting proof of the debt/default. Ms. Gomez also requested that Defendants stop calling her, and specifically requested they do not call her on her cell phone. Exh. B, Keshavarz Dec., p 2:17; Exh. G, Keshavarz Dec., 12/05/2012 Letter.

20.     Ms. Gomez, to her recollection, has never given Chase or any debt collector seeking to collect on the putative Chase account permission to call her cell phone. Despite this – and despite Ms. Gomez's clear demand that calls to her cell phone cease- defendants continued to call her cell phone seeking to the collect the time barred debt. Exh. B, Keshavarz Dec., pp. 4:29, 4:32; Exh. G, Keshavarz Dec.

21.     On or about December 11, 2012 the PC sent Ms. Gomez a dunning letter seeking to collect on a judgment entered November 30, 2005 for $3,864.33, plus interest at 9 percent from the date of judgment. The letter demanded that payment checks be made out to "Peter T. Roach & Associates, P .C." Exh. B, Keshavarz Dec., p. 3:19; Exh. H, Keshavarz Dec. 12/11/2012 letter.

22.     On January 20, 2013, Kirschenbaum, Phillips, & Roach, P.C. ("KPR") sent a letter to Ms. Gomez indicating that they are now representing Roach with respect to the collection of Ms. Gomez's account. KPR stated in their letter that they would cease all collection activities and verify the debt if Ms. Gomez wrote to them in 30 days asking them to do so. Exh I., Keshavarz Dec. 01/20/2013 letter.

23.     Ms. Gomez responded to KPR on January 30, 2013 with a copy of the same letter sent to

Roach on December 5, 2012. KPR never responded to that letter demanding verification of the debt, an explanation of what the debt was for, or who the creditor was. Exh J., Keshavarz Dec., 01/30/2013 letter; Exh. B, Keshavarz Dec., p. 3:22-3:23.

24. Ms. Gomez was forced to retain an attorney and incur attorney's fees and costs because Defendants would not release the garnishments. Exh. B, Keshavarz Dec., p. 4:34.

25. Defendants did not release the garnishment despite the fact they were on notice that the default judgment was rendered based on sewer service and that the collection lawsuit was time-barred. Exh. K, Keshavarz Dec., Post-Judgment Garnishment Mechanisms.

26. Instead, Defendants sought to retain of the prior wrongful acts by maintaining the garnishment, maintaining the judgment, continuing attempting to execute on Ms. Gomez's limited funds, and otherwise continuing to collection. Exh. K, Keshavarz Dec.

27. Gomez received debt collection phone calls on: November 29, 27, and 21, 2012; December 4, 7, and 31, 2012 and January 7, 18, and 19 2013. Exh. N, Keshavarz Dec., Screen Shots of Plaintiff's Cell Phone Reflecting Calls; Exh. B, Keshavarz Dec., p. 4:33.

28. PTR uses an automated dialer to make debt collection phone calls. Exh E, Keshavarz Dec., pp.67:20-68:03.

29. PTR, for example, indicated that it may have used a company called Global Connect for automatic dialing services. Exh O., Keshavarz Dec., Murtha 11/11/2014 Deposition Transcript ("Murtha Tr. *II.*"), pp. 267:01-267:07.

30. Ms. Gomez, through counsel, filed an order to show cause. On February 19, 2013, Bronx Civil Court Judge Ruben Franco signed the order to show cause setting a March 8, 2013 date for

a hearing on the motion to vacate the default judgment. The order to show cause specifically stated, "pending the hearing on this motion [to vacated] and entry of an order thereon, LET all proceedings on the part of the Plaintiff [Inovision], its attorneys, agents and any Marshal of Sheriff of the City of New York for the enforcement of said Judgment be *stayed;* and let any and all holds on any accounts of defendant [Ms. Gomez], *be lifted ... "*. Exh. A, Keshavarz Dec.,pp.15-16.

31.     Ms. Gomez's affidavit provided sworn testimony as to why the affidavit of service was false, and why the debt was time barred. Exh. A, Keshavarz Dec.,pp.19-22.

