UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CARMEN GOMEZ

Case No.: 1:13-CV-07395

Plaintiff,

-against-

INOVISION-MEDCLR PORTFOLIO GROUP, LLC.,
PETER T. ROACH & ASSOCIATES, P.C.,
KIRSCHENBAUM, PHILLIPS & ROACH, P.C.
TIMOTHY MURTHA
LVNV FUNDING, LLC
RESURGENT CAPITAL SERVICES, LP
NCO FINANCIAL SYSTEMS, INC.

Defendants.
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR
SUMMARY JUDGMENT AS TO LIABILITY**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................1

II.   UNDISPUTED FACTS ........................................................................................1

III.  PUBLIC POLICY OF THE FDCPA ....................................................................7

IV.   ARGUMENT .......................................................................................................8

    A.  **POINT 1:** The Resurgent Defendants are directly and vicariously liable for the FDCPA and GBL 349 violations they committed through the Roach Defendants .......8

    B.  **POINT 2:** The Resurgent Defendants violated the FDCPA and GBL 349 through the Roach Defendants, Their Debt Collection Law Firm ................................................11

        1.  The Resurgent Defendants Robo-Signed Executions……………………….11

        2.  Collecting on assigned debts without sending (and a consumer receiving) a notice of assignment………………………………………………………....13

    C.  **POINT 3:** The Resurgent Defendants took other acts that violated just the FDCPA.14

        1.  The Resurgent Defendants threatened to garnish 20-25 percent of Plaintiff's wages if she did not pay half the default judgment within a few days………14

        2.  The Resurgent Defendants continued to garnish Ms. Gomez's wages after an Order to Show Cause was signed staying collection, and did not promptly return her money despite an order to return all funds "forthwith……………17

V.    <u>Conclusion</u> ........................................................................................................22

i

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014) ...........................................22

*Diaz v. Portfolio Recovery Associates, LLC*, 2012 WL 661456 at * 1 (E.D.N.Y. Feb. 28, 2012) 12

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ................................................16

*Fritz v. Resurgent Capital Servs.*, LP, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) .............................13

*F.T.C. v. LoanPointe, LLC*, No. 2:10-CV-225DAK, 2011 WL 4348304, at *8 (D. Utah Sept. 16, 2011) .....................................................................................................................................16

*Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009)................................12

*Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636 (S.D.N.Y. 2013) ....................13

*Oberther v. Midland Credit Mgmt., Inc.*, No. CIV.A. 14-30014-MGM, 2014 WL 4548871, at *1 (D. Mass. Sept. 15, 2014) ..........................................................................................................10

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508 (S.D.N.Y. 2013) ("*Okyere I*")...........9

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013)..........................21,22

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001)..........................................................17

*Pierce v. Calvary SPV I, LLC*, No. CIV.A. 13-588, 2013 WL 6773632, at *1 (W.D. Pa. Dec. 20, 2013) .............................................................................................................................................9

*Plummer v. Atl. Credit & Fin., Inc.,* No. 13 CIV 7562 AT, 2014 WL 6969546, at * 1 (S.D.N.Y. Dec. 8, 2014).............................................................................................................................11

*Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547 (S.D.N.Y. 2013) ...........................19

*Racek v. Gurstel Chargo, P.A.*, No. CIV. 12-380 DWF/SER, 2013 WL 4838900, at *1 (D. Minn. Sept. 11, 2013) ..........................................................................................................................9

*Seabrook v. Onondaga Bureau of Med. Econ., Inc.*, 705 F. Supp. 81 (N.D.N.Y. 1989)..............16

*Strom v. Nat'l Enter. Sys., Inc.*, No. 09-CV-0072A F, 2011 WL 1233118, at *1 (W.D.N.Y. Mar. 30, 2011) .....................................................................................................................................17

*Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).........................12

*Terry v. C & D Complete Bus. Solutions*, No. 09-00799-CV-W-DGK, 2011 WL 144920, at *1 (W.D. Mo. Jan. 18, 2011) ..........................................................................................................17

*Van Westrienen v. Americontinental Collection Corp,* 94 F.Supp.2d 1087, 1099-1102 (D.Or. 2000) .........................................................................................................................................17

*White v. Sherman Fin. Grp., LLC*, 984 F. Supp. 2d 841 (E.D. Tenn. 2013) ................................9

**Rules**

15 U.S.C.A. § 1692(a) ...........................................................................................................7

15 U.S.C. § 1692(e) ..............................................................................................................7

1692e(2)(A)...........................................................................................................................16

1692e(10) ..............................................................................................................................16

NY GBL 349............................................................................................................... *passim*

NY CPLR 5231 .....................................................................................................................15

# I.   INTRODUCTION

Plaintiff Carmen Gomez files this Memorandum of Law in Support of Summary Judgment on her affirmative claims against LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, LP ("Resurgent") (collectively the "Resurgent Defendants" [DE 62]. Former defendants in this action, Inovision-Medclr Portfolio Group, LLC, Peter T. Roach & Associates, P.C and Kirschenbaum, Phillips and Roach, P.C., and Timothy Murtha are hereinafter referred to as, respectively: "Inovision"; "PTR," "KPR" and Murtha. PTR and KPR are collectively referred to as the "Roach Defendants". Plaintiff settled her claims against Inovision and dismissed them from suit on June 9, 2014 DE 33 (agreed stipulation of dismissal). Plaintiff settled her claims against the Roach Defendants and dismissed them from suit on January 7, 2015, DE 70 (agreed stipulation of dismissal).

