UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

CARMEN GOMEZ,

                      Plaintiff,                13 Civ. 7395 (RWS)

   -against-                           OPINION

RESURGENT CAPITAL SERVICES, LP and LVNV
FUNDING, LLC,

                     Defendants.

-------------------------------------X

A P P E A R A N C E S:



        <u>Attorney for the Plaintiff</u>

        LAW OFFICE OF AHMAD KESHAVARZ
        16 Court Street, 26th Floor
        Brooklyn, NY 11241
        By:  Ahmad Keshavarz, Esq.

        <u>Attorneys for the Defendants</u>

        HINSHAW & CULBERSON LLP
        800 Third Avenue, 13th Floor
        New York, NY 10022
        By:  Concepcion A. Montoya, Esq.
             Han Sheng Beh, Esq.
             Jason Joseph Oliveri, Esq.

**Sweet, D.J.,**

Two duelling motions for summary judgment are currently
pending before the Court in this unfair debt collection
practices case: one filed by Defendants Resurgent Capital
Services, LP ("Resurgent") and LVNV Funding, LLC ("LVNV,"
collectively with Resurgent, the "Resurgent Defendants" or the
"Defendants") seeking dismissal of the complaint filed by
Plaintiff Carmen Gomez ("Gomez" or the "Plaintiff"), and one
filed by Gomez seeking summary judgment on liability against the
Resurgent Defendants, with proceedings to continue regarding the
amount of damages.  (Dkt. Nos. 57 & 79.)  Also pending is
Resurgent's motion for a protective order covering certain
documents submitted by Gomez in her summary judgment briefing.
(Dkt. No. 97.)  For the reasons stated below, both summary
judgment motions are granted in part and denied in part, and the
motion for a protective order is granted.

**Prior Proceedings**

Gomez brought this case on October 18, 2013, filing a
complaint against former defendants Inovision-Medclr Portfolio
Group, LLC; Peter T. Roach & Associates, P.C.; Kirschenbaum,
Phillips & Roach, P.C.; Timothy Murtha; NCO Financial Systems,

2

Inc., and the two remaining defendants, LVNV Funding, LLC and Resurgent Capital Services, LP.  (Dkt. No. 1.)  The Complaint alleged that the defendants had engaged in abusive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, New York General Business Law § 349, and New York Judiciary Law § 487.[1]  (See generally id.)

On January 14, 2014, defendants Inovision-Medclr Portfolio Group, LLC and NCO Financial Systems, Inc. made Gomez an offer of judgment pursuant to Fed R. Civ. P. 68, which Gomez accepted two weeks later.  (See Dkt. No. 22.)  The Court dismissed those two defendants on June 5, 2014.  (Dkt. No. 33.)  In March of 2014, the parties agreed to a Protective Order governing the treatment of confidential information, which the Court approved on June 25, 2014.  (Dkt. No. 41.)  On January 13, 2015, Gomez dismissed her claims against defendants Peter T. Roach and Associates, P.C.; Kirschenabaum & Phillips, P.C.; and Timothy Murtha pursuant to a settlement agreement.  (Dkt. Nos. 68 & 70.)

The Resurgent Defendants filed their motion for summary judgment on December 30, 2014.  (Dkt. Nos. 56-62.)  Gomez filed

---

[1] Gomez withdrew her Telephone Consumer Protection Act claim while briefing these motions.  (See Pl.'s Opp. Br., Dkt. No 72, at 14.)  The Judiciary Law claim was only alleged against Roach (see Complaint, Dkt. No. 1 at 17), and is thus no longer active after Roach's dismissal from the case.

her opposition papers on January 24, 2015 (Dkt. Nos. 72-75), and
then filed her own motion for partial summary judgment five days
later.  (Dkt. Nos. 79-83.)  The Resurgent Defendants filed
papers on February 18, 2015 replying to Gomez' opposition to its
summary judgment motion and opposing the one she filed.  (Dkt.
No. 87-88.)  Gomez filed her reply brief in support of her
summary judgment motion on March 5, 2015 (Dkt. No. 92), and the
Resurgent Defendants filed a sur-reply on March 26, 2015.  (Dkt.
No. 96.)  The motion was head on submission on March 4, 2015.
(See Dkt. No. 86.)

