UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

**CARMEN GOMEZ**

                                    **Case No.: 1:13-CV-07395**

                 **Plaintiff,**

   -against-

**INOVISION-MEDCLR PORTFOLIO GROUP, LLC.,
PETER T. ROACH & ASSOCIATES, P.C.,
KIRSCHENBAUM, PHILLIPS & ROACH, P.C.
TIMOTHY MURTHA
LVNV FUNDING, LLC
RESURGENT CAPITAL SERVICES, LP
NCO FINANCIAL SYSTEMS, INC.**

                 **Defendants.**

-------------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL DEFENDANTS TO ANSWER DEPOSITION QUESTIONS**

**TABLE OF CONTENTS**

A.  INTRODUCTION ...........................................................................................................1

B.  THE DEPOSITION TIMING IS NOT RELEVANT ..........................................................1

C.  THE DEPOSITION WAS NOT LIMITED TO TOPICS FROM PLAINTIFF'S 2014 DEPOSITION NOTICE ..............................................................................................1

D.  DEFENDANTS' NET WORTH IS DISCOVERABLE......................................................2

E.  PLAINTIFF'S SIXTH DEPOSITION TOPIC PROVIDED AMPLE NOTICE THAT PLAINTIFF PLANNED TO QUESTION THE WITNESS ABOUT PREVIOUS ASSIGNEES OF THE PUTATIVE DEBT ...........................................................................7

F.  CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Alli v. Steward-Bowden*, 2013 WL 6053481 (S.D.N.Y. Nov. 7, 2013) ..........................................4

*Coty Inc. v. Excell Brands, LLC*, 2016 WL 7187630 (S.D.N.Y. Dec. 9, 2016) ..............................9

*Crawford v. Franklin Credit Management Corp.,* 261 F.R.D. 34 (S.D.N.Y.2009)........................7

*Employers Inc. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1120632 (E.D.N.Y. April 26, 2006)................................................................................................................................8

*Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) .............................6

*Meyer Corp. U.S. v. Alfay Designs, Inc.*, 2012 WL 3536987 (E.D.N.Y. Aug. 13, 2012) ...............8

*Okyere v. Palisades Collection*, LLC, 961 F. Supp. 2d 522 (S.D.N.Y. 2013) ................................4

*Pierpoint v. Farnum*, 234 A.D. 205, 254 N.Y.S. 758 (2d Dep't 1931).............................................4

*Philbrick v. Enom Corp.*, 593 F.Supp.2d 352 (D.N.H. 2009)............................................................8

*Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 589 (S.D.N.Y. 2015) .......................5

*Soroof Trading Development Co., Ltd. v. GE Fuel Cell Systems, LLC*, 2013 WL 1286078 (S.D.N.Y. March 28, 2013)..............................................................................................................8

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002) ...............................................................................................................................8, 9

**Statutes**

15 U.S.C. § 1692 *et seq*.................................................................................................................*passim*

Fed. R. Civ. P. 30(b)(6)........................................................................................................... *passim*

Fed.R.Civ.P. 26(1) ..........................................................................................................................8

N.Y. Gen. Bus. Law § 349.............................................................................................................3, 4

## A: INTRODUCTION.

On December 7, 2016 Plaintiff filed Plaintiff's Motion to Compel Deposition Testimony ("Motion to Compel"). On January 4, 2017 Defendant filed its Opposition, to which Plaintiff files this Reply.

## B: THE DEPOSITION TIMING IS NOT RELEVANT

Defendants raise the issue of the short time period between the formal sending of the notice and the date of the deposition. However, what Defendant omits is that the undersigned offered to reset the date of the deposition to a date convenient to Defendants to give Defendants as much time as they needed to prepare for the deposition topics. Opposing counsel indicated Defendants would stand by their objections regardless of how much time they were provided for notice. Therefore the timing of the deposition notice is immaterial to Plaintiff's Motion to Compel. Defendants also raise issues as to the mechanics of the deposition but do not contend it had any relevance as to the issues in the Motion to Compel. [1]

## C: THE DEPOSITION WAS NOT LIMITED TO TOPICS FROM PLAINTIFF'S 2014 DEPOSITION NOTICE

Defendants' contend that the Court's April 4, 2016 Order reopening discovery [DE 117] limited Plaintiff's deposition topics to those in her November *2014* deposition notice. This argument fails for a number of reasons.

