IN THE MATTER OF:

LVNV FUNDING LLC,

RESURGENT CAPITAL SERVICES
LIMITED PARTNERSHIP
a/k/a RESURGENT CAPITAL SERVICES
L.P., f/k/a ALEGIS GROUP L.P.,

SHERMAN ORIGINATOR LLC,

ALEGIS GROUP LLC,

SHERMAN FINANCIAL GROUP LLC,

SHERMAN CAPITAL MARKETS LLC,

SHERMAN ACQUISITION LIMITED
PARTNERSHIP
a/k/a SHERMAN ACQUISITION L.P.,

SHERMAN ACQUISITION L.L.C.,

SHERMAN ACQUISITION II LIMITED
PARTNERSHIP
a/k/a SHERMAN ACQUISITION II L.P.,

SHERMAN ACQUISITION II GENERAL
PARTNERSHIP LLC,

SHERMAN CAPITAL, L.L.C.,

MEETING STREET PARTNERS II INC.,

BENJAMIN W. NAVARRO,

LESLIE G. GUTIERREZ,

SCOTT E. SILVER,

KEVIN P. BRANIGAN, and

ROBERT A. RODERICK,

    Respondents.

BEFORE THE MARYLAND
STATE COLLECTION AGENCY
LICENSING BOARD IN THE
OFFICE OF THE
COMMISSIONER OF FINANCIAL
REGULATION

Case No.:  DFR-FY2012-012

**SUMMARY ORDER TO CEASE AND DESIST AND
SUMMARY SUSPENSION OF COLLECTION AGENCY LICENSES**

WHEREAS, pursuant to the Maryland Collection Agency Licensing Act ("MCALA,"), at Business Regulations Article ("BR"), § 7-101 *et seq.*, Annotated Code of Maryland, the State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation (hereinafter, the "Agency") is responsible for licensing and regulating persons engaged in collection agency activities in the State of Maryland (the "State"), and for otherwise enforcing the provisions of MCALA and of the Maryland Consumer Debt Collection Act ("MCDCA"), at Commercial Law Article ("CL"), § 14-201 *et seq.*, Annotated Code of Maryland; and

WHEREAS, the Agency find grounds to allege that LVNV Funding LLC ("LVNV"), Resurgent Capital Services Limited Partnership a/k/a Resurgent Capital Services L.P., f/k/a Alegis Group L.P. ("Resurgent"), Sherman Originator LLC ("Sherman Originator"), Alegis Group LLC ("Alegis"), Sherman Financial Group LLC ("SFG"), Sherman Capital Markets LLC ("SCM"), Sherman Acquisition Limited Partnership a/k/a Sherman Acquisition L.P. ("SALP"), Sherman Acquisition L.L.C. ("SALLC"), Sherman Acquisition II Limited Partnership a/k/a Sherman Acquisition II L.P. ("SAIILP"), Sherman Acquisition II General Partnership LLC ("SAIIGPLLC"), Sherman Capital, L.L.C. ("Sherman Capital"), Meeting Street Partners II Inc. ("MSPII"), Benjamin W. Navarro, Leslie G. Gutierrez, Scott E. Silver, Kevin P. Branigan, and Robert A. Roderick (collectively, the "Respondents") have engaged in acts or practices constituting violations of MCALA and MCDCA; and the Agency finds that action under Financial Institutions Article ("FI"), § 2-115, Annotated Code of Maryland, and

2

State Government Article ("SG"), § 10-226(c)(2), Annotated Code of Maryland, is appropriate.

NOW, THEREFORE, the Agency has determined, for the reasons set forth below, that the public welfare imperatively requires that the Maryland collection agency licenses of Respondents LVNV and Resurgent be SUMMARILY SUSPENDED, effective immediately; and that it is in the public interest that all Respondents immediately CEASE AND DESIST from engaging, directly or indirectly, in the business of collecting consumer claims from Maryland residents, and from otherwise engaging in the collection agency business in the State of Maryland.

1.     BR § 7-101 provides, in part, the following definitions:

> (b) *Board*.- "Board" means the State Collection Agency Licensing Board.
> (c) *Collection agency*.- "Collection agency" means a person who engages directly or indirectly in the business of:
> (1) (i) collecting for, or soliciting from another, a consumer claim; or
> (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it;
> * * *
> (d) *Commissioner*.- "Commissioner" means the Commissioner of Financial Regulation.
> (e) *Consumer claim*.- "Consumer claim" means a claim that:
> (1) is for money owed or said to be owed by a resident of the State; and
> (2) arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services.
> (f) *License*.- "License" means a license issued by the Board to do business as a collection agency.
> (g) *Licensed collection agency*.- "Licensed collection agency" means a person who is licensed by the Board to do business as a collection agency.

2.      Pursuant to BR § 7-201, "[t]here is a State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation in the Department [of Labor, Licensing, and Regulation]."   Further, BR § 7-203 provides that, "[t]he Commissioner is chairman of the Board."

3.      BR § 7-305 provides as follows:

> (a) *Scope of license*. -- A license authorizes the licensee to do business as a collection agency at only 1 place of business.
> (b) *Multiple licenses authorized*. -- A licensee may hold more than 1 license under this title.

4.      BR § 7-308 provides, in relevant part, as follows:

> (a) *In general*.- Subject to the hearing provisions of § 7-309 of this subtitle, the Board may reprimand a licensee or suspend or revoke a license if the licensee or any owner, director, officer, member, partner, or agent of the licensee:
> * * *
> (3) in connection with the collection of any consumer claim:
> (i)  commits any fraud; or
> (ii) engages in any illegal or dishonest activities;
> (4) knowingly or negligently violates the Maryland Consumer Debt Collection Act;
> * * *
> (b) *Multiple licenses*.- If the Board finds that a ground for suspension or revocation of a license applies to more than 1 place of business that the licensee operates, the Board may act against:
> (1) each license of the licensee;
> * * *

5.      BR § 7-401(a) provides that, "except as otherwise provided in this title, a person may not knowingly and willfully do business as a collection agency in the State unless the person has a license."

6.      Pursuant to Md. Code Ann., Com. Law ("CL"), § 14-202(8) of the Maryland Consumer Debt Collection Act ("MCDCA"), at CL § 14-201 *et seq*., "[i]n collecting or

attempting to collect an alleged debt," a debt collector (or "collector") may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

7.     The Fair Debt Collection Practices Act ("FDCPA"), at 15 U.S.C. § 1692 *et seq.*, provides, in relevant part, as follows:

> **§ 1692e.  False or misleading representations**
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> (2)  The false representation of--
> (A)  the character, amount, or legal status of any debt; or
> * * *
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.
> * * *
> (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> * * *
> **§ 1692f.  Unfair practices**
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> * * *

8.     A non-exempt person who acquires consumer claims in default at the time of acquisition (a "consumer debt purchaser"), who then attempts to collect on those debts through litigation in Maryland State courts, is conducting business as a "collection agency" in the State under BR § 7-101(c).  This applies regardless of whether the consumer debt purchaser is represented in litigation by attorneys who are also licensed as collection agencies.

5

As such, a consumer debt purchaser collecting debts through litigation in Maryland State courts is required to be licensed as a collection agency under MCALA, and is subject to the regulatory authority of the Agency in the conduct of that litigation.