32.     Despite this sworn testimony Defendants, took no steps to determine whether the allegations of sewer service were true or whether the debt was in fact time barred. Exh E, Keshavarz Dec., pp.194:198:15.

33.     Despite Ms. Gomez's sworn testimony, Defendants did not immediately vacate the default judgment, further ratifying the prior bad acts of sewer service and the filing of a time barred collection lawsuit. Exh. K, Keshavarz Dec., Post-Judgment Garnishment Mechanisms.

34.     On March 8, 2013, Judge Ruben Franco vacated the default judgment. Further, "any liens, levies, restraints or executions" issued by Inovision were vacated and "any funds including fees in the possession of the plaintiff, City Marshal or any other agent *shall be returned* to defendant [Ms. *Gomez]forthwith."* (emphasis added). Exh. A, Keshavarz Dec, p.14.

35.     Despite the two courts orders - the February 19, 2013 order "stay[ing]" all collection activities and the March 8, 2013 order to return any funds "forthwith"- Defendants continued to garnish additional paychecks and/or retain previously garnished funds in direct contravention of the two orders. Exh. K, Keshavarz Dec., Post-Judgment Garnishment Mechanisms; Exh M,

Keshavarz Dec., Moses Collection Notes.

36. On March 1, 2013, NYC Marshal Ronald Moses ("Moses") garnished $136.40 on behalf of Defendants and held $129.58 in trust. Exh M, Keshavarz Dec.pp. 5, 6, 7.

37. On March 14, 2013, Moses garnished $137.57 and held $130.71 in trust. Exh M, Keshavarz Dec.pp. 5, 8, 9.

38. On April 1, 2013, Moses garnished $132.57 and held $125.98 in trust. Exh M, Keshavarz Dec.pp. 5, 8, 9.

39. Ms. Gomez needed her wages to pay for basic necessities such as food and rent. Exh. B, Keshavarz Dec, p.

40. The illegal continued garnishment caused her substantial emotional distress and anxiety. Exh. B, Keshavarz Dec, pp. 4:34-5:45.

41. Defendants still would not dismiss the collections lawsuit despite being placed on notice that the judgment was procured on a time barred debt and by the use of a sewer service affidavit. Exh. L, Keshavarz Dec., Ecourts Case Detail.

42. Therefore Ms. Gomez incurred yet additional attorney's fees and costs having her counsel file a motion to dismiss for lack of personal jurisdiction given the sewer service. Exh. B, Keshavarz Dec, p. 4:34.

43. On May 31, 2013 the civil court granted Ms. Gomez's motion and dismissed the collection lawsuit. Exh. L, Keshavarz Dec., Ecourts Case Detail.

44. Defendants actions inflicted damages on Ms. Gomez. Exh. B, Keshavarz Dec, pp. 4:34-5:45.

45. Defendant Inovision purchases accounts in default and attempts to collect on them. Exh. E, Keshavarz Dec., pp. 13:09-13-19.

46. In January 2013, PTR, a debt collection law firm, merged its debt collection operations with another firm to become KPR. Exh. E, Keshavarz Dec., pp. 8:23-9:09.

47. Ms. Gomez was afraid when she found out "her bank account was restrained, and that fear and anxiety increased as Defendants' debt collection activities continued, from the threat to garnish 20-25% of" her wages, through their continued calls on her cell phone. Exh. B, Keshavarz Dec, p. 4:33.

48. "The stress and anxiety continued through Defendants' refusal to voluntarily release the garnishment of" her account, to her having to "incur attorney's fees and costs to seek to vacate a default judgment rendered by sewer service to collect a time barred debt". She is contractually obligated to pay attorney's fees and costs for the work done to vacate the default judgment. Exh. B, Keshavarz Dec, p. 4:34.

49. "The fear and anxiety continued as Defendants continued to garnish and/or continued to retain" her wages. Exh. B, Keshavarz Dec, p. 4:35.