# II.   UNDISPUTED FACTS

In 2005, Medclr-Portfolio Group ("Inovision") filed a collection lawsuit, *Inovision-Medclr Portfolio Group, LLC v. Carmen Gomez* CV-46016/05BX, against Carmen Gomez ("Plaintiff" or Ms. Gomez")  *See* Plaintiff's Rule 56.1 Statement of Facts ("Pl. 56.1"),¶s 1, 3, 5. Inovision purchases accounts in default and attempts to collect on them.  ¶4. Inovision sought to collect an alleged credit card debt where CHASE MANHATTAN BANK ("Chase") was the original creditor. *Id.*  ¶1. The account sought was a consumer debt. ¶2.

According to the affidavit of service, the complaint was served on Ms. Gomez on or about September 28, 2005, and mailed shortly thereafter on or about October 3, 2005. ¶5. However, Ms. Gomez was never served with the summons and complaint for the action and never received a copy of the summons and complaint by mail. ¶6. As a result, Ms. Gomez did

not know she had been sued and did not appear in the action. ¶7. On November 30, 2005, Inovision obtained a default judgment against her. ¶8. Ms. Gomez did have a Chase account, but closed that account more than a decade before the above-mentioned lawsuit was filed. *Id.* ¶9.

LVNV Funding, LLC ("LVNV") contends it purchased from Inovision (through a series of intermediaries) the assignment of the default judgment rendered Ms. Gomez in the collection lawsuit.   ¶11. LVNV admits that it "purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers." ¶ 14. LVNV further admits that "the management of its purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent)."  ¶14.

Resurgent's admits that it "is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers. We manage accounts across the credit spectrum including performing accounts, sub- and non-performing accounts, secured accounts, and unsecured accounts." ¶15. The annual income of LVNV was $237 million in 2012, and the annual income for Resurgent was $62 million for the same year. ¶ 12, 13.

Resurgent is LVNV's master servicer.  ¶16. Resurgent contends it retained the law firm Eltman, Eltman and Cooper ("EEC") to collect on LVNV's behalf to collect on Plaintiff's account.  ¶17. After Resurgent retained EEC on LVNV's behalf, Resurgent contends EEC in turn retained Defendants Peter T. Roach & Associates, P.C. ("PTR") and Kirschenbaum, Phillips and Roach P.C. ("KPR") to collect Plaintiff's account on LVNV's behalf.  ¶18. PTR and KPR admit that they are debt collectors.  ¶19. In January 2013, PTR, a debt collection law firm, merged its debt collection operations with another firm to become KPR.  ¶20. When PTR merged its debt collections operations with KPR, PTR transferred Plaintiff's account to KPR and KPR began

collecting on Plaintiff's account.  ¶24. PTR and then KPR were responsible for monitoring Plaintiff's state court case.  ¶25.

On or around October 19, 2012, Timothy Murtha ("Murtha"), an attorney at PTR signed an information subpoena and restraining notice to be sent to Municipal Credit Union ("MCU"), seeking to enforce the action.  ¶26. The restraining notice contained a different plaintiff in the caption, LVNV Funding LLC, though the index number is identical.  ¶27. On November 7, 2012, MCU sent a copy of the information subpoena with restraining notice to Ms. Gomez, as required by New York law.  ¶28. Murtha and the PC knew and intended the signed information subpoena and restraining notice would be forwarded by MCU to Ms. Gomez.  ¶29.

Murtha "robo-signed" the information subpoena and restraining notices, performing no meaningful attorney review of the account. ¶30, 31. Mr. Murtha signs between 400 and 460 post-judgment enforcement mechanisms (e.g. garnishments, information subpoena and restraining notices) per week.   ¶32. Further, the time Murtha spends issuing these post-judgment enforcement mechanisms is only a small amount of the time he spends on collections.  ¶33.

Ms. Gomez was never sent and has never received from anyone any notice of the assignment of the putative Chase account.  ¶34. The Defendants took no steps to determine whether a notice of assignment of the Chase account was sent to or received by Ms. Gomez. ¶35.

The first time Ms. Gomez learned of the judgment was when she saw it on her credit report in 2011.  ¶36. The first time she became aware the judgment was regarding a Chase account rendered after her bank account was frozen and she spoke with a debt collector at the Roach in November 2012. ¶37.

In November 2013, a debt collector of Roach Defendants, collection for the Resurgent Defendants, told Ms. Gomez that they could garnish 20 to 25 percent of her wages.  ¶38. In November 2013, the Roach firm told Ms. Gomez that they could garnish 20 or 25 percent of her wages. ¶38.  In November 2013, Ms. Gomez had a phone call with the Roach law firm. ¶38. The debt collector told Ms. Gomez that they could garnish 20 or 25 percent of her wages. ¶38. This made her very scared and upset.  ¶38. The collector also told Ms. Gomez she had to come up with at least half of the money to make a settlement deal. ¶38. The collector said she only had few days to do this. ¶38. Otherwise the collector said they would garnish 20 to 25 percent of her wages ¶38.

The collector identified himself as "Brandon. ¶53 "Brandon" is an alias for a PTR employee named "Raymond Hunter".  ¶54. The Roach Defendants' collection notes indicate that on November 14, 2012 "Brandon" made a settlement demand for roughly half of the judgment, with commitment to be made by November 19, 2012: "[t]ask set for 11/19".  ¶55. Thus, the collection notes verify the date of the call, the persons on the call, and that there was a demand for payment of half the amount of the judgment within a few days.