     The Resurgent Defendants filed their motion for a
protective order on March 26, 2015.  (Dkt. No. 97-99.)  Gomez
filed her opposition on April 9 (Dkt. No. 102) and Resurgent
filed its reply on April 13.  (Dkt. No. 103.)

**The Facts**

     The facts are set forth in the parties' various Rule 56.1
Statements (Dkt. Nos. 61, 75, 82, & 88) and are not in dispute
except as noted below.

     The events that gave rise to this case began on September
12, 2005, when Mel S. Harris and Associates, LLC filed a lawsuit
against Gomez, seeking to collect a debt she had allegedly
incurred to Chase Bank, U.S.A., N.A. ("Chase"), which was later

                              4

assigned to Inovision-Medclr Portfolio Group, LLC ("Inovision").
The parties dispute whether Gomez was ever served; an affidavit
of service says that she was served on September 28, 2005, but
Gomez states that she never received notice of the lawsuit and
speculates that she may have been the victim of "sewer service."
Either way, it is undisputed that Gomez did not appear in the
suit, and a default judgment was entered against her.

The history of the alleged debt is a tangled one.  Gomez
admits that she had an account with Chase, but maintains that
she ceased using it in or before 1995, rendering the validity of
any action regarding it in 2005 dubious.  Although the lawsuit
regarding the debt was brought by Inovision, Gomez questions
whether Chase ever sold that account to anyone and states that
there is no evidence that title to the account ever passed from
Chase to Inovision.  Defendants state that Inovision sold Gomez'
debt to Sherman Originator III, LLC ("Sherman"), a nonparty to
this case, and that Sherman transferred the debt to defendant
LVNV Funding, LLC ("LVNV").  Gomez questions whether the alleged
paperwork of those sales, which covers an unknown number of
accounts, actually includes hers, since they make no specific
mention of her.  She also states that she never received any
notice that her debts had been assigned and argues that any
attempt to collect the debts is therefore invalid.

Defendants utilized a chain of entities to collect Gomez'
debt.  LVNV had a contractual relationship with Resurgent, its
"master servicer."  Resurgent then hired the law firm of Eltman,
Eltman and Cooper, P.C. ("EEC") to collect on the judgment
against Gomez.  EEC in turn retained Peter T. Roach and
Associates, P.C. (together with successor firm Kirschenbaum,
Phillips & Roach, P.C., "Roach") to collect on the judgment.
Roach employed former defendant Timothy Murtha ("Murtha") as an
attorney to handle the case.  Roach also used another
corporation, Global Connect, to make automated calls.

On or around October 19, 2012, Murtha signed an information
subpoena and restraining notice to be sent to Municipal Credit
Union, Gomez' bank, seeking to enforce the judgment against her.
The parties differ on how much attention Murtha put into the
notice.  Gomez cites Murtha's deposition from another civil
lawsuit involving Roach, in which he estimated he signed
approximately 400 postjudgment enforcement documents per week,
and alleges that Murtha "robo-signed" her notice without
actually reviewing its merits.  Defendants note that in this
case Murtha testified that he executes approximately two and a
half postjudgment execution devices per work day, and contend
that he did not "robo-sign" the document.

MCU sent a copy of the restraining notice to Gomez on
November 7, 2012.  On December 5, 2012, Gomez sent a letter to

Roach saying that she had no knowledge of the debt, stating that
the statute of limitations on the debt had expired, and
requesting proof of the debt.  She also requested not to be
called on her cellular phone.  On December 11, 2012, Roach sent
Gomez a letter seeking to collect a judgment of $2,366.46, plus
interest at a rate of 9 percent annually, amounting to $3,864.91
in total.  The check was to be made payable to Roach.

During this time, Gomez states that she continued receiving
debt collection phone calls.  She received debt collection calls
to her cellular phone on November 21, 27, and 29, 2012; December
4, 7, and 31, 2012; and January 7, 18, and 19, 2013.[2]  Roach's
records indicate that additional calls were made.

---

[2] Defendants' response to these assertions is puzzling.  They "deny that the
facts set forth . . . are undisputed" and state that Gomez' proffered
evidence does not support the assertions that the calls were made by or on
behalf of Roach, or that they were made for the purposes of debt collection.
However, while the Defendants deny that the facts are undisputed, they do not
actually dispute them by offering any evidence to the contrary, or even by
asserting that the facts are incorrect.  (See D.'s Response to Pl.'s Local
Civil Rule 56.1 Statement, Dkt. No. 88, at 14.)  These facts, and those
alleged in several other paragraphs to which Defendants responded with
similar non-denial denials, are deemed admitted for the purposes of this
motion.  See Local Civil Rule 56.1(c) ("Each numbered paragraph in the
statement of material facts . . . will be deemed to be admitted for the
purposes of the motion *unless specifically controverted* . . . ." (emphasis
added)).