---

[1] As to the location of the deposition, Defendants indicated that they would provide a location for the out-of-state videoconference deposition as Defendants objected having it in their own office or in the office of the local court reporter. Apparently there was a miscommunication as to what it means to arrange for a location as the office would not allow the court reporter to set up without a prior reservation. The undersigned scrambled for an alternative location but could not reach opposing counsels via email or telephone, which resulted in the deposition beginning at 1:00 PM. In any event, there is no issue as to there having been enough time to have completed the depositions, nor do Defendants even contend these minor issues are relevant to their failure to answer the deposition questions, the basis of the motion to compel.

First, Defendants have not made this objection either prior to or during the deposition, nor do they claim to have done so. The first time Defendants raised this argument is in its Memorandum of Law In Opposition ("Opposition"), p. 6. Defendants have therefore waived this objection, an after-the-fact rationalization.

Second, despite Defendants' suggestion to the contrary, the April 4, 2016 Order re-opening discovery [DE 117] limited the type of discovery that Defendants may engage in, but not the discovery which Plaintiff may engage in. ("The Resurgent Defendants' request to depose the Plaintiff regarding damages is granted.  The Plaintiff's request to reopen discovery is granted for a period of 60 days.")  It is true that in the earlier order, the Court references Plaintiff's requests for depositions. ("Plaintiff…. requested additional depositions…") Even if the Order, read as a whole, were interpreted to limit Plaintiff's discovery to depositions, there is no basis for reading the order as limiting the deposition topics strictly to those specifically identified in the *2014* deposition notice.

Third, as demonstrated below, Defendant objected to answering questions in items a. and g. of the 2014 deposition notice, regarding the claims and defenses in the case and whether notices of assignment are sent. See Exhibit 3 to Lenci Affirmation, DE 154-3 (2014 Deposition notice).

## D:  DEFENDANTS' NET WORTH IS DISCOVERABLE

Defendants objected to and would not answer questions regarding Plaintiff's deposition topics # 4 and # 5:

> 4. The income and net worth LVNV Funding, LLC and Resurgent Capital Services, LP for the period beginning two years prior to the commencement of this suit to present.

> 5. The accuracy of the net worth statements contained in the attached net worth statements.

See Exhibit A to Keshavarz Declaration in Support of Motion to Compel, DE 146. ("Keshavarz Decl.")

Defendants do not dispute Plaintiff's argument in its Motion to Compel at p. 6 that the financial status and net worth of Defendants are questions presented to the jury in the pattern jury charge for punitive damages. *See* Motion to Compel p. 6. Defendants admit that punitive damages may be available for conversion, but raise two objections. Defendant objects that Plaintiff has not met the quantum of proof necessary to be awarded punitive damages.[2] Defendants also contend that discovery as to income and net worth should not be allowed until the jury renders a verdict allowing for punitive damages. Defendants' arguments are unavailing.

First, Defendants have waived these objections as they were not interposed either before or during the deposition. Prior to the deposition, opposing counsel sent an email objecting to topics # 4 and # 5 on the grounds of "relevance and proportionality" and noted "so you may have to take this one up with Judge Sweet." Nowhere in its pre-deposition objection (Exh. 8 to Lenci Decl., DE 154), nor, to the memory of the undersigned, during the course of the deposition, did Defendants raise the objections now made in their Opposition. Therefore, Defendants have not preserved their objections and have waived the arguments they raise in their opposition.