9.    A consumer debt purchaser collecting debts through litigation in Maryland State courts also meets the definitions of "collector" under CL § 14-201(b) of the MCDCA, and of "debt collector" under 15 U.S.C. § 1692(a) of the FDCPA.

10.    Thus, the Agency has the authority to bring actions under MCALA against persons engaged in various prohibited activities in connection with the collection of any consumer claim, including, but not limited to, for violations of the FDCPA pursuant to BR § 7-308(a)(3)(ii) (engaging in illegal activities), and for violations of the MCDCA pursuant to BR §§ 7-308(a)(3)(ii) and 7-308(a)(4).    This includes both litigation-related collection activities, as well as non-litigation (*i.e.*, "traditional") collection activities.

11.    Pursuant to BR § 7-205 of MCALA, as a result of a hearing, or of providing an opportunity for a hearing, the Agency may issue an order requiring persons to cease and desist from engaging in collection-related violations of the law, may issue a monetary penalty, and may require persons to take affirmative action to correct the violations, including providing restitution to all aggrieved consumers.    Additionally, pursuant to Md. Code Ann., Fin. Inst. ("FI"), § 2-115(b), as a result of a hearing, or of providing the opportunity to request a hearing, the Commissioner of Financial Regulation (the "Commissioner") may, in addition to any other authorized actions taken by the Agency, enter a final order to cease and desist, suspend or revoke any collection agency licenses, impose a civil penalty up to $1,000 for a first violation of MCALA, the MCDCA, or of the FDCPA (as violations of MCALA), issue a

penalty of up to $5,000 for each subsequent violation, or may take any combination of the aforementioned actions against violators.

12.     The Agency began an investigation of Respondents in July 2011 after receiving complaints pertaining to Respondents' collection-related litigation activities in Maryland State courts.  The Agency's investigation revealed the following:

a.     Benjamin W. Navarro, Leslie G. Gutierrez, Scott E. Silver, Kevin P. Branigan, and Robert A. Roderick (collectively, the "individual Respondents") own, manage, direct, operate, supervise, and oversee the business activities of all of the Respondent business entities, which are all interrelated in a complex business structure focusing primarily on the collection of consumer debt.    At the top of this structure are Sherman Capital, L.L.C. ("Sherman Capital") and Meeting Street Partners II Inc. ("MSPII"), which own and operate Sherman Financial Group LLC ("SFG") and Sherman Capital Markets LLC ("SCM").  SCM provides management services for SFG.  All of the other Respondent business entities are ultimately owned, controlled, and operated by SFG.  The individual Respondents serve as the directors, managers, and officers of the subsidiary business entities in varying capacities.

b.     LVNV Funding LLC ("LVNV") is a limited liability company that was organized under Delaware law on April 13, 2005.  LVNV is a consumer debt purchaser that acquires consumer debts in default, and then seeks to collect on those claims by bringing actions in state courts.  LVNV's business and affairs are managed under the direction and control of a Board of Managers.  Benjamin W. Navarro is the General Manager of LVNV; this position is responsible for supervising the day-to-day operations of LVNV.  Other managers and officers of LVNV include Kevin P. Branigan, President; Scott E. Silver, Secretary; and Leslie G. Gutierrez, Chief Financial Officer.  The business address for each of these officers is

200 Meeting Street, Suite 206, Charleston, South Carolina 29401.  LVNV's principal business address is 625 Pilot Road, Suite 3, Las Vegas, Nevada 89119.  The Resident Agent for service of LVNV is The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, Maryland 21201.

        c.     On February 18, 2010, LVNV Funding LLC ("LVNV") became duly licensed as a Maryland collection agency, as that term is defined in BR § 7-101(c), receiving collection agency license number 04-5594 for its business location at 625 Pilot Road, Suite 3, Las Vegas, Nevada 89119.

        d.     LVNV is a wholly owned subsidiary of Sherman Originator LLC ("Sherman Originator").  Sherman Originator does business as LVNV, and it is the sole member of LVNV.  Sherman Originator was organized under Delaware law on November 3, 2000, and is a wholly owned subsidiary of SFG.  Sherman Originator's business address is: c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.  The Resident Agent for service of Sherman Originator is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

        e.     Resurgent Capital Services Limited Partnership a/k/a Resurgent Capital Services L.P., f/k/a Alegis Group Limited Partnership (a/k/a Alegis Group L.P.), (hereinafter, "Resurgent"), acts as the master servicer for charged off consumer debt owned by LVNV, servicing, administering, and collecting LVNV's charged-off receivables.  Resurgent is a limited partnership that was formed between Alegis Group LLC ("Alegis"), the General Partner holding a 1% ownership interest in Resurgent, and SFG, the Limited Partner holding a 99% ownership interest in Resurgent.  Both the limited partnership (Resurgent) and the General Partner (Alegis) are subsidiaries of the Limited Partner (SFG).  Resurgent was

organized under Delaware law on June 24, 1999.  The principal office address of Resurgent is 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.  Resurgent also maintains offices in Cincinnati, Ohio and Sioux Falls, South Dakota.  The Resident Agent for service of Resurgent is The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, Maryland 21201 (address to:  "Resurgent Capital Services L.P.").

        f.      Since May 25, 2000, Resurgent has been duly licensed under MCALA as a Maryland collection agency, as that term is defined in BR § 7-101(c), currently holding collection agency license number 04-2955 for its business location at 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.  Resurgent also held collection agency license number 04-3596 for a branch office located at 3817 S. Elmwood Avenue, Sioux Falls, South Dakota 57105-655 from April 23, 2003 until the license expired on September 2, 2011, reportedly because the office closed.

        g.      Resurgent contracts with other collection agencies for collection of Maryland consumer claims owned by LVNV through traditional collection methods.  For example, Resurgent contracted with Valentine & Kebartas, Inc. and J.C. Christensen and Associates, Inc. to collect on accounts owned by LVNV that originated with HSBC Bank Nevada National Association.  Resurgent also enters into agreements with Maryland attorneys to bring litigation-related collection actions on behalf of LVNV in Maryland State courts.  These law firms have included, but are not limited to, the following:  Weinstock, Friedman & Friedman, P.A.; Schlee & Stillman, LLC; Protas, Spivok & Collins, LLC; Margolis, Pritzker, Epstein & Blatt, P.A.; Rubenstein, Cogan & Quick, P.C.; Levy & Associates, LLC (located in Columbus, Ohio); Mann Bracken, LLP (currently in Maryland State court-ordered receivership); Mann Bracken, LLC (subsequently converted to Mann Bracken, LLP); and

Wolpoff and Abromson, L.L.P. (subsequently merged into Mann Bracken, LLC, which was then converted to Mann Bracken, LLP).