50. She could not sleep for a number of months while this was happening. Exh. B, Keshavarz Dec, p. 5:36.

51. While my anxiety subsided when the order dismissing the case was finally rendered, she still continued having trouble sleeping. Exh. B, Keshavarz Dec, p. 5:37.

52. She had extreme stomach pain after every meal during this time. Exh. B, Keshavarz Dec, p. 5:38.

53.     She had a few years prior had stomach surgery and did have some issues from time to time. But after she found out the Defendants sought to restrain her bank account, she had constant severe stomach pains after every meal. Exh. B, Keshavarz Dec, p. 5:39.

54.     Occasionally she would vomit. Exh. B, Keshavarz Dec, p. 5:40.

55.     Ms. Gomez was fixated on the issue, constantly thinking about it every day. Exh. B, Keshavarz Dec, p. 5:41.

56.     Ms. Gomez was stressed out, very depressed, and even had suicidal thoughts. Exh. B, Keshavarz Dec, p. 5:42.

57.     Ms. Gomez was afraid of what the garnishment would mean for her to be able to pay her bills for her own basic needs. Exh. B, Keshavarz Dec, p. 5:43.

58.     Moreover, the garnishment made Ms. Gomez worry if she could continue to try to support financially her daughter and her daughter's two children. Exh. B, Keshavarz Dec, p. 5:44.

59.     Ms. Gomez's daughter and her daughter's two children lived in a homeless shelter and she did what she could to help them financially. Exh. B, Keshavarz Dec, p. 5:45.

60.     LVNV admits in a publicly filed document that its net-worth is $237,050,582.00. Exh. P, Keshavarz Dec., LVNV Balance Sheet.

61.     Resurgent admits in a publicly filed document that its networth is $62,117,415.00. Exh. Q, Keshavarz Dec., Resurgent Balance Sheet

62.     LVNV's website states that it "purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies,

and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency. The management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent)." Exh. R, Keshavarz Dec., Ahmad Keshavarz January 23, 2015 affidavit.

63. Resurgent's website states ""is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers. We manage accounts across the credit spectrum including performing accounts, sub- and non-performing accounts, secured accounts, and unsecured accounts." Exh. R, Keshavarz Dec.

64. PTR and KPR admits that they are debt collectors. Exh.S, Keshavarz Dec., KPR and PTR joint discovery answers (response to request for admission #1), p.3.

65. Ms. Gomez suffered actual damages by becoming contractually obligated to pay attorney's fees and costs accrued in defending the collection lawsuit. Specifically Ms. Gomez accrued attorney's fees and costs in the collection lawsuit for the drafting and filing of an order to show cause to vacate the sewer service default judgment; attending the hearing on the order to show cause, which was granted; drafting and filing of an answer with affirmative defense; drafting and filing a motion to dismiss for the failure to be properly served; attending the hearing on the motion to dismiss, which was granted. The attorney's fees and costs accrued for this exceeds $1,500. Exh. R, Keshavarz Dec. at ¶ 3.

Dated:  Brooklyn, NY
       <u>January 24, 2015</u>
       /s/
       Ahmad Keshavarz

                        Respectfully submitted,

>*/s/*
>Ahmad Keshavarz
>ATTORNEY FOR PLAINTIFF
>The Law Office of Ahmad Keshavarz
>16 Court St., 26th Floor
>Brooklyn, NY 11241-1026
>Phone: (718) 522-7900
>Fax:     (877) 496-7809
>Email: ahmad@NewYorkConsumerAttorney.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Defendants LVNV Funding, LLC and Resurgent Capital Services, LP.
>By and through their attorneys of record
>Concepcion A. Montoya;
>Han Sheng Beh;
>Jason Oliveri;
>HINSHAW & CULBERTSON LLP
>800 Third Avenue, 13th Floor
>New York, New York 10022
>Tel: (212) 471-6200
>cmontoya@hinshawlaw.com;
>Hbeh@hinshawlaw.com;
>joliveri@hinshawlaw.com

Dated:  Brooklyn, NY
        January 24, 2015
         /s/
        Ahmad Keshavarz