On December 5, 2012, Ms. Gomez sent a letter to the PC informing the PC that she had no knowledge of the debt, that the statute of limitations on the debt had expired, and requesting proof of the debt/default.  ¶39. Ms. Gomez also requested that Defendants stop calling her.  ¶39.

During the time period PTR was collecting Plaintiff's account, Murtha testified that PTR had a policy of recording phone calls to consumers, even though there are no produced recordings of phone calls to Plaintiff.  ¶58.

On or about December 11, 2012 the PC sent Ms. Gomez a dunning letter seeking to collect on a judgment entered November 30, 2005 for $3,864.33, plus interest at 9 percent from

4

the date of judgment. The letter demanded that payment checks be made out to "Peter T. Roach & Associates, P .C.".  ¶41.

On January 20, 2013, KPR sent a letter to Ms. Gomez indicating that they are now representing Roach with respect to the collection of Ms. Gomez's account. KPR stated in their letter that they would cease all collection activities and verify the debt if Ms. Gomez wrote to them in 30 days asking them to do so.  ¶42.

The January 20, 2013 letter from KPR to Ms. Gomez also included a Notice pursuant to N.Y.C.P.L.R. 5222(d).  ¶43. The January 20, 2013 letter and Notice pursuant to N.Y.C.P.L.R. 5222(d) from KPR were sent to Ms. Gomez in the same envelope.  ¶44. The January 20, 2013 letter and Notice pursuant to N.Y.C.P.L.R. 5222(d) from KPR to Ms. Gomez reference a different creditor (respectively Inovision and LVNV), although each entity is supposedly collecting on the same account.  ¶45.

Ms. Gomez responded to KPR on January 30, 2013 with a copy of the same letter sent to Roach on December 5, 2012. KPR never responded to that letter demanding verification of the debt, an explanation of what the debt was for, or who the creditor was.  ¶46.

Ms. Gomez was forced to retain an attorney and incur attorney's fees and costs because Defendants would not release the garnishments.  ¶47. Defendants did not release the garnishment despite the fact they were on notice that the default judgment was rendered based on sewer service and that the collection lawsuit was time-barred.  ¶48. Instead, Defendants sought to retain the benefit of the prior wrongful acts by maintaining the garnishment, maintaining the judgment, continuing attempting to execute on Ms. Gomez's limited funds, and otherwise continuing to collection.  ¶49. The Roach Defendants never told New York City Marshal Ronald Moses, at any point, to cease collection of the judgment.  ¶50.

5

Ms. Gomez, through counsel, filed an order to show cause. On February 19, 2013, Bronx Civil Court Judge Ruben Franco signed the order to show cause setting a March 8, 2013 date for a hearing on the motion to vacate the default judgment. The order to show cause specifically stated, "pending the hearing on this motion [to vacated] and entry of an order thereon, LET all proceedings on the part of the Plaintiff [Inovision], its attorneys, agents and any Marshal of Sheriff of the City of New York for the enforcement of said Judgment be *stayed;* and let any and all holds on any accounts of defendant [Ms. Gomez], *be lifted ... "* ¶59.

Ms. Gomez's affidavit provided sworn testimony as to why the affidavit of service was false, and why the debt was time barred. ¶60.Despite this sworn testimony Defendants, took no steps to determine whether the allegations of sewer service were true or whether the debt was in fact time barred. ¶61. Despite Ms. Gomez's sworn testimony, Defendants would not vacate the default judgment, further ratifying the prior bad acts of sewer service and the filing of a time barred collection lawsuit. ¶62.

On March 8, 2013, Judge Ruben Franco vacated the default judgment. Further, "any liens, levies, restraints or executions" issued by Inovision were vacated and "any funds including fees in the possession of the plaintiff, City Marshal or any other agent *shall be returned* to defendant [Ms. *Gomez]forthwith.".* ¶63.

Despite the two courts orders - the February 19, 2013 order "stay[ing]" all collection activities and the March 8, 2013 order to return any funds "forthwith"- Defendants continued to garnish additional paychecks and/or retain previously garnished funds in direct contravention of the two orders. ¶64.

On March 1, 2013, NYC Marshal Ronald Moses ("Moses") garnished $136.40 on behalf of the Resurgent Defendants and held $129.58 in trust. ¶65. On March 14, 2013, Moses

garnished $137.57 and held $130.71 in trust.  ¶66. On April 1, 2013, Moses garnished $132.57 and held $125.98 in trust.  ¶67.

Ms. Gomez needed her wages to pay for basic necessities such as food and rent.  ¶68. The illegal continued garnishment caused her substantial emotional distress and anxiety.  ¶69. Defendants still would not dismiss the collections lawsuit despite being placed on notice that the judgment was procured on a time barred debt and by the use of a sewer service affidavit.  ¶70. Therefore Ms. Gomez incurred yet additional attorney's fees and costs having her counsel file a motion to dismiss for lack of personal jurisdiction given the sewer service.  ¶71. On May 31, 2013 the civil court granted Ms. Gomez's motion and dismissed the collection lawsuit.  ¶72.

Defendants' actions inflicted damages on Ms. Gomez, including fear, anxiety, sleeplessness, severe stomach pains, fixation, stress, suicidal thoughts, and concern for her ability to financially support her daughter and grandchildren who have lived in homeless shelters.  ¶73-87.

### III. PUBLIC POLICY OF THE FDCPA

Congress enacted the FDCPA in response to "evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C.A. § 1692(a).  The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Accordingly, Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.2002), with the purpose of "limiting the suffering and anguish

often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996) (internal quotation marks omitted). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989).