This measure is particularly warranted given that inconsistencies in
Defendants' Rule 56.1 statements indicate that these murky responses are
being utilized to avoid making potentially harmful admissions.  (Compare,
e.g., D.'s Local Civil Rule 56.1 Statement, Dkt. No. 61, ¶ 13 ("On March 15,
2013, [Roach] received notice that the Gomez Judgment was vacated.") with
D.'s Response to Pl.'s Local Civil Rule 56.1 Statement, Dkt. No. 88, at 18
("there is no indication [in the evidence offered by Gomez] that the Roach
Defendants or the Resurgent Defendants received notice of the vacatur of the
Gomez Judgment.  The contents of paragraph [sic] are denied because the
citations to the record do not support this statement of fact.").

Gomez filed an Order to Show Cause in Bronx Civil Court, seeking to vacate the 2005 judgment against her.  On February 19, 2013, the Honorable Ruben Franco signed the Order, which required that all debt collection activities be stayed.  On March 8, 2013, Judge Franco vacated the default judgment and ordered that "any funds including fees in the possession of [LVNV], [the] City Marshal, or any other agent shall be returned to [Gomez] forthwith."  However, even after Judge Franco's order was entered, the City Marshal continued to garnish Gomez' wages three times on Defendants' behalf, totalling roughly $400, with a similar amount being taken and held in trust.  Gomez also filed an answer and a motion to dismiss in the original debt collection action.  Her motion to dismiss was granted on May 31, 2013.

Gomez alleges that she has suffered severe emotional distress as a result of the debt collection actions taken against her, including the phone calls she received, the restraints placed on her bank account, and the garnishment of her wages.  According to her, she could not sleep and suffered "extreme stomach pain after every meal," and even had suicidal thoughts.  It is undisputed that she incurred attorney's fees in fighting the attempts to collect the debt.  Gomez estimates that the fees amount to over $1,500; Defendants assert that her

evidence for that total is lacking and deny that the amount is so high.

**Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249).

As to the motion for a protective order, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is

required." In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415
(E.D.N.Y. 2007) (quoting Seattle Times Co. v. Rhinehart, 467
U.S. 20, 36 (1984)).  The touchstone of the court's power under
Rule 26(c) is the requirement of "good cause." Id.  The party
wishing to seal materials bears the burden of demonstrating good
cause as to why the material should be concealed from the
public. New York v. Actavis, PLC, No. 14 Civ. 7473, 2014 WL
5353774, at *3.


**The Case Is Not Mooted by the Resurgent Defendants' Offer of Judgment**

On March 4, 2014, Defendants made Gomez an offer of
Judgment pursuant to Fed R. Civ. P. 68, in the amount of $4,001
"plus reasonable attorney's fees" stemming from this litigation.
Gomez declined the offer.  Defendants argue that because their
offer fully satisfied Gomez' claim, the case is now moot.

Rule 68 provides that a party defending against a claim may
serve on an opposing party an offer to allow judgment on
specified terms, with the costs then accrued.  Fed. R. Civ. P.
68(a).  If the claimant accepts the offer, the clerk enters
judgment on those terms. Id.  If the claimant declines the
offer, and later obtains a judgment that is less favorable, she
must pay the costs incurred after the offer was made.  Fed. R.
Civ. P. 68(d).  If the proposed offer of judgment satisfies the

10

entire demand, the claim is mooted, and the Court may enter judgment according to the offer's terms.  See Ambalu v. Rosnblatt, 194 F.R.D. 451, 453 (E.D.N.Y. 2000); see also Abrams v. Interco Inc., 719 F.2d 23, 32 (2d Cir. 1983).

    The parties dispute whether the offer of $4,001 does in fact satisfy the Plaintiff's entire claim.  The FDCPA allows a victim of abusive debt collection practices to recover any actual damages she has suffered as a result of any violation, plus additional statutory damages up to $1,000, attorney's fees, and costs.  15 U.S.C. § 1692k(a).  The damages that Gomez alleges amount to over $1,500 in attorney's fees spent in order to vacate the default judgment entered against her in 2005, plus what her briefing refers to as "garden variety emotional distress." (Dkt. No. 72.)