Second, it is not Defendant's role to self-adjudicate the strength of Plaintiff's punitive damage claims and then to unilaterally object to discovery. Plaintiff has pleaded

---

[2] Defendants ignore Plaintiff's claim for punitive damages for violations of GBL 349. While it is true that Defendants have a motion to strike the GBL 349 claim, until the point that claim is stricken, Plaintiff is entitled to discovery related to the GBL 349 claims, including the punitive damage claim.

- 3 -

claims for conversion and GBL 349—both of which allow for punitive damages—and stated facts in support of those claims. By definition, discovery is relevant because these are Plaintiff's claims. Indeed "there is no support for a proposition that a defendant can refuse a discovery request because it believes a plaintiff's claims are meritless." *Alli v. Steward-Bowden*, 2013 WL 6053481 (S.D.N.Y. Nov. 7, 2013). Defendant makes a boilerplate objection as to "proportionality," but makes no specific argument as to why Plaintiff's discovery demands are not proportional.

Third, Plaintiff's claims for punitive damages are stronger than Defendants suggest. One claim for punitive damages is that Defendant did not promptly return Plaintiff's money for months after the order of the Court vacating the sewer service judgment and ordering the money to be returned "forthwith." Plaintiff's testimony, which Defendant attaches in Opposition (Lenci Decl., Exh 2, p. 43:14-18), states "so it took three to four months just for me to get the whole amount" returned. The fact that money was eventually returned—albeit 3-4 months after it was ordered to be returned "forthwith"—does not weaken Plaintiff's conversion claim. *Okyere v. Palisades Collection*, LLC, 961 F. Supp. 2d 522, 534 (S.D.N.Y. 2013) ("To the extent Moses is arguing that plaintiff has not stated a claim for conversion because the funds were returned to him six months after they were taken, that argument is also rejected.") citing to *Pierpoint v. Farnum*, 234 A.D. 205, 254 N.Y.S. 758, 763 (2d Dep't 1931) ("Returning property to the rightful owner ... does not absolve defendants of all liability from the alleged conversion. A claim for conversion will exist even when the deprivation is partial or temporary.")

Further, Defendants ignore that Plaintiff's conversion claim is not limited to refusing to comply for 3 – 4 months with a court order to return money "forthwith." Rather, Plaintiff makes a conversion claim from the *outset of executions* on the sewer service judgment, even before the sewer service judgment was vacated, because Defendants used fraud to obtain the default judgment by using a false affidavit of service. *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 589 (S.D.N.Y. 2015) ("Thus, if a jury were to find that sewer service occurred, then the conversion would have been initiated at the time Defendant took possession of Plaintiff's funds in or around 2006 through the fraudulently obtained default judgment.") Plaintiff specifically makes this claim in her complaint, a fact Defendants ignore. *See* First Amended Complaint, DE 130, ¶ 67 ("Defendants obtained the default judgment against Ms. Gomez based on sewer service default judgment, on a time barred debt, for a judgment for which no notice of assignment had been sent or received. Therefore, Defendants are liable for conversion for the restraints upon, execution on, and retention of the Ms. Gomez's funds from the outset of the garnishment.") For these reasons Plaintiff has a strong factual and legal basis for submission of a punitive damage questions to the jury.

Fourth, topic # 5 merely asks Defendants to confirm the accuracy of net worth statements that *these same* Defendants provided in discovery demands in a class action, which *these defendants* contended were accurate representations of its income, expenses, and net worth, and which has been publically filed in that class action and in other cases. *See* Exhibit A to Keshavarz Decl. For example, in its publically filed financial statement, LVNV contends that the value of its total assets is $237 million. Topic # 5 simply asks Defendants to state whether this statement is true. Those very statements have been

provided in this case in support of Plaintiff's Motion for Summary Judgment, and formed part of the basis for this Court's ruling holding these Defendants liable for the FDCPA violations of their debt collection attorneys. *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 158 fn. 8 (S.D.N.Y. 2015) ("Although the financial picture of the entities working on the Resurgent Defendants' behalf is incomplete, the record before the Court indicates that as the entities in the chain came closer to contact with consumers, they had ever-shallower pockets.")