   h.  Alegis Group LLC is responsible for the management of Resurgent. Alegis was organized under Delaware law on June 24, 1999, and is a wholly owned subsidiary of SFG. The principal office address of Alegis is the same as that of Resurgent: 15 S. Main Street, Suite 600, Greenville, South Carolina 29601. Robert A. Roderick is the Chief Executive Officer and manager of Alegis; his business address is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401. Benjamin W. Navarro is also a manager of Alegis. The Resident Agent for service of Alegis is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

   i.  Sherman Acquisition Limited Partnership ("SALP") and Sherman Acquisition II Limited Partnership ("SAIILP") are consumer debt purchasers that acquire consumer debts in default. SFG is the Limited Partner of both SALP and SAIILP. Sherman Acquisition II General Partner LLC ("SAIIGPLLC") is the General Partner of SAIILP. Sherman Acquisition L.L.C. ("SALLC") is involved with the management of SALP, SAIILP, and LVNV, and has acted as a consumer debt purchaser as well. All four of these Sherman Acquisition business entities (*i.e.*, SALP, SALLC, SAIILP, and SAIIGPLLC) were organized under Delaware law, and are subsidiaries of SFG. SALP and SAIILP have also traded as "LVNV Funding LLC." The principal business address of the Sherman Acquisition business entities is 15 S. Main Street, Suite 600, Greenville, South Carolina 29601. The Sherman Acquisition business entities are managed by SCM at 200 Meeting Street, Suite 206, Charleston, South Carolina 29401. The Resident Agent for service of each of the Sherman

Acquisition business entities is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

> j.      SFG was organized under Delaware law on November 2, 1998, and is owned by Sherman Capital and MSPII, which are in turn owned by the individual Respondents.  Sherman Capital was organized under Delaware law on December 31, 1998, and MSPII was formed under Delaware law on May 4, 2005.  SFG's corporate headquarters is 335 Madison Avenue, Floor 19, New York, New York 10017.  Benjamin W. Navarro is the President, Chief Executive Officer, and a member of SFG.  Benjamin W. Navarro, Leslie Gutierrez, and Scott E. Silver are the managers of SFG.  The business address for each of these managers is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.  SCM, which provides management services for SFG, also has a business address of 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.  The Resident Agent for service of SFG, SCM, Sherman Capital, and MSPII is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

> k.      SFG is an integrated financial services company engaged in purchasing and servicing portfolios of consumer debt in default that it acquires at a large discount, and in originating and servicing credit card receivables.  SFG purchases, services, resells and secures consumer debt that includes credit card receivables, telecommunications receivables, student loans, mortgage deficiencies, and all types of bankruptcy debt.  SFG consists of numerous asset holding and operating entities throughout the U.S. and Mexico City, Mexico.  As of December 31, 2006, SFG reported total assets of $1.204 billion and net income of $347 million. SFG owns and operates Sherman Originator, LVNV, Alegis, Resurgent, the Sherman Acquisition business entities, and various other subsidiaries, including but not limited to

Credit One Financial, a bank holding company that holds Credit One Bank, N.A ("Credit One Bank"), a U.S. bank specializing in credit cards and headquartered at 585 Pilot Road, Las Vegas, Nevada 98119.   Credit One Bank serviced approximately two million credit cardholders across the U.S as of February 2011.  Credit One Bank's target market is subprime borrowers; it is a wholly owned subsidiary of SFG.

13.   Since 2005, LVNV has brought thousands of actions in Maryland State courts seeking judgment on affidavit; these actions sought to collect on consumer claims owned by LVNV which were in default at the time they were acquired by LVNV.  Resurgent acted as the master servicer for LVNV, and signed the affidavits that were filed in Maryland State courts on behalf of LVNV.   These litigation-related collection activities by LVNV and Resurgent satisfied the definition of "collection agency" under BR § 7-101(c) of MCALA, of "collector" under CL § 14-201(b) of the MCDCA, and of "debt collector" under 15 U.S.C. § 1692(a) of the FDCPA.   Specifically, the Agency's investigation revealed that, beginning primarily in August 2005 and continuing through the present time, LVNV, by and through the activities of Resurgent, Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, the individual Respondents, and their various counsel, have attempted to collect on consumer claims by filing at least **27,522** actions in State courts throughout Maryland, as follows:

a.   LVNV is the named plaintiff in approximately 25,811 complaints that were filed in Maryland district courts seeking judgment on affidavit, with the breakdown by year as follows:  26 cases filed by SALP or SAIILP between 1996 and 2004 that were subsequently assigned to LVNV; 1,862 cases filed by LVNV in 2005; 2,530 cases filed in 2006; 4,330 cases filed in 2007; 4,780 cases filed in 2008; 2,758 cases filed in 2009; 4,426 cases filed in 2010; and 5,099 cases filed between January 1, 2011 and October 17, 2011.

b.      LVNV is the named plaintiff in at least an additional 1,711 notices of liens or other complaints that were filed in various Maryland State circuit courts between 2005 and October 17, 2011.

14.      Between 1988 and 2009, SALP and SAIILP, by and through the activities of SFG, SCM, Alegis, Resurgent, Sherman Capital, MSPII, the individual Respondents, and their various counsel, attempted to collect on consumer claims by filing approximately 6,371 complaints in Maryland district courts seeking judgment on affidavit. These actions sought to collect on consumer claims owned by SALP and SAIILP which were in default at the time they were acquired by these business entities. SALP and SAIILP were also the named plaintiffs in an additional 1,711 notices of liens or other complaints that were filed in various State circuit courts.  Additionally, SALLC, by and through the activities of SFG, SCM, Alegis, Resurgent, Sherman Capital, MSPII, the individual Respondents, and their counsel, also attempted to collect on consumer claims that were in default at the time of acquisition by filing over a dozen complaints in Maryland State courts between 2004 and 2008.  These litigation-related collection activities by SALP, SAIILP, and SALLC satisfied the definition of "collection agency" under BR § 7-101(c) of MCALA, of "collector" under CL § 14-201(b) of the MCDCA, and of "debt collector" under 15 U.S.C. § 1692(a) of the FDCPA.

15.      The individual Respondents and Sherman Originator, Alegis, Sherman Capital, MSP II, SFG, SCM, and SAIIGPLLC have supervised, managed, directed, and overseen the business activities of LVNV, Resurgent, SALP, SAIILP, and SALLC, including their collection-related litigation activities in Maryland State courts.

16.     Sherman Originator, Alegis, SFG, SCM, Sherman Capital, MSP II, SSALP, SALLC, SAIILP, SAIIGPLLC, and the individual Respondents have never been licensed to engage in collection activities in the State of Maryland.

### UNLAWFULLY CONDUCTING BUSINESS AS A COLLECTION AGENCY IN THE STATE OF MARYLAND WITHOUT BEING DULY LICENSED BY THE AGENCY

17.     The Agency's investigation revealed that, by directly or indirectly attempting to collect Maryland consumer claims which were in default at the time they were acquired, LVNV, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, engaged in the collection agency business in the State of Maryland. LVNV, SALP, SAIILP, and SALLC were thus subject to MCALA, including its prohibition on engaging in collection agency activities without being duly licensed by the Agency. However, Respondent LVNV was not duly licensed to engage in collection activities in Maryland until February 18, 2010.   LVNV had already brought over 17,160 actions in Maryland State courts prior to the date that it became licensed as a collection agency. SALP, SAIILP, and SALLC have never been licensed to engage in collection activities in the State of Maryland.