Congress designed the FDCPA to be enforced primarily through private parties – such as such as Ms. Polanco– acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [Plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

The FDCPA is a strict liability statute. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993) (''The FDCPA is a strict liability statute . . . and the degree of a defendant's culpability may only be considered in computing damages . . ."); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir.2009), *cert. denied*, 130 S. Ct. 3333, 176 L. Ed. 2d 1223 (2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector.")

## IV. ARGUMENT

### A. POINT I: The Resurgent Defendants are Directly and Vicariously Liable for the FDCPA and GBL 349 violations they committed through the Roach Defendants

Plaintiff's January 24, 2015 Opposition [DE 72, Pl. Opp. pp. 7-14] to the Resurgent Defendants' Motion for Summary Judgment [DE 57-62], Plaintiff argued why the Resurgent

Defendants are directly and vicariously Liable for the FDCPA and GBL 349 violations they committed through the Roach Defendants in seeking to collect the putative judgment from Ms. Gomez. For brevity, Plaintiff incorporates those sections by reference. In summary, that section of the motion shows the following. First, the Resurgent Defendants are debt collectors and are liable for the actions of their debt collection attorneys, even absent a showing of control. Second, under basic agency principals, the Resurgent Defendants are liable for their debt collection attorneys even absent a showing of control because the Resurgent Defendants had an attorney-client, principal-agent relationship with their debt collection law firms. Third, even if *Okyere I* is rejected and *Bodur* is followed, the Resurgent Defendants are vicariously liable under both the FDCPA and the GBL because they in-fact exercised control over their debt collection attorneys, or are liable because of ratification.

Pl. Opp. pp. 18-20 also argues why the Resurgent Defendants are vicariously (and directly) liable for the FDCPA violations they commit through the Roach Defendants. Plaintiff cites in her moving papers to a decision by Magistrate Gorenstein, *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) (*Okyere I*) ("We do not agree with a requirement that an FDCPA plaintiff show "control" because claims that a principal is liable for an agent's actions normally do not require such allegations. Rather, "traditional vicarious liability rules" ordinarily make principals liable for acts of their agents merely when the agents act "in the scope of their authority.") *quoting Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). In just the two years since its issuance, *Okyere I* has been adopted by a number of courts throughout the country. *See Pierce v. Calvary SPV I, LLC*, No. CIV.A. 13-588, 2013 WL 6773632, at *4 (W.D. Pa. Dec. 20, 2013); *White v. Sherman Fin. Grp., LLC*, 984 F. Supp. 2d 841, 854 (E.D. Tenn. 2013); *Racek v. Gurstel Chargo, P.A.*, No. CIV. 12-380

9

DWF/SER, 2013 WL 4838900, at *5 (D. Minn. Sept. 11, 2013) ("Asset separately argues that it is entitled to summary judgment on Plaintiffs' FDCPA claim because it did not exercise control over the alleged conduct of Gurstel.") (rejecting argument); *Oberther v. Midland Credit Mgmt., Inc.*, No. CIV.A. 14-30014-MGM, 2014 WL 4548871, at *4 (D. Mass. Sept. 15, 2014)("In light of *Alger* and *Pollice*, which this court finds persuasive and which appear to represent the prevailing view, Plaintiff's claims against Encore should not be dismissed…. Plaintiff does allege that Encore is the parent company of Midland Credit and that Encore attempts to collect debt "through Midland Credit.")

Most recently Okyere I has been squarely adopted by Judge Torres, rejecting any requirement to show control or a right to control in order to established FDCPA vicarious liability.

> The Second Circuit has not squarely addressed how vicarious liability is to be evaluated in the context of a debt collector that employs another to carry out unlawful collection activities on its behalf, and district courts in the circuit are divided between two different approaches.
>
> The first approach, which the Court adopts here, follows the Third Circuit's reasoning in *Pollice [v. Nat'l Tax Funding, L.P.*] which held that an entity that "itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." 225 F.3d at 404; *accord Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 515–16 (S.D.N.Y.2013); *Fritz,* 955 F.Supp.2d [F.3d 379, 177 (3d Cir.2000)]; *Eun Joo Lee v. Forster & Garbus LLP,* 926 F.Supp.2d 482, 488 (E.D.N.Y.2013). Under traditional agency principles, vicarious liability does not require specific acts of control, but rather allows for principals to be held liable for the acts of their agents when the agents are acting " 'in the scope of their authority.' " *Okyere,* 961 F.Supp.2d at 516–17 (quoting *Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)); *see also Newman v. Checkrite Cal., Inc.,* 912 F.Supp. 1354, 1370–71 (E.D.Cal.1995) (imposing vicarious liability on principal debt collection agency under theory of apparent authority where agents' conduct violated the FDCPA). As recognized in this line of cases, it is a reasonable inference that one debt collector undertaking debt collection activities on behalf of another is acting within the scope of its authority. *See, e.g., Fritz,* 955 F.Supp.2d at 177; *Okyere,* 961 F.Supp.2d at 517. A debt collector may not avoid FDCPA liability simply by hiring another to engage in unlawful debt collection activities on its behalf. *Fritz,* 955 F.Supp.2d at 177; *see also Pollice,* 225 F.3d at 404–05 ("Thus, we conclude that NTF—which itself meets the

definition of 'debt collector'—may be held vicariously liable for CARC's collection activity. We believe this is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."). Plaintiff has plausibly alleged that Velocity, a debt collector under the FDCPA, enlisted Capital Management to engage in unlawful debt collection activities on its behalf in an attempt to shield itself from liability. Applying the rule from *Pollice,* this is sufficient to establish the requisite agency relationship.[4] Plaintiff, therefore, has adequately alleged facts such that Velocity may be held vicariously liable for FDCPA violations arising out of Capital Management's October 24, 2012 letter to Plaintiff.