    Defendants appear to have arrived at the $4,001 figure by adding $1,000 in statutory damages under 15 U.S.C. § 1692k(a) to the $1,500 in attorney's fees Gomez claims she paid and $1,500 in emotional damages, which they believe is the maximum that Gomez could possibly obtain in this Circuit.  For this latter proposition, they cite a number of FDCPA cases in which courts in this Circuit have limited recovery for emotional damages to amounts under $1,500 or reduced higher damage awards to amounts below $1,500.  E.g., Mira v. Maximum Recovery Solutions, No. 11 Civ. 1009, 2012 WL 4511623 (E.D.N.Y. Aug. 31, 2012); Krueger v.

11

Ellis, Crosby & Assocs., Inc., No. 05 Civ. 0160, 2006 WL 3791402
(D. Conn. Nov. 9, 2006); Gervais v. O'Connell, Harris & Assocs.,
Inc., 297 F. Supp. 2d 435 (D.Conn. 2003).  Gomez does not cite
any case awarding a greater amount.

Accepting Defendants' argument would require the Court to
rule as a matter of law that a FDCPA plaintiff's potential
recovery for emotional distress is capped at $1,500.  While the
Defendants establish that courts in the Second Circuit have
generally been circumspect in awarding damages for emotional
harm in FDCPA cases, they do not cite any statute or case law
establishing a cap on such damages, and courts elsewhere have
awarded amounts for emotional harm many times greater what the
Defendants have offered Gomez.  See, e.g., Goodin v. Bank of
Am., N.A., No. 13-cv-102, 2015 WL 3866872, at *13 (M.D. Fla.
June 23, 2015) ("Accordingly, the Court, as fact-finder, finds
that Mr. and Mrs. Goodin have proven entitlement to $50,000 each
for their emotional distress."); Nelson v. Equifax Info. Servs.,
LLC, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (upholding jury
award in FDCPA case of $85,000 in damages based on emotional
distress); see also McCaig v. Wells Fargo Bank (Texas), N.A.,
788 F.3d 463, 484 (5th Cir. 2015) (affirming $75,000 in damages
for emotional distress awarded under equivalent Texas statute).
As a matter of law, the maximum amount that Gomez can recover in
damages for emotional harm cannot be established, and summary

12

judgment on these grounds is not appropriate.  See <u>Sibersky v.</u>
<u>Borah, Goldstein, Altschuler, & Schwartz, P.C.</u>, 242 F. Supp. 2d
273, 278 (S.D.N.Y. 2002).

## **Partial Summary Judgment is Granted for Gomez on her FDCPA Claim**

The FDCPA creates a private right of action for persons who
are subjected to a variety of abusive debt collection practices.
<u>See</u> 15 U.S.C. § 1692k.  The Second Circuit summarizes its
function and operation thus:

> The purpose of the FDCPA is to "eliminate abusive debt
> collection practices by debt collectors, to insure that
> those debt collectors who refrain from using abusive
> debt collection practices are not competitively
> disadvantaged, and to promote consistent State action to
> protect consumers against debt collection abuses." 15
> U.S.C. § 1692(e). The FDCPA "establishes certain rights
> for consumers whose debts are placed in the hands of
> professional debt collectors for collection, and
> requires that such debt collectors advise the consumers
> whose debts they seek to collect of specified
> rights."*DeSantis v. Computer Credit, Inc.,* 269 F.3d 159,
> 161 (2d Cir.2001). The legislative history of the
> passage of the FDCPA explains that the need for the FDCPA
> arose because of collection abuses such as use of
> "obscene or profane language, threats of violence,
> telephone calls at unreasonable hours, misrepresentation
> of a consumer's legal rights, disclosing a consumer's
> personal affairs to friends, neighbors, or an employer,
> obtaining information about a consumer through false
> pretense, impersonating public officials and attorneys,
> and simulating legal process." S.Rep. No. 95-382, at 2
> (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The
> FDCPA sets forth examples of particular practices that
> debt collectors are forbidden to employ. *See* 15 U.S.C.
> § 1692e. The list, however, is non-exhaustive, and the
> FDCPA generally forbids collectors from engaging in