Fifth, the cases Defendants cite to in support of limiting discovery as to income and net worth until after a jury determination on liability for punitive damages turn on two factors not at play in the case at bar. One factor is the privacy interest of the Defendant. However, topic # 5 is limited to confirming the accuracy of information produced by these same Defendants, which have been publically filed in this and other cases, and upon which this Court has relied in part for its determination of Defendants' FDCPA liability. While certainly not dispositive, the entry of the agreed protective order in this case at least minimizes any privacy harm. A second concern is the time and expense of a full-blown investigation of the party's finances. However, this cannot be said for topic # 5. Even for topic # 4, Plaintiff is not seeking "granular" information about the details of Defendants' operations. Rather, Plaintiff is merely looking for aggregate numbers. Another factor these decisions look to is the relative strength of the punitive damage claim. The concern is that a bare-bones punitive damage contention not be used as a vehicle for a full-blown investigation. However, for the reasons previously stated, the claims for punitive damages are far from bare-bones. Finally, it is difficult to imagine how Plaintiff would be able to conduct discovery on income and net worth in the

period between when the jury answers the predicate questions for liability and the subsequent questions for calculating punitive damages.

### E:  PLAINTIFF'S SIXTH DEPOSITION TOPIC PROVIDED AMPLE NOTICE THAT PLAINTIFF PLANNED TO QUESTION THE WITNESS ABOUT PREVIOUS ASSIGNEES OF THE PUTATIVE DEBT

Defendant argues that Plaintiff's deposition notice did not provide notice of Plaintiff's intent to depose Ms. Henderson regarding previous assignees of the putative debt. However, Plaintiff's first deposition topic requests that the witness prepare to testify about "[t]he claims and defenses raised in the complaint and answer in this action." Pl. Notice of Deposition, p. 3. Plaintiff's Amended Complaint states that "Ms. Gomez was never sent and has never received *from anyone* a notice of the assignment of the putative Chase account." Am. C. ¶ 29 (emphasis added). Moreover, Plaintiff's sixth deposition topic specifically requests information concerning "[w]hether notices of assignment were sent or required to be sent for the assignment of the putative debt sought to be collected against Carmen Gomez."[3] Pl. Notice of Deposition, p. 3. The sixth topic was not limited merely to information concerning assignees who acquired the debt after LVNV—it explicitly sought information concerning "[w]hether notices of assignment were sent." *Id.*

Since Plaintiff's first and sixth deposition topics call for information concerning whether any assignees of the putative debt sent notices of assignment, Defendant was under a duty to produce a witness who had prepared to testify as to that topic. *See* Fed. R. Civ. P. 30(b)(6); *Crawford v. Franklin Credit Management Corp.,* 261 F.R.D. 34, 38 (S.D.N.Y.2009) ("[A] notice of deposition ... constitutes the minimum, not the maximum,

---

[3] Defendants claim that Plaintiff's sixth deposition topic seeks testimony concerning "the Defendants' alleged actions "either directly or through servicers."" D. Op. p. 8. This is disingenuous, as Plaintiff did not so limit her sixth deposition topic.

about which a deponent must be prepared to speak." However, the witness was apparently unprepared to testify as to this issue, and counsel for Defendant repeatedly instructed his client not to answer those questions.[4]

Defendant argues that—regardless of whether Plaintiff provided adequate notice of her intent to question Ms. Henderson about prior assignees of the putative debt—Defendant is not required to testify as to that matter. Defendant incorrectly contends that "a corporate representative in a 30(b)(6) deposition does not have any obligation to learn of, and testify to, actions taken by non-party entities as such information is not within the scope of knowledge of the company being deposed." D. Op. p. 9. Yet, "[t]he person designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Thus, the relevant inquiry is not whether Plaintiff seeks information concerning a non-party, but whether the requested information is "known or reasonably available" to Defendant. *Id. See Soroof Trading Development Co., Ltd. v. GE Fuel Cell Systems, LLC*, 2013 WL 1286078 (S.D.N.Y. March 28, 2013); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002)("in all cases, the responding party should be obligated to produce the information under its control.")