18.     Further, LVNV is only licensed to engage in collection activities at its principal business address of 625 Pilot Road, Suite 3, Las Vegas, Nevada 89119.   However, even after becoming licensed by the Agency, LVNV has utilized the business address of 15 S. Main Street, #500, Greenville, South Carolina 29601 for its collection-related litigation activities. *See, e.g.,* the complaints filed in Maryland district court case numbers ████████2010 (filed October 7, 2010), ████████2011 (filed March 31, 2011), ████████2011 (filed March 31, 2011), and ████████2011 (filed April 11, 2011), each of which lists LVNV's

address as 15 S. Main Street, #500, Greenville, South Carolina 29601. As BR § 7-305 makes clear, LVNV's single license only authorizes it to conduct business as a Maryland collection agency at a single location, which is in Las Vegas, Nevada. Therefore, even after obtaining a collection agency license in February 2010, LVNV has continued to engage in unlicensed collection activities by conducting business as a collection agency in Maryland from a location in Greenville, South Carolina for which LVNV is not licensed.

19.      By engaging in collection activities in Maryland without being duly licensed by the Agency, including but not limited to engaging in the collection business from a location where the person is not duly licensed to operate, LVNV, SALP, SALLC, and SAIILP, both directly and by and through the activities of the other Respondents, violated BR § 7-401 of MCALA ("except as otherwise provided in this title, a person may not knowingly and willfully do business as a collection agency in the State unless the person has a license"). These unlicensed activities also violated CL § 14-202(8) of the MCDCA ("[i]n collecting or attempting to collect an alleged debt," a collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist"). Further, their unlicensed activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in violation of 15 U.S.C. § 1692(e)(2) (false representations about the "character, amount, or legal status of any debt"), (e)(5) ("[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"), and (e)(10) ("[t]he use of any false representation or deceptive means to collect or attempt to collect any debt"); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f)(1) (the collection of any amount that is not permitted by law).

### KNOWINGLY FILING FALSE, DECEPTIVE, OR DEFICIENT AFFIDAVITS
### WITH REGARD TO THE AFFIANT'S PERSONAL KNOWLEDGE OF THE CONSUMER CLAIMS

20.     The Agency's investigation revealed that the tens of thousands of actions brought by the Respondents in Maryland district courts requesting judgment on affidavit under Md. Rule 3-306 knowingly contained false, deceptive, or deficient complaints and supporting affidavits. The Respondents failed to submit affidavits that were actually based on the personal knowledge of the affiant, as required under Md. Rule 3-306 in order to obtain judgment on affidavit. Specifically, the Agency's investigation revealed the following:

a.     From 2005 through 2008, Resurgent submitted various different form affidavits in support of LVNV's complaints seeking judgment on affidavit under Md. Rule 3-306, each of which affidavit was executed by an individual stating that they were the "authorized representative" or an "attorney-in-fact" authorized to execute the affidavit on behalf of LVNV. A few of these affidavits acknowledged that the affiant was an employee of Resurgent; most failed to identify the employer of the affiant. These affidavits, as well as those submitted by or for SALP, SAIILLP, and SALLC, contained knowing violations of the Maryland Rules of Procedure, including but not limited to the following:

(1).     Most of the affidavits submitted by Resurgent for LVNV during this time period, as well as those submitted by or for SALP, SAIILLP, and SALLC, stated that they were based on the "personal knowledge" of the affiant, as is required under Md. Rule 3-306. *See, e.g.*, the affidavits filed in Maryland district court cases ████████2005, ████████2006, ████████2007, and ████████2008. However, the Agency's investigation revealed that the affiants did not, in fact, have personal knowledge of the underlying consumer claims, and thus the Respondents had knowingly submitted false

affidavits in these cases that were intended to deceive both the courts and the defendant consumers.  For the reasons described below, there is no basis for the affiants' claim of having personal knowledge about the liability of each individual consumer to the plaintiff (*i.e.*, to LVNV, SALP, SAIILP, or SALLC, as applicable), about the terms of the agreements between the original creditors and consumers, or about the nature or amount of any alleged damages.

        (A).    In most of these cases, the Respondents had only purchased a computer database from their predecessors-in-interest, and the only document filed with their complaints and affidavit was a one-page printout from a database that had been created by the original creditor.  The Respondents generally did not acquire the original contracts applicable to each consumer, and they did not acquire credit card statements or any other documents evidencing actual use of credit by the consumers.  At best, Respondents might have acquired an exemplar contract similar to the ones entered into by the consumer defendants with the original creditor, but which did not contain the actual terms applicable to the specific consumer credit agreement at issue. *See, e.g.*, the identical photocopies of a Providian National Bank Visa and MasterCard Account Agreement attached to the complaints submitted in Maryland district court cases ██████████ 2006 (last payment date was August 28, 2003, affidavit signed November 29, 2005) and ██████████ 2006 (last payment date was February 23, 2005, affidavit signed April 25, 2006).  Such credit card agreements changed on a regular basis, and two different consumers entering into credit card agreements with Providian at different times would almost certainly have had different agreements applicable to their specific claims.  It should also be noted that Respondents never identified that the attachment was actually an exemplar and not actual agreement between the original creditor

and the consumer defendant; instead, the implication was that the attachment was the consumer's actual agreement, which further deceived both the courts and consumers.

(B).    The affiants failed to review even the Respondents' sparse account records before signing the affidavits filed in these Maryland cases; the affiants would not have been capable of reviewing the records in each case due to the large volume of affidavits signed by each affiant in support of Respondents' nationwide litigation activities. However, even if the affiants *had* actually reviewed the Respondents' records before signing the affidavits, their review of a one-page printout from a database that had originally been generated by a previous creditor, possibly in conjunction with review of an exemplar credit agreement, *still* did not provide a legitimate basis for an affiant to claim to have personal knowledge of the underlying consumer claim.  At best, such records might support a claim that an affidavit was made on "knowledge, information, and belief" – a standard insufficient to obtain judgment on affidavit under the Maryland Rules of Procedure.

(C).    Additionally, in the present matter, the assignments from the original creditors to Sherman Originator LLC (which were subsequently assigned to LVNV) expressly stated that they contained no representations or warranties of any kind with regard to the assigned consumer claims; this would also apply to the computer databases transferred with the assignments.  *See, e.g.*, the Assignment and Assumption Agreement between Citibank (South Dakota), National Association and Sherman Originator LLC dated November 7, 2007 and attached to the complaint submitted in Maryland district court case ██████████2011 (the Agreement stating as follows:  "This Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectability").  This same court file

contains other assignment documents also indicating that the consumer claims were being sold to Sherman Originator without representations or warranties. The Respondents clearly cannot justify utilizing such information (*i.e.*, that contained in databases that had been transferred without representations or warranties from previous creditors, including as to the collectability of the consumer claims), to support executing affidavits based on "personal knowledge" as required under Md. Rule 3-306.

(2).    A minority of Respondents' affidavits during this period contained language to the effect that the affiant was "familiar with the books and records of the Plaintiff," and that the claims and attached documents were "true and correct." *See, e.g.*, the affidavits filed in Maryland district court cases ███████2006 and ███████2008. These affidavits completely failed to comply with any of the basic affidavit standards set forth in Md. Rule 1-304, and were clearly insufficient to meet the personal knowledge requirement set forth in Md. Rule 3-306 to obtain judgment on affidavit. Nonetheless, Respondents knowingly submitted these deficient affidavits with their complaints seeking judgment on affidavit, thereby requesting a legal outcome to which they were not entitled under the Maryland Rules of Procedure.

b.    From 2009 through the present, Resurgent and LVNV submitted two basic types of form affidavits with their complaints seeking judgment on affidavit under Md. Rule 3-306, each of which affidavit was executed by an individual stating that they were the "authorized representative" or an "attorney-in-fact" authorized to execute the affidavit on behalf of LVNV. These affidavits contained knowing violations of the Maryland Rules of Procedure, including but not limited to the following:

(1).    A minority of Respondents' affidavits contained the following language, or language substantially similar to the following, in the first paragraph: "the information below is true and correct to the best of my <u>information and belief</u> based on the Plaintiff's business records" (emphasis added). *See, e.g.*, the affidavits filed in Maryland district court cases ██████2010 and ██████2010.   This language is clearly insufficient to meet the personal knowledge requirement set forth in Md. Rules 1-304 and 3-306 to obtain judgment on affidavit.   Nonetheless, Respondents knowingly submitted these deficient affidavits with their complaints seeking judgment on affidavit, thereby requesting a legal judgment to which they were not entitled under the Maryland Rules of Procedure.