*Plummer v. Atl. Credit & Fin., Inc.,* No. 13 CIV. 7562 AT, 2014 WL 6969546, at * 6, 7 (S.D.N.Y. Dec. 8, 2014)

Just as in *Plummer*, the high net-worth Resurgent Defendants are attempting to use the low net-worth Roach Defendants "in an attempt to shield itself from liability."  If the Resurgent Defendants succeed it would be the death knell to FDCPA class actions, where class statutory damages are limited to the *lesser of* $500,000 or 1 percent of net worth. The net worth of a small law firm such as the Roach Defendants is negligible. In contrast, by their own conservative estimates, the annual income for LVNV is $237 million and for Resurgent is $64 million.

### B.  POINT II: The Resurgent Defendants violated the FDCPA and GBL 349 Through the Roach Defendants, Their Debt Collection Law Firm.

Plaintiff's January 24, 2015 Opposition [DE 72, Pl. Opp. pp. 15-19] to the Resurgent Defendants' Motion for Summary Judgment [DE 57-62], argues how the Resurgent Defendants violated GBL 349.  For brevity, those sections are incorporated by reference. While not in the title of those sections of Pl. Opp., the body of the motion, pp. 15-19, provides authority as to why the GBL 349 violations also violate the FDCPA.

#### 1.  The Resurgent Defendants robo-signed executions.

The Resurgent Defendants violated GBL 349 and the FDCPA by robo-signing executions without meaningful attorney review.

On or around October 19, 2012, Timothy Murtha ("Murtha"), an attorney at PTR signed an information subpoena and restraining notice to be sent to Municipal Credit Union ("MCU"), seeking to enforce the action.  ¶26. The restraining notice contained a different plaintiff in the caption, LVNV Funding LLC, though the index number is identical. ¶27. On November 7, 2012, MCU sent a copy of the information subpoena with restraining notice to Ms. Gomez, as required by New York law.  ¶28. Murtha and the PC knew and intended the signed information subpoena and restraining notice would be forwarded by MCU to Ms. Gomez.  ¶29.The sheer number of judgment enforcement devices signed each week demonstrates that he did not engage in a meaningful attorney review of each consumer's individual accounts before sending out each device. This is deceptive and abusive. *See Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 97 (E.D.N.Y. 2009) ("to the least sophisticated consumers, for whom the FDCPA was enacted, an attorney's signature implies that an attorney directly controlled or supervised the process through which the letter was sent, and that the signing attorney has personally considered, and formed a specific opinion about, the individual debtor's case.").

Robo-signing violates the FDCPA and GBL 349. *See Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 428 (S.D.N.Y. 2010)(Plaintiffs state FDCPA and GBL 349 claims by alleging that a debt collector creditor, through its debt collection law firm, regularly used robo-signed affidavits of merit falsely claiming personal knowledge in order to obtain default judgments; and for using false affidavits of service to obtain default judgments to garnish wages and freeze bank accounts); *Diaz v. Portfolio Recovery Associates, LLC*, 2012 WL 661456 * 13,14 (E.D.N.Y. Feb. 28, 2012) (M.J. Pollak) *report and recommendation adopted*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (J. Brodie)(Plaintiffs state FDCPA and GBL 349 claims by alleging a debt collector creditor, through its debt collection law firm, robo-signed debt

collection lawsuits without meaningful attorney review, and for doing so to collect time barred debts); *Fritz v. Resurgent Capital Servs.*, LP, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013)(Plaintiffs state FDCPA and GBL 349 claims for alleging a debt collector creditor, through its debt collection law firm, filed collection lawsuits falsely claiming the creditor owned the putative debt when it did not, for representing on the collection complaint that the creditor had a debt collection license when it did not, and for misidentifying the creditor in written communications; claims also stated against the debt collector creditor for misreporting to credit reporting agencies the amounts alleged to be due by rolling costs of court when no judgment had yet been entered).

### 2. Collecting on assigned debts without sending (and a consumer receiving) a notice of assignment.

The Resurgent Defendants violated the FDCPA and GBL 349 because they, through the Roach Defendants, were attempting to collect a putative debt and a putative judgment without a notice of assignment ever being sent to or received by the consumer.

Ms. Gomez was never sent and has never received from anyone any notice of the assignment of the putative Chase account.   ¶34. The Defendants took no steps to determine whether a notice of assignment of the Chase account was sent to or received by Ms. Gomez. ¶35.

A debt collector collecting on a putative assigned violates the FDCPA if the consumer has not received the notice of assignment. *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 638-40 (S.D.N.Y. 2013).   These violations are "consumer oriented" because Defendants have no policy to make sure they only collect on debts for which notices of assignment are given. The Resurgent Defendants also collected debts and had their agents (e.g.

13

Eltman, Eltman, & Cooper, the Roach Defendants) without providing a notice of assignment of the debt, a pre-requisite to legally collect putatively assigned debts.

### C.  POINT III: The Roach Defendants took other acts that violated the FDCPA.

The Resurgent Defendants, through the Roach Defendants, took other actions that violated the FDCPA.  However, as Plaintiff does not have conclusive proof that this conduct was "consumer oriented," as opposed to being a "one off," Plaintiff does not seek GBL summary judgment on the following FDCPA claims.

### 1.  The Resurgent Defendants threatened to garnish 20-25 percent if she did not pay half the default judgment within a few days.