unfair, deceptive, or harassing behavior. *See* 15 U.S.C.
§§ 1692 *et seq.*

Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002).  In
order to establish a violation under the FDCPA, 1) the plaintiff
must be a "consumer" who allegedly owes the debt or a person who
has been the object of efforts to collect a consumer debt, 2)
the defendant collecting the debt is considered a "debt
collector," and 3) the defendant has engaged in any act or
omission in violation of FDCPA requirements.  Plummer v. Atl.
Credit & Fin., Inc., 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014).
Here, it is unquestioned that Gomez was the object of efforts to
collect a consumer debt, and Defendants do not dispute that they
are "debt collectors" under the terms of the FDCPA.  See id. at
488-89 (declaring that assignees who purchase consumer debt for
the purposes of collection qualify as a debt collector under the
FDCPA).

The motion therefore turns on the third prong of the test -
whether the Resurgent Defendants violated the FDCPA.  Gomez
essentially points to four actions taken against her as
violations of the FDCPA: first, that she repeatedly received
collection calls even after demanding that they stop; second,
that Murtha "robo-signed" the execution documents enforcing the
2005 judgment against her; third, that she was never sent a
notice of assignment informing her that LVNV now owned her debt;

14

and fourth, that the debt collectors continued to garnish her wages and refused to return her money, in violation of the stay and vacatur orders issued by Judge Franco.[3]

Since the parties vigorously dispute whether Murtha "robo-signed" the execution documents and whether Gomez received a notice of assignment, and since neither party has mustered sufficient evidence to prevail on either matter as a matter of law, summary judgment cannot be granted on those bases.[4] However, both sides agree that Gomez sent a letter on December 5, 2012 denying the debt and asking for collection calls to stop, but that calls continued to be placed to her afterwards. Similarly, both sides agree that her wages continued to be garnished on the Resurgent Defendants' behalf even after Judge Franco ordered collection activity to cease and vacated the 2005

---

[3] Gomez makes a fifth allegation, claiming that she received a phone call in November 2013 from a man who identified himself as "Brandon" and threatened to garnish 20 to 25 percent of her wages.  The allegation cannot be credited at the summary judgment stage because it is based only on her own affidavit, and she did not attempt to depose Raymond Hunter, the employee who both sides agree was the person who identified himself as Brandon.  The telephone call also does not fit Gomez' offered timeline, since November 2013 was well after Judge Franco vacated her alleged debt, and even after she had filed her Complaint in this case.  Although Defendants responded to the allegation with another non-denial denial (See Dkt. No. 88 ¶ 38), they did cite to deposition testimony by Murtha that tended to contradict the proposition.

[4] Defendants point to two documents sent to Gomez "that disclosed the assignment of the judgment," but the documents themselves simply state that Gomez owes a debt to Inovision and that Roach is attempting to collect on it. (See Dkt. Nos. 83-8 and 83-9.)  These documents are insufficient to inform her of which debt is at issue and how LVNV came to own it, with one of the documents even listing Inovision, not LVNV, as the only creditor.  The issue of whether she received a notice of assignment thus comes down to Gomez' word that she received no notice against Murtha's testimony that he mailed her one.

judgment against Gomez.  Each of these incidents violated the

FDCPA.  See 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt

collector in writing that the consumer refuses to pay a debt or

that the consumer wishes the debt collector to cease further

communication with the consumer, the debt collector shall not

communicate further with the consumer with respect to such debt

. . . ."); 15 U.S.C. § 1692f(1) (proscribing "[t]he collection

of any amount . . . unless such amount is expressly . . .

permitted by law.").

Neither violation, however, was committed by the

Defendants, who never contacted Gomez directly.  Instead, they

utilized a chain of entities to collect the debt on their

behalf, beginning with LVNV, the actual debt holder, and

extending through Resurgent, LVNV's master servicer, to EEC, a

law firm hired by Resurgent, onwards to the Roach law firm and

its successor, which were hired by EEC, and then on to Murtha,

the attorney at the Roach firm in charge of executing on Gomez'

debt, and Global Connect, which was retained by Roach to make

telephone calls.  Gomez does not allege that the Defendants

ordered, oversaw, or even were aware of the actions taken to

collect Gomez' debt on their behalf.[5]