---

[4] Assuming *arguendo* that Plaintiff's notice of deposition did not adequately inform Defendants of Plaintiff's intent to question the witness about whether previous assignees of the putative debt sent notices of assignment, the witness was nonetheless required to answer Plaintiff's questions to the best of her ability. *See Employers Inc. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, 2006 WL 1120632 (E.D.N.Y. April 26, 2006) ("a notice of deposition cannot be used to limit what is asked of the designated witness, but rather, it constitutes the minimum, not the maximum, about which a deponent must be prepared to speak."); *Meyer Corp. U.S. v. Alfay Designs, Inc.*, 2012 WL 3536987 (E.D.N.Y. Aug. 13, 2012) ("when a deponent is produced pursuant to Fed.R.Civ.P. 30(b)(6), the scope of questioning at the deposition is not defined by the notice of deposition—instead, Fed.R.Civ.P. 26(1) defines the scope of discovery unless otherwise ordered by the court."). Although a witnesses testimony regarding topics that were not noticed may not be imputed to the company, the witness is still required to answer. The *Philbrick* case, cited by Defendant, is not to the contrary. *Philbrick v. Enom Corp.*, 593 F.Supp.2d 352 (D.N.H. 2009). That cases merely holds that a 30(b)(6) witness is not required to *prepare* to testify as to topics that have not been noticed.

Information concerning the previous assignees of the putative debt is, in fact "known or reasonably available" to Defendants because LVNV and Resurgent are "owned, controlled, and operated by [Sherman Financial Group]," the company that owns the previous assignees of the debt, Sherman Originator 3, LLC and Sherman Originator, LLC. *See Keshavarz Declaration* [Exhibit A, Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses, Case No. DFR-FY2012-012]. In fact, the same five individuals "own, manage, direct, operate, supervise, and oversee the [Sherman entities]." *Id.* The Maryland State Collection Agency Licensing Board ("Board") specifically found that the Sherman entities are "interrelated in a complex business structure focusing primarily on the collection of consumer debt." *Id.* Indeed, due to the close relationship between LVNV and Resurgent and the other Sherman entities, the Board imputed the improper debt collection activities of LVNV and Resurgent to the remaining Sherman entities. *Id.*

An entity responding to a 30(b)(6) notice "must produce a witness prepared to testify with the knowledge of the subsidiaries and affiliates if the subsidiaries and affiliates are within its control." *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002). Moreover, an answering party may have an affirmative duty to seek information from non-parties where the answering party exercised the "requisite degree of control over [the non-party]." *Coty Inc. v. Excell Brands, LLC*, 2016 WL 7187630 (S.D.N.Y. Dec. 9, 2016) (holding that the Defendant in a suit alleging the sale of "knock-off" perfume products had an affirmative obligation to seek information from its vendor prior to a 30(b)(6) deposition). As the Board's report makes clear, Sherman Financial Group controls


LVNV, Resurgent, and the non-party prior assignees of the putative debt. The entities are united in a common scheme to collect consumer debts, and information about Sherman's debt collection practices is therefore within the control of LVNV and Resurgent.

### F:  CONCLUSION

Plaintiff prays for the Court to order the Resurgent and LVNV Defendants to submit to a deposition and to fully answer questions relating to each of the deposition topics listed in Plaintiff's deposition notice.

Dated:  Brooklyn, NY
January 13, 2017

/s/
Ahmad Keshavarz

### CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Edward K. Lenci
Concepcion A. Montoya
Sheng Beh
Nabil G. Foster
HINSHAW & CULBERTSON LLP
Attorney for Defendants LVNV Funding, LLC., and Resurgent Capital Services, LP.
800 Third Avenue, 13th Floor
New York, New York 10022
Tel: (212) 471-6200

Dated:  Brooklyn, NY
January 13, 2017

/s/
Ahmad Keshavarz