(2).    Most of the affidavits submitted by Respondents during this period, however, were not only deficient, but were also artfully drafted and intended to deceive both the courts and defendant consumers; this applies to the affidavits submitted in over 10,000 cases since the beginning of 2009.   Specifically, the Agency's investigation revealed the following:

(A).    The first paragraph in these affidavits begins with the following language, or language substantially similar to the following:   "I have <u>personal knowledge</u> regarding Plaintiff's creation and maintenance of its normal business records, including computer records of its accounts receivables," (emphasis added), thereby making it appear as if the affidavit is based on the affiant's personal knowledge, in conformance with Md. Rules 1-304 and 3-306.   However, this first paragraph ends with the following phrase, or with a phrase substantially similar to the following, "I am authorized to execute this affidavit on behalf of Plaintiff and the information below is true and correct to <u>the best of my knowledge, information and belief</u> based on the business records" (emphasis added).   This

20

phrase pertains to all of the subsequent information in the affidavit, including everything which purports to establish liability and damages by the consumer defendant, thereby making the affidavit insufficient to satisfy the personal knowledge requirement set forth in Md. Rules 1-304 and 3-306 to obtain judgment on affidavit. *See, e.g.,* the affidavits filed in Maryland district court cases ███████2009, ███████2009, ███████2010, and ███████2011. Therefore, Respondents knowingly failed to comply with the Maryland Rules of Procedure by submitting deficient affidavits with their complaints requesting judgment on affidavit.

(B).    In addition to being deficient, the wording described in the preceding paragraph was intentionally drafted in this manner to mislead both courts and consumers into believing that the affidavits were based on personal knowledge in order to obtain judgment on affidavit, when in fact the affidavits were actually based on "knowledge, information, and belief," thereby creating a built-in defense to some types of potential FDCPA lawsuits:    federal courts in other jurisdictions have determined that affidavits made on personal knowledge which inadvertently contain false information violate the FDCPA, while affidavits made on "knowledge, information, and belief" which inadvertently contain false information do not automatically violate the FDCPA (though the jurisdictions at issue did not require that the affidavits be made on personal knowledge).    Respondents have succeeded in deceiving the courts and consumers, as the affidavits at issue have resulted in thousands of judgments being entered against Maryland consumer defendants.

21.    By knowingly violating the Maryland Rules of Procedure and submitting deficient affidavits with complaints that nonetheless requested judgment on affidavit, and by knowingly submitting false or misleading affidavits that were intended to deceive the courts

and consumer defendants as to the quality of the affiants' knowledge about individual consumer claims, Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, violated CL § 14-202(8) of the MCDCA.  Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f).

### KNOWINGLY FILING FALSE OR MISLEADING AFFIDAVITS WITH REGARD TO THE CERTIFICATION OF BUSINESS RECORDS

22.    Each of the affidavits which Respondents submitted with their complaints seeking judgment on affidavit had a dual purpose:  to satisfy the affidavit requirement under Md. Rule 3-306, as discussed above; and to provide a certification of records of regularly conducted business activity pursuant to Md. Rule 5-902(b), thereby permitting the records to be admitted under the "business record" hearsay exception set forth at Md. Rule 5-803(b)(6). The Agency's investigation revealed that the tens of thousands of actions brought by the Respondents in Maryland district courts contained false or misleading statements related to the affiants' certification of the business records at issue.  Such statements were intended to deceive both the courts and consumer defendants about the trustworthiness and authenticity of the applicable business records, and in fact resulted in thousands of judgments being entered against Maryland consumers.  The Agency's investigation revealed the following:

a.    The affidavits submitted by Resurgent and LVNV normally failed to identify the affiant's employer, as discussed in paragraph 20, above.  The affidavits also failed to identify the affiant's title (simply referring to the affiant as either an "authorized

representative" or "attorney-in-fact") and they failed to identify the organization that maintained the plaintiff's business records. Some of these affidavits also failed to provide the date that they were signed. *See, e.g.*, the affidavit submitted in Maryland district court case ██████████ 2006. As such, Respondents knowingly failed to certify the records in substantially the form provided at Md. Rule 5-902(b)(2), purposely excluding certain information in order to mislead the courts and consumer defendants about the trustworthiness of the affiant's certification.

      b.    Additionally, the various form affidavits submitted by the Respondents contained artfully crafted language intended to deceive the courts and consumer defendants. For example, affidavits submitted by Resurgent and LVNV in Maryland district courts since 2009 have contained the following language, or language substantially similar to the following:

> I have personal knowledge regarding Plaintiff's creation and maintenance of its normal business records... This information was regularly and contemporaneously maintained during the course of the Plaintiff's business. I am authorized to execute this affidavit on behalf of the Plaintiff and the information below is true and correct to the best of my knowledge, information and belief based on the business records.
>
> The records provided to Plaintiff have been represented to include information provided by the original creditor. Such information includes the debtor's name, social security number, account balance, the identify of the original creditor and the account number.
>
> Based on the business records maintained on account []... which are a compilation of the information provided upon acquisition and information obtained since acquisition ... Said business records then indicate that the account was assigned to []... Thereafter, all ownership rights were assigned to, transferred to and became vested in Plaintiff, ...
>
> Based on information and belief and the business records maintained in regard to the Account, the above stated amount is justly and duly

> owed by the Defendants to the Plaintiff and that all grounds of
> defense, just and lawful offsets, payments and credits to the account
> have been allowed exclusive of all setoffs.
>
> I affirm under penalty of perjury that the above facts are true and
> correct.

Taken as a whole, this language gave the perception that the applicable business records had

been legitimately certified as business records of LVNV, appearing to indicate as follows:

that LVNV had acquired all of the relevant documents pertaining to the consumer claim,

including those from the original creditor and elsewhere; that those records had been

meaningfully adopted by LVNV as its own business records; and that the affiant had

personally reviewed all of the business records applicable to the specific consumer claim.