The undisputed summary judgment evidence is that the Resurgent Defendants, through their counsel the Roach Defendants, told Ms. Gomez they would garnish 20 – 25 percent of her wages if she did not pay them half the amount of the judgment within a few days. (Again, the judgment was obtained on a time-barred debt and procured by use of a false affidavit of service).

In November 2013, a debt collector of Roach Defendants, collection for the Resurgent Defendants, told Ms. Gomez that they could garnish 20 to 25 percent of her wages.  ¶38. In November 2013, the Roach firm told Ms. Gomez that they could garnish 20 or 25 percent of her wages. ¶38.  In November 2013, Ms. Gomez had a phone call with the Roach law firm. ¶38. The debt collector told Ms. Gomez that they could garnish 20 or 25 percent of her wages. ¶38. This made her very scared and upset.  ¶38. The collector also told Ms. Gomez she had to come up with at least half of the money to make a settlement deal. ¶38. The collector said she only had few days to do this. ¶38. Otherwise the collector  said they would garnish 20 to 25 percent of her wages ¶38.

The collector identified himself as "Brandon. ¶53 "Brandon" is an alias for a PTR employee named "Raymond Hunter".  ¶54. The Roach Defendants' collection notes indicate that

14

on November 14, 2012 "Brandon" made a settlement demand for roughly half of the judgment, with commitment to be made by November 19, 2012: "[t]ask set for 11/19".  ¶55. Thus, the collection notes verify the date of the call, the persons on the call, and that there was a demand for payment of half the amount of the judgment within a few days.

On December 5, 2012, Ms. Gomez sent a letter to the PC informing the PC that she had no knowledge of the debt, that the statute of limitations on the debt had expired, and requesting proof of the debt/default.  ¶39. Ms. Gomez also requested that Defendants stop calling her.  ¶39.

During the time period PTR was collecting Plaintiff's account, Murtha testified that PTR had a policy of recording phone calls to consumers, even though there are no produced recordings of phone calls to Plaintiff.  ¶58. This raises an inference of spoliation of evidence.

The threat to take 20-25% of Ms. Gomez's income is abusive debt collection and misrepresents, to the least sophisticated consumer the amounts the Resurgent Defendants may be able to legally collect. Generally, in New York State, a creditor can garnish either 10% of a consumer's gross wages or 25% of her disposable income, *whichever is less. See* NY CPLR 5231. However, a consumers income disposable income is less than thirty times the minimum wage, no amount may be garnished. *See* NY CPLR 5231.

As previously stated, the FDCPA is designed to protect the least sophisticated consumer. The Resurgent Defendants therefore violated the following provisions of the FDCPA by, through the Roach Defendants, threatening to garnish 20-25 percent of Ms. Gomez's income. Ms. Gomez makes $19.65 per hour, and has a gross salary of $1,364.01 per two week period.  Ms. Gomez's take home pay (after taxes and union dues) was just $966.43 every two weeks. The most the Resurgent Defendants could (and ultimately did) garnish from Ms. Gomez was ten percent of that gross amount, or 136.40.  Telling Ms. Gomez that they could garnish 20-25 percent of her

wages would leave Ms. Gomez with a take home pay of as little as $625.43, when in fact it would be $830.03 could and did cause panic for Ms. Gomez. A difference of $443.30 per month makes a big difference for a single mother living paycheck to paycheck, trying to support her daughter and her daughter's two children who live in a homeless shelter.

The conduct of the Resurgent Defendants, through the Roach Defendants, violate the following provisions of the FDCPA in connection with an attempt to collect a putative judgment: 1692e (using false, deceptive or misleading representations or means), 1692e(2)(A) (misrepresenting the character, amount, or legal status of the debt); 1692e(5) (threatening to take an act taking an action prohibited by law); 1692e(10) (using any false, deceptive or misleading representations or means); and 1692f (using unfair or unconscionable means). *See Fox v. Citicorp Credit Servs., Inc*., 15 F.3d 1507, 1516 (9th Cir. 1994) (allegations that debt collector improperly threatened to garnish wages stated a claim under 1692e, 1692e(5), and 1692(f)); *F.T.C. v. LoanPointe, LLC*, No. 2:10-CV-225DAK, 2011 WL 4348304, at *8 (D. Utah Sept. 16, 2011) *aff'd*, 525 F. App'x 696 (10th Cir. 2013) ("Defendants falsely represented (1) that they were authorized under [statute] to garnish the pay of consumers who owed them debts without first obtaining a court order and (2) that Defendants had notified consumers and provided consumers with the opportunity to dispute the debt prior to sending the garnishment requests to the consumers' employers. These misrepresentations qualify as false and misleading collection practices in violation of the FDCPA."); Seabrook v. Onondaga Bureau of Med. Econ., Inc., 705 F. Supp. 81, 85 (N.D.N.Y. 1989) ("Furthermore, OMBE did not proffer any evidence to establish that it knew the amount of plaintiff's weekly disposable earnings, so that it would have been justified in threatening to garnish plaintiff's gross weekly wages in an amount up to 10%. Consequently, because the May 18, 1988, letter did not accurately reflect the state of New York