---

[5] Gomez argues for the first time in her reply brief that she has obtained
several contracts and training manuals showing that the Defendants exercised
control over the Roach entities.  "[I]ssues raised for the first time in a
reply brief are generally deemed waived."  In re Motors Liquidation Co., No.
15 Civ. 4685, 2015 WL 5076703, at *7 n.4 (S.D.N.Y. Aug. 27, 2015) (quoting

16

Thus, the motion turns on whether the Defendants can be held vicariously liable for FDCPA violations committed by the people who worked for them, but not under their direct control. Courts are split on this issue, both within this District and among the Courts of Appeals. Some judges have followed the Third Circuit's holding in Pollice v. National Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000) and allowed entities that themselves meet the definition of debt collector under the FDCPA to be held vicariously liable for the actions taken to collect debts on their behalf, whether or not they actually exercised control over them. The leading case for the proposition within this District is Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508 (S.D.N.Y. 2013). See also, e.g., Plummer, 66 F. Supp. 3d at 493; Fritz v. Resurgent Cap. Servs., LP, 955 F. Supp. 2d 163, 177 (S.D.N.Y. 2013).[6] The second line of cases follows the Ninth Circuit's holding in Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006) to require that any vicarious liability in a FDCPA case be based

---

Conn. Bar Ass'n v. United States, 620 F.3d 81, 91 n.13 (2d Cir. 2010)). Since summary judgment can be granted based on the vicarious liability issue alone, the Court need not reach this question.

[6] LVNV litigated the issue of whether it was vicariously liable for debt collection actions taken on its behalf in Fritz, and lost. See Fritz, 955 F. Supp. 2d at 177. As such, LVNV (but not Resurgent) is collaterally estopped from rearguing the issue. District courts in the Second Circuit are permitted to raise the issue of collateral estoppel sua sponte. See Curry v. City of Syracuse, 316 F.3d 324, 330-31 (2d Cir. 2003).

on "general principles of agency," under which "to be liable for

the actions of another, the principal must exercise control over

the conduct or activities of the agent."   (quotation omitted)

The leading case following Clark in this district is Bodur v.

Palisades Collection, LLC, 829 F. Supp. 2d 246, 259 (S.D.N.Y.

2011).  See also, e.g., Nichols v. Niagara Credit Recovery,

Inc., No. 12-cv-1068, 2013 WL 1899947, at *5 (N.D.N.Y. May 7,

2013); Sanchez v. Abderrahman, No. 10 Civ. 3641, 2013 WL

8170157, at *6 (E.D.N.Y. July 24, 2013).[7]

This decision will follow Pollice and Okyere in holding

that debt collectors such as the Defendants are vicariously

liable for FDCPA violations committed by agents acting on their

behalf, whether or not they exercised direct control over them.

Although the FDCPA is silent on the issue, the fact that

Congress defined "debt collector" to include any person "who

regularly collects or attempts to collect, *directly or

indirectly*, debts owed or due or asserted to be owed or due

---

[7] Gomez argues that Defendants' control over Roach and their agents is
established by the attorney-client relationship between Resurgent and the EEC
law firm, which in turn hired the Roach firm.  While the contention may have
merit, it runs head-on into the same split in authority.  Compare Okyere, 961
F. Supp. 2d at 517 ("Moreover, the nature of an attorney-client relationship
itself reflects that the client has the power to 'control' its agent in
material respects if the client wishes to do so.") with Bodur, 829 F. Supp.
2d at 259 (Without evidence that [debt collector client] exercised control
over [law firm]'s conduct . . . [client] is not vicariously liable and
therefore is entitled to summary judgment.").  Moreover, neither the parties
nor the cases cited touch on whether the question of control is different
when the law firm retains another law firm, as happened here.  As with Gomez'
allegations of direct control, since the motions can be resolved on the issue
of vicarious liability alone, the Court need not reach the attorney-client
question.

another," 15 U.S.C. § 1692a(6), indicates an intent to apply
liability to all entities involved in the debt collection
process, regardless of whether they face the consumer directly.
Moreover, the same subsection contains several subcategories
excluding various types of debt collectors' agents from the
provisions of the FDCPA, indicating that Congress took care to
break the liability relationship between debt collectors and
agents within those categories, and implying that it wished to
keep a liability relationship between debt collectors and agents
not so excluded.  See id.