However, as discussed above, LVNV did not actually purchase all of the original documents

pertaining to each consumer's account, instead purchasing only a database of account

information containing an entire portfolio of charged off consumer claims. That information

was then imported into Resurgent's database, which LVNV and Resurgent subsequently

referred to as their own business records. Further, the original creditor made no

representations or warranties about these consumer claims of any kind, even with regard to the

collectability of those accounts. Thus, the affiants never actually reviewed all of the original

documents for each consumer claim, as their affidavits implied; instead, at most they could

have reviewed a one-page summary of the account derived from the original creditor's

database, and possibly an exemplar credit agreement. Even in the minority of cases where

account statements or assignment documents were submitted with the complaints, and thus

could have been reviewed by the affiants, none of those documents actually included the

original agreement or evidenced any use of credit by the consumer, while the assignment

documents actually weighed against LVNV's ownership of the consumer claims at issue (as discussed in paragraph 30, below).

        c.     Resurgent's employees were certainly not qualified to testify about the creation and maintenance of the original creditor's business records, nor were they qualified to testify about the original creditor's business practices.  As such, because the original creditor's records were transferred without any representations or warranties, Resurgent's employees could not have testified to establish the admissibility of the original creditor's records under the Maryland Rules of Evidence.  For the very same reasons, Resurgent's employees were not qualified to certify the business records of the original creditor under Md. Rule 5-902(b).  This same rationale also applies to printouts from Resurgent's own database when the information contained therein was originally derived from a database created by the original creditor, and which had been transferred to each subsequent owner of the debt in the form of electronic data files, the information from which was ultimately imported into Resurgent's own "derivative" database.  Resurgent's employees did not have knowledge about the creation and maintenance of the original creditor's database, nor did they have any knowledge about when the information related to specific consumer claims had been compiled and entered into that database.  Thus, Resurgent's employees were not qualified to testify to establish the admissibility of printouts from Resurgent's own database that derived from a database of information created by the original creditor, especially when such information had been transferred from the original creditor to successive owners multiple times without any representations or warranties of any kind.  For those same reasons, Resurgent's employees were not qualified to certify printouts from Resurgent's derivative database under Md. Rule 5-902(b).

d.    In order to circumvent the obvious deficiencies noted above, Respondents intentionally drafted their affidavits using language that was intended to deceive both the courts and consumer defendants.  Such affidavits appeared to indicate that the affiants were qualified to certify all documents attached to the complaint, including documents allegedly produced by the original creditor as well as printouts from Resurgent's derivative database, when in fact the affiants were not qualified to certify any of these documents.

23.    By knowingly violating the Maryland Rules of Procedure and submitting affidavits which contained misleading statements related to certification of the pertinent business records, which statements were intended to deceive both the courts and consumer defendants, Respondents LVNV and Resurgent, both directly and by and through the activities of Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, and the individual Respondents, violated CL § 14-202(8) of the MCDCA.  Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f).

**INTENTIONALLY MISREPRESENTING THE AMOUNT OF THE CONSUMER CLAIMS AND COLLECTING IMPERMISSIBLE COMPOUND INTEREST**

24.    The Agency's investigation revealed that Respondents had claimed and received prejudgment interest amounts that included, in part, compound interest – which is prohibited under Maryland law – and that they had misrepresented the correct amount of principal and interest of the consumer claim in their complaints and supporting documents

filed in Maryland State courts, including their affidavits.   Specifically, the Agency's investigation revealed:

        a.     The amount that the Respondents stated or implied was the principal amount of each consumer claim actually consisted of the account balance of the consumer claim at the time that it was charged off by the original creditor; this "charge-off" amount actually consisted not only of the principal amount of the alleged debt, but also interest, late fees, and any other charges that had been imposed by the original creditor (all of which constitutes "interest" under applicable law).  Thus, after acquiring a consumer claim from the original creditor or from any subsequent owners, Respondents filed suit in Maryland state courts, requesting, among other things, prejudgment interest on the full value of the consumer claim at the time that it had been charged off by the original creditor.  However, Respondents' complaints falsely stated that they were requesting interest only on the "principal" amount of the consumer claim.

        b.     For example, the affidavit submitted in Maryland district court case ▮▮▮▮▮▮2011 stated that the Plaintiff (LVNV) had the "right to collect the purchased balance owing of $884.63 plus any additional accrued interest."  Moreover, this exact amount ($884.63) was listed as the "Principal Due" on the separate interest worksheet (called "Attorney's Fee Worksheet") filed with the complaint.  However, it is clear when examining the last few billing statements from the original creditor (HSBC), which were also filed with the complaint, that the amount of $884.63 appearing on the last billing statement of December 7, 2008 does not constitute the "principal" amount of the debt.  Instead, that figure is actually the charge-off amount of the debt, consisting of the unpaid balance of not only the principal, but also late fees, over-limit charges, and finance charges (which constitutes "interest" under

applicable law)  Thus, for example, the account balance as of the August 2008 billing statement was $729.47.  The consumer did not make any new purchases or cash advances between August and December 2008.  Rather, on each new monthly billing statement, HSBC added late fees, over-limit charges, and finance charges to the previous account balance, which ultimately brought the account balance to $884.63 in December 2008 (at the time it was charged off by HSBC).

          c.      Therefore, when the Respondents requested prejudgment interest on the amount of $884.63 from the charge-off date of December 24, 2008, Respondents were effectively requesting impermissible compound interest on that portion of the $884.63 figure that did not constitute principal (*i.e.*, on that portion of the figure that included late fees, over-limit charges, finance charges, and any other such fees or charges added by the HSBC to the principal amount of the debt).  Such compound interest is prohibited under Maryland law. Nevertheless, Respondents almost always requested such impermissible compound interest in their complaints.  The Respondents knowingly misrepresented the "charge-off" amount as "principal," thereby deceiving both the courts and consumer defendants.  As a direct result of these misrepresentations, Respondents were awarded prejudgment interest in thousands of cases in amounts that included, in part, compound interest.

          25.      By misrepresenting the nature and amount of the consumer claims, and by requesting and collecting impermissible compound interest, Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, violated CL § 14-202(8) of the MCDCA.  Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in

violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f)(1).

### KNOWINGLY REQUESTING AND COLLECTING UNAUTHORIZED ATTORNEY'S FEES AND PREJUDGMENT INTEREST AT UNAUTHORIZED RATES

26.     The Agency's investigation revealed that in some cases, Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, had claimed and received both unauthorized attorney's fees and prejudgment interest at rates exceeding the amounts authorized under Maryland law. Respondents generally alleged that they were entitled to such attorney's fees and/or interest at rates greater than Maryland 6% legal rate based on provisions of the contracts between the original creditor and the consumer defendant ("the contract rate of interest").

a.     In some cases, Respondents attached documents purporting to be the contract between the consumer and the original creditor authorizing both a contract rate of interest and attorney's fees.  Although Respondents' complaints and supporting documents deceptively implied that these were the original contracts, in reality the Respondents had only submitted exemplar agreements which were similar but not identical to the original credit agreements. Thus, for example, in Maryland district court case ████████2006, on an alleged principal amount of $1,077.48 (a charge-off amount which actually consisted of principal, interest, late fees, and other charges), LVNV requested, and was awarded, $473.88 in prejudgment interest at an annual rate of 21.9% (alleged to be the contract rate), and $161.62 in attorney's fees (which the principal-interest worksheet stated is equal to "15.0 % attorney fee per contract"), yet LVNV only attached an exemplar credit card agreement from Bank of America.  However, such an exemplar does not entitle the plaintiff to claim attorney's

fees or prejudgment interest at a contract rate of interest.  Further, even if it had been the actual agreement (rather than an exemplar), LVNV was not entitled to claim attorney's fees or prejudgment interest at the contract rate of interest without a properly certified agreement from the original creditor; and even then, LVNV could only have sought prejudgment interest on the actual principal amount of the consumer claim, and only at the rate permitted by law.

      b.     In other cases, Respondents claimed that they were entitled to collect the contract rate of interest and attorney's fees, yet completely failed to submit *any* documents from the original creditor to the court, much less a properly certified copy of the original contract.  Thus, for example, in Maryland district court case ██████████2005, on an alleged principal amount of $5,749.49 (a charge-off amount which actually consisted of principal, interest, late fees, and other charges), and despite providing *no* documents from the original creditor with their complaint, LVNV requested, and was awarded, $3,943 in prejudgment interest at an annual rate of 21.9% (alleged to be the contract rate), and $862.42 in attorney's fees (which the interest worksheet states is "15.0 % attorney fee per contract").  However, LVNV was not entitled to claim attorney's fees or prejudgment interest at the contract rate of interest without a properly certified agreement from the original creditor, which it did not provide.  Even then, LVNV could only have sought prejudgment interest on the actual principal amount of the claim, and only at the rate permitted by law.