16

garnishment law at the time it was sent, the court finds that that letter violated § 1692e(5) in that OMBE was not legally entitled to satisfy any judgment that might have been obtained against plaintiff by executing on his income in an amount up to 10% of his gross weekly wages."); *Strom v. Nat'l Enter. Sys., Inc*., No. 09-CV-0072A F, 2011 WL 1233118, at *11 (W.D.N.Y. Mar. 30, 2011)(A debt collector's "threat[] to seize Plaintiff's financial resources that were otherwise exempt from collection," if true, would state an FDCPA claim); *Terry v. C & D Complete Bus. Solutions*, No. 09-00799-CV-W-DGK, 2011 WL 144920, at *6 (W.D. Mo. Jan. 18, 2011) ("It is undisputed that Defendant sent a letter to Plaintiffs on March 20 threatening to garnish their wages. It is further undisputed that Defendant did not have a judgment or other legal justification by which to do this. This statement therefore violated the FDCPA by threatening action which cannot legally be taken [violating] 15 U .S.C. § 1692e(4)-(5)."); *Picht v. Jon R. Hawks, Ltd*., 236 F.3d 446 (8th Cir. 2001) (Attorney debt collector's use of state pre-judgment garnishment statute violated state law and therefore § 1692e(5).  State law allowed pre-judgment garnishment only if the amount owed was certain and involved no exercise of discretion.); *Van Westrienen v. Americontinental Collection Corp*., 94 F.Supp.2d 1087, 1099-1102 (D.Or. 2000) (Debt collector's letter threatened to garnish wages and/or seize property within five days, when, under state law, it could not legally seize the assets or garnish wages within the specified time period, violated 1692e(2)(A), 1692e(5), and 1692e(10)).

### 2. The Resurgent Defendants continued to garnish Ms. Gomez's wages after an Order to Show Cause was signed staying collection, and did not promptly return her money despite an order to return all funds "forthwith."

The Resurgent Defendants violated the FDCPA by continuing to garnish Plaintiff's wages in direct contravention of the state court orders to show cause, order to return garnished funds, and order dismissing the collection lawsuit with prejudice.

17

Because Defendants would not voluntarily release the wage garnishment despite being placed on knowledge of sewer service on a time barred debt, Ms. Gomez was forced to retain an attorney to file an order to show cause to vacate the default judgment. On February 19, 2013, Bronx Civil Court Judge Ruben Franco signed the order to show cause setting a March 8, 2013 date for a hearing on the motion to vacate the default judgment. The order to show cause specifically stated, "pending the hearing on this motion [to vacated] and entry of an order thereon, LET all proceedings on the part of the Plaintiff [Inovision], its attorneys, agents and any Marshal of Sheriff of the City of New York for the enforcement of said Judgment be *stayed;* and let any and all holds on any accounts of defendant [Ms. Gomez], *be lifted ... "* ¶59. Ms. Gomez's affidavit provided sworn testimony as to why the affidavit of service was false, and why the debt was time barred.  ¶60.

On March 8, 2013, Judge Ruben Franco vacated the default judgment. Further, "any liens, levies, restraints or executions" issued by Inovision were vacated and "any funds including fees in the possession of the plaintiff, City Marshal or any other agent *shall be returned* to defendant [Ms. *Gomez]forthwith.".*  ¶63.

Despite the two courts orders - the February 19, 2013 order "stay[ing]" all collection activities and the March 8, 2013 order to return any funds "forthwith" – the Resurgent Defendants (through the marshal, their agent) continued to garnish *additional* paychecks and/or retain previously garnished funds in direct contravention of the two orders.  ¶64.

On March 1, 2013, the Resurgent Defendants, through their agent NYC Marshal Ronald Moses ("Moses") garnished $136.40 from Plaintiff's wages. ¶65. On March 14, 2013, they garnished an additional $137.57, and on April 1, 2013, $132.57 more. ¶¶66-68.

Ms. Gomez needed her wages to pay for basic necessities such as food and rent.  ¶68. The illegal continued garnishment caused her substantial emotional distress and anxiety.  ¶69. Defendants still would not dismiss the collections lawsuit despite being placed on notice that the judgment was procured on a time barred debt and by the use of a sewer service affidavit.  ¶70. Therefore Ms. Gomez incurred yet additional attorney's fees and costs having her counsel file a motion to dismiss for lack of personal jurisdiction given the sewer service.  ¶71. On May 31, 2013 the civil court granted Ms. Gomez's motion and dismissed the collection lawsuit.  ¶72.

Defendants' actions inflicted damages on Ms. Gomez, including fear, anxiety, sleeplessness, severe stomach pains, fixation, stress, suicidal thoughts, and concern for her ability to financially support her daughter and grandchildren who have lived in homeless shelters.  ¶73-87.

The actions of the Resurgent Defendants violated the FDCPA. The two cases most directly on point are *Polanco* by Judge Batts and *Okyere II* by Magistrate Gorenstein.

In *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 548, 549 (S.D.N.Y. 2013), NCO, a debt buyer creditor, obtained a default judgment based on a false affidavit of service. The consumer then obtained an order vacating judgment and a second order to return the money, but the debt collector failed to return the money for 10 months after the vacating of judgment and 5 months after the express order to return the money. Judge Batts held, "Defendant's alleged actions of fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to obey promptly that same Court's Orders falls within the FDCPA's broad purpose to protect consumers from such alleged abusive and unfair tactics. *Id*. at 552.

19

In the case at bar, the Resurgent Defendants, the parties in the case at bar engaged in conduct at least as bad – indeed worse – than the conduct that lead to liability in *Polanco*. In *Polanco*, NCO had already taken Ms. Polanco's money prior to the filing of the order to show cause. *Polanco* at 549. ("On October 27, 2010, Polanco filed an order to show cause to vacate the default judgment and to *return* her funds.") (emphasis added). In the case at bar, the Resurgent Defendants acted in direct contravention of the order to show cause that all enforcement was "***stayed***" pending a hearing. *After* receiving the order to show cause, and in direct contravention of the same, the Resurgent Defendants continued to garnish Ms. Gomez's pay.