The legislative history of the FDCPA also indicates a
congressional intent to include large debt collection entities
such as the Resurgent Defendants within the FDCPA's ambit.
According to the Senate Committee on Banking, Housing, and Urban
Affairs, the Act is geared toward collection agencies generally,
since "[u]nlike creditors, who generally are restrained by the
desire to protect their good will when collecting past due
accounts, independent collectors are likely to have no future
contact with the consumer and often are unconcerned with the
consumer's opinion of them."  S. Rep. No. 95-382, at 2 (1977).
Neither the text of the FDCPA nor its legislative history
indicates that Congress intended to draw a line between the
activities of large debt collection agencies like the Resurgent
Defendants, who buy consumer debt in bulk but contract out the

19

actual collection work, and the ground-level operations that actually contact individual debtors. Rather, the Act's recognition that "[e]xisting laws and procedures for redressing these injuries [were] inadequate to protect consumers" indicates that Congress intended to stop debt collectors large and small from using legalistic means to avoid liability for abusive practices. See 15 U.S.C. § 1692(b).

Contrary to the Defendants' assertions, holding debt collectors vicariously liable for their agents' actions is consistent with traditional common law principles. As Judge Gorenstein noted in Okyere, the common law "ordinarily make[s] principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'" Okyere, 961 F. Supp. 2d at 517 (quoting Meyer v. Holley, 537 U.S. 280, 285 (2003)). That authority need not even be authentic, due to "the established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority." See Security Pac. Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd., 891 F. 2d 447, 448 (2d Cir. 1989). Where a ground-level debt collector contacts a consumer, claiming that it is acting on behalf of an assignee that has purchased his or her debt, the collector acts on behalf of assignee and represents to the consumer that it has the assignee's permission to do what it

20

does.  The assignee, as the party whose authority the ground-
level debt collector is utilizing and the party who stands to
benefit from any aggressive tactics, can be held liable under
traditional common-law principles.

In addition to being consistent with the common law and
with Congress' intention in enacting the FDCPA, holding debt
collectors liable for FDCPA violations made on their behalf
should incentivize them to actively supervise their agents with
an aim toward minimizing abusive practices.  To allow debt
collectors to shield themselves from liability by placing a long
enough chain of entities in between themselves and the consumer
would encourage willful blindness to the actions taken in their
name.  Adopting Bodur's control requirement would also place
significant evidentiary burdens on plaintiffs who, given their
status as debtors, are likely to lack the resources to sort out
complex links between the debt collection entities aligned
against them.[8]

Since it is undisputed that Roach took actions that amount
to violations of the FDCPA, and that it did so on behalf of the

---

[8] Moreover, the Bodur rule could cut plaintiffs off from recovery altogether
if debt collectors are clever enough to avoid direct control in each link of
the chain, while leaving consumer-facing entities so undercapitalized as to
be judgment-proof.  Although the financial picture of the entities working on
the Resurgent Defendants' behalf is incomplete, the record before the Court
indicates that as the entities in the chain came closer to contact with
consumers, they had ever-shallower pockets.

Resurgent Defendants,[9] summary judgment is granted for the
Plaintiff as to liability on her FDCPA claim, insofar as it
pertains to telephone calls made to her after she sent her
letter demanding they cease and to the garnishment of her wages
after the entry of Judge Franco's Orders.  Both sides' motions
for summary judgment are denied in all other respects.

## Summary Judgment is Granted for Defendants on Gomez' § 349 Claim

New York General Business Law § 349 outlaws "[d]eceptive
acts or practices in the conduct of any business, trade or
commerce or in the furnishing of any service in this state," and
creates a private right of action for persons harmed by any such
deceptions.  In order to state a cause of action under § 349, a
plaintiff must show 1) that the defendant's conduct is
"consumer-oriented," 2) that the defendant is engaged in a
"deceptive act or practice," and 3) that the plaintiff was

---

[9] Defendants argue for the first time in their reply brief that Roach acted
outside the scope of its agency.  "[I]ssues raised for the first time in a
reply brief are generally deemed waived."  In re Motors, 2015 WL 5076703 at
*7 n.4.  Even if the issue were not waived, the contention is without merit.
Defendants argue that a "rogue attorney" who violates the law cannot act
within the scope of his authority, by definition, citing a fifteen-year-old
case from the Western District of New York Bankruptcy Court and a 22-year-old
case from the Ohio Court of Appeals.  Their argument would result in the
abolition of vicarious liability altogether, since a plaintiff could only
recover for conduct that violated the law and any violation of the law would
be outside the scope of an agent's authority.

injured by this practice.  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d
54, 64 (2d Cir. 2010).