      27.     By seeking and then collecting unauthorized attorney's fees and prejudgment interest at rates in excess of that permitted under Maryland law, Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, violated CL § 14-202(8) of the MCDCA.  Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading

representations, in violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f)(1).

### INTENTIONALLY MAKING FALSE STATEMENTS OR MISREPRESENTATIONS TO CONCEAL CERTAIN BUSINESS NAMES AND RELATIONSHIPS

28. The Agency's investigation revealed that Respondents LVNV and Resurgent, both directly and by and through the activities of Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, and the individual Respondents, have regularly made false statements or intentional misrepresentations in their complaints and associated documents seeking judgment on affidavit in an effort to deceive both the Maryland courts and consumer defendants as to the names of certain business entities and business relationships. Such activities have included, but are not limited to, the following:

a. The account summaries which LVNV and Resurgent submitted with LVNV's complaints in recent years falsely indicated that the "Previous Owner" was the same as the "Original Creditor." *See, e.g.*, Maryland district court case ███████2011 (listing Capital One as both Original Creditor and Previous Owner); case ███████2011 (listing HSBC/Orchard Bank as the Original Creditor and HSBC as the Previous Owner). However, it is clear from the affidavits and other documents attached to LVNV's complaints that there was at least one other company in the chain of title between the original creditor and LVNV, and that the "Previous Owner" on the account summary page should have been the same as "Plaintiff's assignor" referenced on the attached affidavit – which is normally Sherman Originator. This intentionally false statement on the account summary pages as to the Previous Owner, combined with reference only to "Plaintiff's assignor" in the affidavit, was

31

intended to completely conceal Sherman Originator's name and role in the collections process from courts and consumer defendants, thereby misleading courts and consumers into believing that only the original creditor and then LVNV had owned the consumer claim at issue. This impeded the consumer's ability to conduct discovery, to assess the legality of LVNV's ownership of the debt, to assess the trustworthiness of the documents being certified by the plaintiff's affiant, and to otherwise adequately defend against LVNV's consumer's claim. As such, Respondents' collection activities in this context have involved false and deceptive statements, intended to conceal relevant information from both courts and consumers.

        b.     LVNV's complaints normally have concealed the name of the affiants' employer (*i.e.*, Resurgent) from both the courts and consumer defendants. The large majority of their affidavits, including almost every affidavit issued since 2007, were signed by an "authorized representative" or "attorney-in-fact," while the employer of the affiant and the organization maintaining LVNV's business records (*i.e.*, Resurgent) were not disclosed to the courts or consumers. Just as with the omission of the name "Sherman Originator" from the complaints, as discussed above, by intentionally omitting the identities of the affiants' employer and the organization maintaining the plaintiff's business records, the Respondents have been able to conceal Resurgent's name and role in the collections process from the courts and consumer defendants. Additionally, since the affiants normally have signed just as an "authorized representative" or "attorney-in-fact" on behalf of LVNV, courts and consumers have been misled into believing that the affiant is actually an employee of plaintiff LVNV. This is significant because it impacts how the courts and consumer defendants assess the trustworthiness of the records and the affiant's certification of those records under Md. Rules 5-803(b)(6) and 5-902(b). Thus, Respondents' collection activities in this context have been

intentionally deceptive, intended to conceal relevant information and to mislead courts and consumers.

29.     By intentionally making false or misleading statements in their complaints and associated documents with regard to the names of certain business entities and business relationships, and by concealing relevant information, all of which was intended to deceive the courts and consumer defendants, Respondents LVNV and Resurgent, both directly and by and through the activities of Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, and the individual Respondents, violated CL § 14-202(8) of the MCDCA.  Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f)(1).

### FILING CASES IN WHICH THE RELEVANT ASSIGNMENT DOCUMENTS EVIDENCE THAT LVNV DID NOT HAVE VALID TITLE TO THE CONSUMER CLAIMS AT ISSUE

30.     The Agency's investigation also revealed that, in the LVNV cases where the Respondents actually submitted assignment documents between third party creditors and Sherman Originator LLC, and/or between Sherman Originator and LVNV, such assignment documents evidence that LVNV did not have valid title to the consumer claims at issue, and thus LVNV lacked standing to file suit in Maryland State courts.   The investigation specifically revealed the following:

        a.     Maryland district court case ▮▮▮▮▮▮▮2011 is a typical example, whereby the documents attached to LVNV's complaint, including an affidavit, two sales and assignment documents, billing statements from Orchard Bank, and an account summary from

LVNV/Resurgent, collectively indicated the following: that HSBC/Orchard Bank was the original creditor for the consumer's subprime credit card account, which was opened on May 2, 2006 (*see* affidavit; account summary); that HSBC/Orchard Bank assigned the consumer claim to Household Bank (SB), N.A. (*see* affidavit); that HSBC Bank Nevada, N.A assigned the consumer claim to Sherman Originator LLC on October 16, 2007 (*see* Assignment and Bill of Sale dated October 16, 2007); that Sherman Originator assigned the claim to LVNV on September 30, 2007 (*see* Sale and Assignment dated September 30, 2007); that HSBC/Orchard Bank attempted to collect on the account during the second half of July 2008 (*see* Orchard Bank billing statements); that Household Bank (SB), N.A. assigned the consumer claim to Sherman Originator on January 23, 2009 (*see* affidavit); and that Sherman Originator assigned the consumer claim to LVNV on January 23, 2009 (*see* affidavit; account summary).

b.     It is clear that these documents contain numerous inconsistencies with regard to the names of the owners of the consumer claims and the dates of assignment. For example, based solely on the assignment documents, Sherman Originator acquired the claim on October 16, 2007 and then assigned it to LVNV on September 30, 2007 – which was 16 days *before* Sherman Originator actually owned the claim. Further, while the assignment documents indicate that Sherman Originator and LVNV acquired the consumer claim in 2007, the affidavit and the account summary indicate that Sherman Originator and LVNV acquired the consumer claim on January 23, 2009. Also, there are conflicts between the different banks listed as the original creditor and/or subsequent assignees of the debt: HSBC/Orchard Bank, Household Bank (SB), N.A, and HSBC Bank Nevada, N.A. are all listed in various documents as either the original owners or as assignees of the consumer claims, yet the same

documents indicate that there was only one (or possibly two) owners of the debt before Sherman Originator.

        c.     Together, all of these inconsistencies, errors, gaps in ownership, and other problems evidence that LVNV did not have valid title to the consumer claim at issue, and thus lacked standing to file suit in Maryland district court. The same problems exist in the other court cases where LVNV provided assignment documents with its complaints. *See, e.g.*, Maryland district court cases ███████2011 and ███████2011. In fact, in the cases where assignment documents were provided, the Agency has not identified a single instance where the documents supported LVNV's alleged ownership of the underlying consumer claim.