Looking at the broad policy purposes of the FDCPA, Judge Batts held that Plaintiff stated a cause of action against NCO for violating 1692e and 1692f. Specifically, Judge Batts held as follows:

> Polanco alleges that Defendant attempted to collect her credit card debt via a two-part scheme: falsifying an affidavit of service to obtain a default judgment against her and ignoring subsequent Court Orders to return the improperly collected debt for over a ten-month period. Given that the purpose of the FDCPA is to protect consumers and to limit their "suffering and anguish," *Gabriele [v. Am. Home Mortg. Servicing, Inc.,]*, 2012 WL 5908601, at *3 [(2d Cir. Nov. 27, 2012) (unpublished)], Defendant's ten-month refusal to comply with two Court Orders that vacated a fraudulently received judgment falls within FDCPA's broad purpose.[4] *See Alibrandi v. Fin. Outsourcing Serv., Inc.*, 333 F.3d 82, 87 (2d Cir.2003) (noting "FDCPA's broad, pro-debtor objectives"); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive ... debt collection practices.").
>
> Although Defendant's noncompliance does not fall within the FDCPA's proscribed behaviors, "[t]he list ... is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.2002). It also proscribes using "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f. Here, Defendant's alleged actions of fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to obey promptly that same Court's Orders falls within the FDCPA's broad purpose to protect consumers from such alleged abusive and unfair tactics.

> Fn. 4 … Analogously, when a defendant falsifies court documents in order to receive a default judgement and then refuses to promptly comply with a Court Order that vacated that default judgment and return the funds, such behavior should be subject to liability under the FDCPA.

*Polanco* at 551-52

Incidentally, Judge Batts held NCO liable for the failure to comply with the state court order to return the money without any discussion of control by NCO, which further supports the prior argument of vicarious liability by agency.

Likewise, in *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013) (*Okyere II*), the debt collection creditor Palisades played a role analogous to the Resurgent Defendants in the present case (particularly LVNV).  In *Okyere*, Palisades obtained a default judgment against the consumer based on sewer service. On May 12, 2011, Mr. Okyere obtained an order for Palisades to return his previously garnished funds "forthwith." Instead, Palisades did not return the money for almost 6 months, on November 17, 2011.  *Id*. at 525, 526. Further, Palisades cashed a check previously garnished from Mr. Okyere's bank after the issuance of an order to show cause to "stay" collection activity. Magistrate Gorenstein held that the failure to comply with the order to show cause to stay collection and the failure to promptly return the previously garnished funds constituted a violation of 1692f.  The Court held:

> Under the facts alleged here, the Court believes that a jury might reasonably conclude that (1) removing money from a bank account when a court has forbidden this to occur[1] and (2) deliberately refusing for many months to return money seized from a bank account where a court has ordered it returned "forthwith" constitute acts that affront the sense of "justice, decency or reasonableness." Indeed, courts have applied 1692f to conduct similar to what defendants did here: for example, filing an application for a writ of garnishment when the plaintiff did not owe any money, garnishing a bank account

---

1 In Okyere II, on April 25, 2011 Mr. Okyere obtained an initial order to cease collection activities pending a hearing on the motion to vacate the judgment and return the money. However, three weeks late, on May 13, 2011, Palisades, acting through its agents (a debt collection law firm and a NYC Marshal) took $2,513.30 from Mr. Okyere's bank account. *Okyere II* at 525, 526.

with the knowledge that it contained exempt funds, and drawing money from a consumer's bank account without authorization,

*Okyere II* at 531 (citations omitted)

Just as in *Okyere II*, in the case at bar the Resurgent Defendants continued garnishing Ms. Gomez's wages when, by order to show cause, "a court has forbidden this to occur." In both *Okyere II* and in the case at bar, the debt buyer creditor was liable for the wrongful garnishments of their agent, the New York City Marshal. In Okyere the debt buyer creditor was Palisades; in the case at bar it is the Resurgent Defendants. Further the Court held Palisade's retention of Mr. Okyere's money for nearly 6 months after an order to return the money "forthwith" constituted conversion, even though the money was ultimately returned. *Okyere II* at 535. Here, the Resurgent Defendants continued to retain Ms. Gomez's money even after all money was ordered to be returned "forthwith." *See also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014) ("First Resolution filed an invalid judgment lien on October 8, when it should have known that Currier had filed a meritorious motion to vacate the default judgment on October 5, three days earlier.") (Filing of invalid lien and failure to immediately release the lien states a claim under 1692f).

### D. CONCLUSION

For these reasons, Plaintiff prays the Court grant this motion for summary judgment and allow this case to go to trial solely on the issue of damages.

> Respectfully submitted,
> /s/
> Ahmad Keshavarz
> ATTORNEY FOR PLAINTIFF
> The Law Office of Ahmad Keshavarz
> 16 Court St., 26th Floor
> Brooklyn, NY 11241-1026
> Phone: (718) 522-7900

Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> **Defendants** LVNV Funding, LLC., and Resurgent Capital Services, LP.
> **By and through their attorneys of record**
> Concepcion A. Montoya;
> Han Sheng Beh;
> Jason Oliveri;
> HINSHAW & CULBERTSON LLP
> 800 Third Avenue, 13th Floor
> New York, New York 10022
> Tel: (212) 471-6200
> cmontoya@hinshawlaw.com;
> Hbeh@hinshawlaw.com;
> joliveri@hinshawlaw.com

Dated:  Brooklyn, NY
        January 29, 2015
        /s/
        Ahmad Keshavarz

23