Gomez alleges that Defendants violated § 349 by "filing
time barred collection lawsuits, entering default judgments
based on sewer service, seeking to collect on those sewer
service default judgments on time barred debts. . . . [and]
robo-signing post-judgment executions impliedly represented to
consumers that an attorney had done a meaningful review prior to
issuing the execution when none was done." [sic] (Complaint,
Dkt. No. 1, at ¶ 80.)  Any § 349 claim based on the filing of
the initial 2005 lawsuit against her, any putative sewer
service, or the obtaining of the initial default judgment is
time-barred due to § 349's three-year statute of limitations.
<u>Gaidon v. Guardian Life Ins. Co. of Am.</u>, 96 N.Y.2d 201, 210
(2001).  A claim based on the enforcement of the judgment
against her, or on the "robo-signing" of the execution paperwork
would not be time-barred, but fails for a different procedural
reason.

Rather than a claim based on § 349, a general statute which
covers deceptive business practices, Gomez' state law claim is
actually one for a violation of General Business Law § 601,
which prohibits a variety of abusive debt collection practices,
including to "[c]laim, or attempt or threaten to enforce a right
[to collect a debt] with knowledge or reason to know that the

23

right does not exist."  While this statute covers Roach's
attempts to collect on a debt that it should have known was
invalid, Gomez cannot sue the Resurgent Defendants under it
because "[t]he New York Court of Appeals has stated
unequivocally that Section 601 does not supply a private cause
of action."  Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir.
2001) (citing Varela v. Investors Ins. Hldg. Corp., 81 N.Y.2d
958, 961 (1993)).  "Plaintiffs cannot circumvent this result by
claiming that a Section 601 violation is actionable under
Section 349."  Id.  Summary judgment is granted for the
Defendants on Gomez' § 349 claims.

## The Motion for a Protective Order is Granted

Defendants separately move for a protective order sealing a
set of documents submitted by Gomez in support of her reply
brief.  These documents consist of 1) the Amended and Restated
Servicing Agreement between LVNV and Resurgent, 2) the
Collection Services Agreement between Resurgent and EEC, 3) the
Service Provider Master Agreement between EEC and Roach, and 4)
Resurgent's Attorney Standards and Operations Manuals.  (D.'s
Protective Order Br., Dkt. No. 99, at 4). The three contracts
were produced during this case, while the manuals were produced
by a third party in a different litigation.

Defendants have adequately shown that the materials contain proprietary information that could harm their business if it were to be disclosed.  The Attorney Standards and Operations Manuals contain information about Resurgent's computer system, the codes put into it, protocols for transferring account information, procedures for handling accounts, and descriptions of fee arrangements with the law firms it employs to collect debts.  (D.'s Protective Order Br., Dkt. No. 99, at 7-8.)  While the contracts between LVNV, Resurgent, EEC, and Roach are less substantive in nature, Defendants aver that they "identify the fee arrangements and structures, set down procedures regarding Roach's settlement authority during all debt collection litigation, and other policies regarding litigation of collection suits."  (Id.)

The Court is satisfied that disclosure could cause harm to Defendants' business, and that there is good cause for the documents to remain confidential.  The conclusion is buttressed by the fact the documents are offered in support of an argument that was first raised in a reply brief, and therefore waived, see In re Motors Liquidation Co., No. 15 Civ. 4685, 2015 WL 5076703, at *7 n.4 (S.D.N.Y. Aug. 27, 2015) (quoting Conn. Bar Ass'n v. United States, 620 F.3d 81, 91 n.13 (2d Cir. 2010)), and by the fact that this Opinion resolves both sides' summary

judgment motions without the need to refer to them.   The
Defendants' motion for a Protective Order is therefore granted.

## Conclusion

Summary judgment is granted for the Plaintiff as to
liability on her FDCPA claim, insofar as it pertains to
telephone calls made to her after she sent her letter demanding
they cease, and to the garnishment of her wages after the stay
and vacatur of the default judgment against her.   Summary
judgment is granted for Defendants on Plaintiff's General
Business Law § 349 claim.   Both parties' motions for summary
judgment are denied in all other respects.   The Defendants'
motion for a protective order is granted.

It is so ordered.

New York, NY
September 22, 2015

ROBERT W. SWEET
U.S.D.J.