       31.     By filing complaints seeking judgment on affidavit in which the applicable documents evidence that LVNV did not actually have valid title to the consumer claims at issue, and thus lacked standing to file suit in Maryland State courts, LVNV and Resurgent, both directly and by and through the activities of Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, and the individual Respondents, violated CL § 14-202(8) of the MCDCA. Further, these activities also violated various provisions of the FDCPA: they constituted false or misleading representations, in violation of 15 U.S.C. § 1692(e)(2),(5),(10); and they constituted unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f).

## LIABILITY AND POTENTIAL SANCTIONS

32.     The aforementioned illegal activities by licensees LVNV and Resurgent in connection with the collection of consumer claims, and by the owners, directors, officers, members, partners, or agents of these licensees, including but not limited to the activities of Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, and the individual Respondents, are grounds, subject to an administrative hearing, to suspend or revoke the collection agency licenses of LVNV and Resurgent pursuant to BR § 7-308(a)(3)(ii), (a)(4), and (b), as well as pursuant to FI § 2-115(b).

33.     Additionally, the violations of MCALA, the MCDCA, and the FDCPA discussed above by Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC, both directly and by and through the activities of the other Respondents, also subjects all of the Respondents, following a hearing or opportunity for a hearing, to fines and other non-monetary penalties under FI § 2-115(b), and to fines, restitution, and other non-monetary penalties under MCALA.

34.     Respondents Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, SAIIGPLLC and the individual Respondents are also liable for the acts of Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC under an agency theory.  Under Maryland law, a principal is *prima facie* liable for the acts of an agent done in the general course of business authorized by him.  LVNV, Resurgent, SALP, SAIILP, and SALLC acted as the agents for all of the other Respondents.  The individual Respondents, Sherman Capital, and MSP II acted through SFG and SCM as their agents.  SFG in turn acted through all of its subsidiaries as agents, including but not limited to, through Alegis, Sherman Originator,

LVNV, Resurgent, SALP, SAIILP, SALLC, and SAIIGPLLC.   Sherman Originator acted through LVNV as its agent, while Alegis acted through Resurgent as its agent.

35.     Respondents Alegis, Sherman Originator, SFG, SCM, Sherman Capital, MSPII, SAIIGPLLC, and the individual Respondents are also liable for the acts of Respondents LVNV, Resurgent, SALP, SAIILP, and SALLC under the theory of *respondeat superior*.

**WHEREFORE**, having determined that immediate action is in the public interest, and pursuant to the aforementioned provisions of the Annotated Code of Maryland, it is, by Commissioner of Financial Regulation on behalf of the Agency, HEREBY

**ORDERED** that <u>all</u> collection agency licenses of Respondents LVNV Funding LLC and Resurgent Capital Services Limited Partnership are SUMMARILY SUSPENDED effective immediately; it is further

**ORDERED** that all Respondents shall immediately CEASE AND DESIST from engaging, directly or indirectly, in the business of collecting consumer claims from Maryland residents, and from otherwise engaging in the collection agency business in the State of Maryland, which shall include but is not limited to immediately ceasing all collection-related litigation activities in Maryland State courts; and it is further

**ORDERED** that all Respondents shall immediately CEASE AND DESIST from violating the aforementioned laws governing debt collection activities; and that Respondents should be assessed statutory monetary penalties for all such violations; and it is further

**ORDERED** that all provisions of this Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses ("Summary Order"), including all Orders and Notices set forth herein, also apply to all unnamed owners, partners, members, officers, principals, directors, managers, employees, and agents of all Respondent business entities named above; and it is further

**ORDERED** that the officers or managers for all Respondent business entities named above shall provide a copy of this Summary Order to all unnamed owners, partners, members, officers, principals, directors, managers, and agents of those Respondent business entities.

FURTHERMORE,

**RESPONDENTS ARE HEREBY NOTIFIED** that, pursuant to FI § 2-115, SG § 10-226(c)(2), and BR § 7-309, Respondents are entitled to a hearing before the Agency to determine whether this Summary Order should be vacated, modified, or entered as a final Order of the Agency; and further,

**RESPONDENTS ARE HEREBY NOTIFIED** that a hearing in this case will automatically be scheduled and Respondents will receive a Notice of Hearing under separate cover; and that any and all communications in this matter pertaining to this hearing should be submitted to the following address:

> Administrator, Enforcement Unit
> Office of the Commissioner of Financial Regulation
> 500 North Calvert Street, Suite 402
> Baltimore, Maryland 21202;

and further,

**RESPONDENTS ARE HEREBY NOTIFIED** that, pursuant to Code of Maryland Regulations ("COMAR") § 09.01.02.08 and SG §§ 9-1607.1, 10-206.1, and 10-207, and in accordance with SG § 10-207(b)(4), each individual Respondent in this matter is only permitted to appear at such hearing on behalf of himself / herself, or through an attorney authorized to practice law in Maryland at the Respondent's own expense; and further,

**RESPONDENTS ARE HEREBY NOTIFIED** that, pursuant to SG §§ 9-1607.1 and 10-206.1, and in accordance with SG § 10-207(b)(4), business entities are only permitted to appear at such hearing through an attorney authorized to practice law in Maryland at the Respondent's own expense; and further,

**RESPONDENTS ARE HEREBY NOTIFIED** that a copy of this Summary Order will be provided to the Maryland judiciary; and further,

**RESPONDENTS ARE HEREBY NOTIFIED** that, pursuant to BR § 7-308, the foregoing violations provide a basis upon which the Agency may suspend or revoke the Maryland collection agency licenses of Respondents LVNV and Resurgent. Pursuant to BR § 7-205, the Agency may also issue an order requiring all Respondents to cease and desist from engaging in these violations and any further similar violations, may issue a monetary penalty of up to $5,000, and may require Respondents to take affirmative action to correct the violations, including providing restitution to all aggrieved consumers (with restitution in this case potentially totaling over TEN MILLION DOLLARS). Additionally, pursuant to FI § 2-115(b), as a result of a hearing, the Agency may, in addition to taking any other action authorized by law, enter an Order making this Summary Order final, suspend or revoke the collection agency licenses of Respondents LVNV and Resurgent, impose a civil penalty

against all Respondents up to $1,000 for each violation of MCALA and for each violation of

MCDCA, issue a penalty up to $5,000.00 for each subsequent violation of these acts, (with

civil penalties in this case potentially totaling over FIFTY MILLION DOLLARS), or may take

any combination of the aforementioned actions against Respondents.

MARYLAND STATE COLLECTION
AGENCY LICENSING BOARD IN THE
OFFICE OF THE COMMISSIONER OF
FINANCIAL REGULATION

10/25/11
Date

By: _____
Anne Balcer Norton
Deputy Commissioner of Financial Regulation

For Mark Kaufman
Commissioner of Financial Regulation
Chairperson, State Collection Agency
    Licensing Board